LOCKE LORD BISSELL & LIDDELL LLP
Conrad V. Sison (SBN: 217197)
csison@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telephone: 213-485-1500
Facsimile: 213-485-1200

Attorneys for Defendant
ZURICH AMERICAN INSURANCE COMPANY

*Locke Lord Bissell & Liddell LLP*
*300 South Grand Avenue, Suite 2600*
*Los Angeles, CA 90071*

FILED

'09 OCT -2 PM 2: 50
CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CV09-07210 GW PLAx

| | |
|---|---|
| KOOSHAREM CORPORATION, a California Corporation dba SELECT PERSONNEL SERVICES and ABLEST, INC., *a Delaware corporation,* | CASE NO. |
| | **DEFENDANT'S NOTICE OF REMOVAL** |
| Plaintiff, | **[28 U.S.C. §§ 1332, 1441]** |
| v. | [Superior Court of California, County of Santa Barbara, Case No. 1339649] |
| ZURICH AMERICAN INSURANCE COMPANY, | |
| Defendant. | Complaint Filed: September 22, 2009 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant ZURICH AMERICAN INSURANCE COMPANY hereby removes this action from the Superior Court of California, County of Santa Barbara, to the United States District Court for the Central District of California, and states as follows:

**STATEMENT OF THE CASE**

1.    On September 22, 2009, Plaintiffs KOOSHAREM CORPORATION dba

CONFORM COPY

1  SELECT PERSONNEL SERVICES and ABLEST, INC. ("Plaintiffs") commenced an

2  action against Zurich American Insurance Company ("Zurich") in the Superior Court

3  of California, County of Santa Barbara, by filing a Petition to Vacate an interim

4  arbitration award. The action is entitled *Koosharem Corporation dba Select*

5  *Personnel Services et al. v. Zurich American Insurance Company, Case No. 1339649*

6  (the "State Court Action"). A true and accurate copy of the Petition to Vacate in the

7  State Court Action is attached hereto as <u>Exhibit 1</u>.

8          2.      This Notice of Removal is filed within 30 days of the filing of the

9  Petition and, thus, within 30 days of the date any defendant could have become aware

10  of the State Court Action. Removal is therefore timely in accordance with 28 U.S.C.

11  § 1446(b).

12          3.      The Petition seeks to vacáte an interim award entered in a pending

13  arbitration between Plaintiffs and Zurich. The award was entered on September 10,

14  2009 and requires Plaintiffs to post pre-hearing security in the amount of

15  $1,100,000.00 in the form of in irrevocable letter of credit in favor of Zurich.

16                          **DIVERSITY JURISDICTION**

17          4.      A case may be removed to a federal court if it could have been brought in

18  that federal court originally. 28 U.S.C. § 1441(b).

19          5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332,

20  because there is complete diversity of citizenship between Plaintiffs and Defendant

21  and more than $75,000, exclusive of interests and costs, is at stake.

22          6.      On information and belief, plaintiff Koosharem Corporation is a

23  California corporation with its principal place of business in California. *See* <u>Exhibit 2</u>

24  at ¶ 1. Thus, Koosharem Corporation is a citizen of California.

25          7.      Plaintiff Ablest, Inc. is a Delaware corporation with its principal place of

26  business in California. *See* <u>Exhibit 3</u>. Thus, Ablest, Inc. is a citizen of Delaware and

27  California.

28          8.      There is complete diversity between the parties, as Defendant Zurich is

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1  neither a citizen of Delaware nor California. Zurich is a New York corporation with

2  its principal place of business in Illinois. *See* Exhibit 4.

3       9.    The amount is controversy is $1,100,000.00, well in excess of the

4  $75,000.00 jurisdictional threshold.  (Pet. ¶ 3.b.(3)(a).)

5  **REMOVAL REQUIREMENTS**

6       10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a), because

7  the Central District of California is the federal judicial district embracing the Superior

8  Court of California for the County of Santa Barbara, where the State Court Action was

9  originally filed.

10       11.    Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all of the

11  process, pleadings, and orders on file in the State Court Action or served on Zurich are

12  attached hereto as Exhibit 1.

13  **CONCLUSION**

14      By this Notice of Removal and the associated attachments, Zurich does not

15  waive any objections it may have as to service, jurisdiction or venue, or any other

16  defenses or objections it may have to this action.  Zurich intends no admission of fact,

17  law or liability by this Notice, and expressly reserves all defenses, motions and/or

18  pleas.  Zurich prays that the State Court Action be removed to this Court, that all

19  further proceedings in the State Court Action be stayed, and that Zurich receives all

20  additional relief to which it is entitled.

21

22  Dated:  October 2, 2009         LOCKE LORD BISSELL & LIDDELL LLP

23

24                 By:

25                     Conrad V. Sison

26                 Attorney for Defendant

27                 ZURICH AMERICAN INSURANCE
                COMPANY

28

*Locke Lord Bissell & Liddell LLP*
*300 South Grand Avenue, Suite 2600*
*Los Angeles, CA 90071*

DEFENDANTS' NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441

# EXHIBIT 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| DREW E. POMERANCE, ESQ. (101239)<br>MICHAEL L. PHILLIPS, ESQ. (232978)<br>ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP<br>5820 Canoga Avenue, Suite 250<br>Woodland Hills, CA 91367 | |

TELEPHONE NO.: (818) 992-9999   FAX NO.: (818) 992-9991
ATTORNEY FOR *(Name)*: Koosharem Corp dba Select Personnel Services & Ablest, Inc.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME: Anacapa Building

CASE NAME: Koosharem Corp. v. Zurich American

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>1339649 |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE: Thomas P. Anderle<br>DEPT: 3 |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[x] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [ ] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive

4. Number of causes of action *(specify)*:

5. This case [ ] is [x] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 23, 2009

Michael L. Phillips, Esq.
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET   Legal
Solutions
(@ Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
    Medical Malpractice— Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
    Contract/Warranty Breach—Seller Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ—Administrative Mandamus
    Writ—Mandamus on Limited Court Case Matter
    Writ—Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal—Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment (*non-domestic relations*)
    Sister State Judgment
    Administrative Agency Award (*not unpaid taxes*)
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-harassment*)
    Mechanics Lien
    Other Commercial Complaint Case (*non-tort/non-complex*)
    Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

     I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 5820 Canoga Avenue, Suite 250, Woodland Hills, California 91367.

     On September 23, 2009, I served the foregoing document described as **CIVIL CASE COVER SHEET**, on the interested parties in this action by placing the original / a true copy thereof enclosed in (a) sealed envelope(s) addressed as follows:

**[SEE ATTACHED MAILING LIST]**

☒    **BY U.S. MAIL:** I placed a true copy of the foregoing document in sealed envelopes individually addressed to each of the parties listed on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    **BY EMAIL:** I caused such documents listed above to be transmitted via e-mail to the number(s) set forth above.

☒    **STATE:** I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed on September 23, 2009, in the City of Woodland Hills, California.

_____
ELIA RAMIREZ

- 1 -

PROOF OF SERVICE

1

## SERVICE LIST

2

3   Steven T. Whitmer, Esq.
LOCKE LORD BISSELL & LIDELL, LLP

4   111 South Wacker Drive
Chicago, IL. 60606

5   swhitmer@lockelord.com

6

7   Meredith V. Hattendorf, Esq.
LOCKE LORD BISSELL & LIDELL, LLP

8   111 South Wacker Drive
Chicago, IL. 60606

9   mhattendorf@lockelord.com

10

11   Zurich American Insurance Company              **BY MAIL ONLY**
Administrative Office

12   1400 American Lane
Schaumberg, Illinois, 60196-1056

13   Attention: Assistant General Counsel

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

Drew E. Pomerance, Esq., State Bar No. 101239
Michael L. Phillips, Esq. (Bar No. 232978)
**ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP**
5820 Canoga Avenue, Suite 205
Woodland Hills, California 91367
Telephone:  (818) 992-9999
Facsimile:  (818) 992-9991

Attorneys for Petitioner,
KOOSHAREM CORPORATION, a California Corporation
dba SELECT PERSONNEL SERVICES
and ABLEST, INC., a Delaware Corporation

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA BARBARA

| | |
|---|---|
| KOOSHAREM CORPORATION, a California Corporation dba SELECT PERSONNEL SERVICES; ABLEST, INC., a Delaware Corporation<br><br>Petitioners,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation,<br><br>Respondent. | Case No.  1339649<br><br>*Assigned to Judge Thomas P. Anderle, Dept. 3*<br><br>**SELECT PERSONNEL SERVICES AND ABLEST, INC.'S NOTICE OF HEARING ON PETITION TO VACATE ARBITRATION PANEL'S INTERIM ORDER GRANTING ZURICH'S MOTION FOR PRE-HEARING SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES.**<br><br>**Date:  October 27, 2009**<br>**Dept:  3**<br>**Time:  9:30 a.m.** |

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on October 27, 2009 at 9:30 a.m., or as soon thereafter

as the matter may be heard before the Honorable Thomas P. Anderle in Department 3 of the

above mentioned Court, located at 1100 Anacapa Street, Santa Barbara, California, 93121, the

Petition of Petitioners  KOOSHAREM CORPORATION, a California Corporation dba SELECT

PERSONNEL SERVICES ("Select") and ABLEST, INC. ("Ablest") for an order vacating the

1 | Interim Order entered by the panel of arbitrators on September 10, 2009, in the AAA Arbitration
2 | Proceedings under AAA Case Number 51 195 Y 00901 08, which granted Respondent, ZURICH
3 | AMERICAN INSURANCE COMPANY's ("Zurich") Motion for Pre-Hearing Security.
4 |     This Petition is based on the Petition to Vacate filed on September 22, 2009, the attached
5 | Memorandum of Points and Authorities, all pleadings and papers concurrently on file and such
6 | other oral and documentary evidence as may be presented at the hearing of this petition.

8 | DATED: September 23, 2009      ROXBOROUGH, POMERANCE, NYE & ADREANI LLP

10 | By:_____
        DREW E. POMERANCE
11 |         MICHAEL L. PHILLIPS
        Attorneys for Petitioners KOOSHAREM
12 |         CORPORATION, a California Corporation
        dba SELECT PERSONNEL SERVICES and
13 |         ABLEST, INC., a California Corporation

2

1

**<u>TABLE OF CONTENTS</u>**

2    INTRODUCTION ........................................................................................................... 1

3    I. ARGUMENT ............................................................................................................... 3

4        A.    No Dispute Was, Or Is, Before The Arbitration Panel Regarding The

5             Collateral Requirements Under The Agreements Upon Which The Arbitration

6             Proceedings Were Initiated ..................................................................................... 4

7        B.    The Interim Order Represents A Manifest Disregard For The Law .............................. 6

8             1.    The Panel Failed To Consider Zurich's Election To Pursue Arbitration

9                 As Opposed To Enforcing Its Rights Under The Collateral Provision Of The

10                 Retrospective Premium Agreement, Or Its Waiver Of Its Right To Collateral

11                 Under The Retrospective Premium Agreement Or Incurred

12                 Deductible Agreement ................................................................................ 6

13             2.    The Panel Failed To Adequately Consider Ablest's Contractual Rigth To Offset

14                 Any Amounts Purportedly Due To Zurich ........................................................ 8

15             3.    The Arbitration Panel Failed To Require Zurich To Meet Its Threshold Burden Of

16                 Establishing A Likelihood Of Success On The Merits Before Imposing The

17                 Drastic Remedy Of Pre-Hearing Security ......................................................... 9

18    II. CONCLUSION ......................................................................................................... 11

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITES

## Authorities

*Albany Sav. Bank, F.S.B. v. All Advantages Limo. Serv., Inc.*
( N.Y. App. Div. 1989) 546 N.Y.S.2d 207,208-209 ...................................................9, 10

*All States Warehousing, Inc. v. Mammoth Storage Warehouses, Inc.*
7 A.D.2d 714, 180 N.Y.S.2d 118 (1st Dep't 1958) ...................................................10

*Comm'rs of State Ins. Fund v. Branicki*
2 Misc. 3d 972, 976, 775 N.Y.S.2d 443 ...................................................10

*Drexel Burnham Lambert, Inc. v. Ruebsamen*
(N.Y. App. Div. 1988) 531 N.Y.S.2d 547 ...................................................9

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.*
(1994) 30 Cal.App.4th 54 ...................................................7

*Furia v. Furia*
(2d Dep't 1986)116 A.D.2d 694, 498 N.Y.S.2d 12 ...................................................10

*Halligan v. Piper Jaffray, Inc.*
(2d Cir. 1998) 148 F.3d 197 ...................................................6

*Island Creek Coal Sales Co. v. Gainesville*
(6th Cir.1984) 729 F.2d 1046 ...................................................3

*Jordan v. California Dept. of Motor Vehicles*
(2002) 100 Cal.App.4th 431 ...................................................3

*Madison Ave. & 92nd St. Corp. v. Hickey*
(1959) 15 Misc 2d 1002, 182 NYS2d 180 ...................................................7

*Michaels Elec. Supply Corp. v. Trott Elec.*
(N.Y. App. Div. 1996) 647 N.Y.S.2d 839 ...................................................9

*Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*
(9th Cir. 1995) 44 F.3d 826 ...................................................6

*Montes v. Shearson Lehman Bros., Inc.*
(11th Cir. 1997) 128 F.3d 1456 ...................................................6

*Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*
(9th Cir. 1991) 935 F.2d 1019) ...................................................3

*Perrotta v. Giannoccaro*
(N.Y. Sup. Ct. 1988)532 N.Y.S.2d 998 ...................................................10

*San Martine Compania De Nav. v. Saguenay Term. Ltd.*
    (9th Cir. 1961) 293 F.2d 796 ............................................................................6

*Sperry Int'l Trade, Inc. v. Israel*
    (2d Cir.1982) 689 F.2d 301 .............................................................................3

*Todd Shipyards Corp. v. Cunard Line, Ltd.*
    (9th Cir. 1991) 943 F.2d 1056 .........................................................................6


**<u>Statutes</u>**

*9 U.S.C. § 10(a)* ...................................................................................................4

*California Code of Civil Procedure § 1286.2* ......................................................3

*California Code of Civil Procedure § 1286.4* ......................................................4

*C.P.L.R. § 6212(a)* ............................................................................................10

*C.P.L.R. § 7502(c)* ............................................................................................10

SELECT PERSONNEL SERVICES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO VACATE

## INTRODUCTION

Petitioner KOOSHAREM CORPORATION, a California Corporation dba SELECT PERSONNEL SERVICES, ("Select") is a California corporation, with its principal place of business in the County of Santa Barbara, and is engaged in the business of providing temporary employment, staffing, and recruitment services. Petitioner ABLEST, INC. ("Ablest") is a Delaware corporation, and during the relevant times to this petition, was engaged in the business of providing temporary employment, staffing, and recruitment services. Select, for purposes of this litigation, is the successor-in-interest to Ablest, and assumed the rights of Ablest as they relate to policies of workers' compensation insurance, and related agreements, issued by Respondent, ZURICH AMERICAN INSURANCE COMPANY ("Zurich") to Ablest, which are the subject of the underlying arbitration proceedings and this Petition.

Ablest procured policies of workers' compensation insurance from Zurich with annual policy inception dates beginning in 1991 and spanning through January, 2006 (collectively referred to herein as "WC Policies"). The WC Policies covered workers' compensation claims throughout the United States and required Ablest to pay a deductible on claims made under said policy up to the first $250,000 for each person and per accident ($500,000 on the January 1, 2006 Policy). These are what are known in the industry as "Large Deductible" policies. Large Deductible policies are potentially attractive to employers like Ablest because the premium paid to the insurer is substantially less than with more traditional forms of insurance (*i.e.,* a guaranteed cost program) in which the insurer pays all claims.

Under Ablest's Large Deductible WC Policies, amounts paid on claims under the deductible amount are paid by Zurich, but reimbursed by Ablest by way of a deposit account required by and maintained by Zurich. Any amounts paid on claims up to the deductible amount on the WC Policies, therefore, are Ablest's money. Zurich billed and continues to bill Ablest monthly and/or quarterly for these amounts. As a result of this relationship, Zurich stands in Ablest's shoes as its agent with regard to each claim made under the WC Policies. Furthermore, unlike any other type of insurance policy, the reserves that workers' compensation insurance carriers, such as Zurich, place on each individual claim, the amount paid out under claim, and the

1

1   manner in which a carrier handles and administers the claim, inexorably controls the amount
2   Ablest is required to pay in premiums to Zurich and other subsequent carriers.
3       On July 7, 2008, Zurich initiated arbitration proceedings to recover amounts from Ablest
4   purportedly owed under the WC Policies and related agreements.  The arbitration proceedings
5   were initiated pursuant to an arbitration provision contained within an Incurred Deductible and
6   Incurred Loss Retrospective Rating Agreement ("Incurred Deductible Agreement") entered into
7   and a Retrospective Premium Agreement entered into between the parties in 1992 and 1993
8   between the parties beginning in 1997 and subsequently renewed through the 2006 policy year,
9   in the most recent promulgation of its Demand for Arbitration, Zurich seeks $1,856,251 in
10  amounts purportedly owed pursuant to the WC Policies and related agreements.
11      The arbitration proceedings are being administered by the American Arbitration
12  Association under Case Number 51 195 Y 00901 08 before the following panel of arbitrators:
13      Katherine L. Billingham (Umpire)
        Timothy M. Yessman
14      Judge Douglas M. Moore, Jr
15      Ablest (and Select) responded to the Demand for Arbitration denying each and every
16  allegation in the Demand, and denied that Zurich is entitled to any of the relief requested in its
17  Demand.  In addition, Ablest presented a Cross-Demand which alleges that throughout Ablest's
18  relationship with Zurich, Zurich engaged in several acts and/or omissions that negatively impacted
19  the handling, administration, investigation and defense of workers' compensation claims made
20  under the WC Policies, all to Ablest's detriment, and that Zurich mishandled, overpaid and over-
21  reserved claims made under the WC Policies in such a way as to artificially increase Ablest's
22  financial obligations.  In its Cross-Demand, Ablest alleged substantial breaches of contract by
23  Zurich that caused Ablest to suffer damages in excess of $5,000,000, which include having to pay
24  and being forced to pay unnecessarily increased premiums as well as increased losses, and have
25  also had to incur expenses and costs to hire outside consultants, experts and attorneys to assist
26  Ablest in obtaining all of the above benefits under the WC Policies.
27      On or about March 13, 2009 Zurich filed a motion for pre-hearing security in the amount
28  of $1,800,138.52, which was granted by the Panel who, on or about September 10, 2009, issued an

1   Interim Order which requires Ablest and/or Select to post an unconditional and irrevocable Letter

2   of Credit in the amount of $1,100,000 in favor of Zurich as pre-hearing security in the arbitration

3   proceedings. The arbitration proceedings remain in the pleading stage and the Interim Order is the

4   subject of this petition to vacate.

5   **I.     ARGUMENT**

6           This Court has authority under both the California Arbitration Act ("CAA") *California*

7   *Code of Civil Procedure* §1286.2 and the Federal Arbitration Act ("FAA") to review and vacate an

8   arbitration panel's interim order that requires a party to post a letter of credit as interim security

9   pending arbitration because such an order is sufficiently "final" to permit judicial review. (*Pacific*

10  *Reinsurance Management Corp. v. Ohio Reinsurance Corp.* (9th Cir.1991)935 F.2d 1019, 1022-

11  23; *Island Creek Coal Sales Co. v. Gainesville*, (6th Cir.1984) 729 F.2d 1046, 1049; *Sperry Int'l*

12  *Trade, Inc. v. Israel*, (2d Cir.1982) 689 F.2d 301, 304 n. 3).  Moreover, the Interim Order itself

13  provides that it can be confirmed by a court of competent jurisdiction.  As such, it can also be

14  vacated by a court of competent jurisdiction.

15          Under the CAA, *California Code of Civil Procedure* §1286.2 provides the procedural and

16  substantive basis to vacate the Interim Order.  (*See Jordan v. California Dept. of Motor Vehicles*,

17  (2002) 100 Cal.App.4th 431, 443.) Section 1286.2 mandates vacating an award on the following

18  applicable grounds:

19          (1)     The Award was procured by corruption, fraud, or other undue means.

20          (2)     There was corruption in any of the arbitrators.

21          (3)     The rights of the party were substantially prejudiced by misconduct of the neutral
                    arbitrator.
22
            (4)     The arbitrators exceeded their powers and the award cannot be corrected without
23                  affecting the merits of the decision upon the controversy submitted.

24          (5)     The rights of the party were substantially prejudiced ... by the refusal of the
                    arbitrators to hear evidence material to the controversy or by other conduct of the
25                  arbitrators contrary to the provisions of this title.  *California Code of Civil*
                    *Procedure* §1286.2
26
            Pursuant to the FAA, this Court may vacate an award on the following four grounds:
27
            (1)     Where the award was procured by corruption, fraud, or undue means;
28
            (2)     Where there was evident partiality or corruption in the arbitrators, or

either of them;

(3)     Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or

(4)     Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *9 U.S.C. § 10(a); see also Pacific Reinsurance*, 935 F.2d at 1023.

Under both authorities if any one ground applies, the court *must* vacate the award. Although Section 1286.2(a)(4) permits the possibility of a court correcting rather than vacating an arbitral award in some circumstances, because the Arbitration Panel here had <u>no authority to issue the Interim Order,</u> it cannot be corrected. Only vacating the Interim Order provides any meaningful relief to Select.

Here, the Arbitration Panel's Interim Order should be vacated because the arbitrators exceeded their powers and authority. The Arbitration Panel lacked the authority and jurisdiction to order Ablest to post collateral pursuant to the parties' agreements because <u>no dispute regarding the collateral provision</u> of the agreements was ripe for consideration because at no time to date has <u>such an issue been properly presented to the Arbitration Panel for resolution.</u>

In addition, the Interim Order demonstrates a manifest disregard of the law because (1) the Arbitration Panel failed to acknowledge Zurich's election to initiate arbitration proceedings as a waiver of its right to assert its rights as they pertain to collateral under the Retrospective Premium Agreements, (2) the Arbitration Panel failed to give due consideration to Ablest's contractual right to offset under <u>both</u> the Retrospective Premium Agreements <u>and</u> the Incurred Deductible Agreement, and (3) the Arbitration Panel failed to require Zurich to meet its threshold burden of establishing a likelihood of success on the merits before imposing the drastic remedy of requiring Select and/or Ablest to post pre-hearing security. For these reasons the Interim Order should be vacated.

A.     <u>No Dispute Was, Or Is, Before The Arbitration Panel Regarding The Collateral Requirements Under The Agreements Upon Which The Proceedings Were Initiated.</u>

Zurich's ever-evolving promulgations of its Demand for Arbitration, which purport to set

1  forth the scope and extent of the claims to be adjudicated in the arbitration proceedings, are

2  consistent in one key manner: Zurich seeks an award from the Arbitration Panel in an amount

3  equal to the unpaid balance purportedly due and owing under the (1) Retrospective Premium

4  Agreement, and (2) Incurred Deductible and Incurred Loss Retrospective Rating Agreement.

5  What is consistently absent from Zurich's allegations is any mention of a dispute between the

6  parties regarding the collateral requirements pursuant to these agreements, much less any

7  allegation that Ablest was, or is, in default of such requirement.

8      The Incurred Deductible Agreement specifically defines those events that cause Ablest to

9  be in default of its obligations:

10      "Default occurs when

11      1.  You fail to pay any amount when it is due under this Agreement including but not
            limited to the initial Loss Reimbursement Fund amount and subsequent
12          adjustments.

13      2.  You file a petition in bankruptcy, a declaration of insolvency or an action or
            proceeding for dissolution is filed against You; a receiver or trustee is appointed for
14          You; You execute a workout agreement; You make an assignment for the benefit of
            creditors; or any other proceeding or arrangement of a similar nature is instituted by
15          or against You.

16      3.  You fail to provide the initial, adjusted or replacement Collateral as required in this
            Agreement."

17

18      Zurich's Third Amended Demand for Arbitration invoked the jurisdiction of the

19  Arbitration Panel to resolve the dispute regarding Ablest's purported default based on its failure to

20  pay amounts allegedly due under the Incurred Deductible Agreement.  This is consistent with the

21  provision of the Incurred Deductible Agreement regarding arbitration which states that, in the

22  event of a dispute, "Written notice requesting arbitration will be sent certified or registered mail,

23  return receipt requested."  However, (1) at no point throughout their fifteen (15) year business

24  relationship did Zurich demand Ablest post collateral, (2) was Ablest ever given notice that it was

25  in default under the collateral provision of the Incurred Deductible Agreement, (3) or did Zurich

26  demand arbitration of any issues regarding the collateral provision of the Incurred Deductible

27  Agreement or Retrospective Premium Agreement.  As such, the Arbitration Panel lacked the

28  authority and jurisdiction to order Ablest to post collateral pursuant to the parties' agreements

1   because no dispute regarding the collateral provisions of these agreements was ripe for

2   consideration because at no time to date such an issue been properly presented to the Arbitration

3   Panel for resolution.

4       **B.    The Interim Order Represents A Manifest Disregard For The Law.**

5          Numerous Circuit Courts, including the Ninth Circuit, have recognized that arbitration

6   awards in "manifest disregard of the law" will not be upheld. *See, e.g., Michigan Mut. Ins. Co. v.*

7   *Unigard Sec. Ins. Co.,* (9th Cir. 1995) 44 F.3d 826, 832; *Todd Shipyards Corp. v. Cunard Line,*

8   *Ltd.,* (9th Cir. 1991) 943 F.2d 1056, 1060). Manifest disregard "means something more than just

9   an error in the law or a failure on the part of the arbitrators to understand or apply the law."

10  *Michigan Mut.,* 44 F.3d at 832. "It must be clear from the record that the arbitrators recognized the

11  applicable law and then ignored it." *Id.* As noted in *San Martine Compania De Nav. v. Saguenay*

12  *Term. Ltd.,* (9th Cir. 1961) 293 F.2d 796, 801, "manifest disregard of the law ... might be present

13  when arbitrators understand and correctly state the law, but proceed to disregard the same." The

14  Second and Eleventh circuits have applied the manifest disregard standard to vacate arbitration

15  awards where arbitrators were aware of the law and nonetheless disregarded it. (*See, e.g.,*

16  *Halligan v. Piper Jaffray, Inc.,* (2d Cir. 1998) 148 F.3d 197, 204 (vacating NASD award denying

17  age discrimination claims), *cert. denied,* 526 U.S. 1034 (1999); *Montes v. Shearson Lehman Bros.,*

18  *Inc.,* (11th Cir. 1997) 128 F.3d 1456, 1462 (vacating award denying claim for overtime wages "in a

19  case in which the evidence to support the award was marginal.").

20         1.    **The Panel Failed To Consider Zurich's Election To Pursue Arbitration As Opposed To Enforcing Its Rights Under The Collateral Provision**

21                  **Of The Retrospective Premium Agreement, Or Its Waiver Of Its Rights To Collateral Under The Retrospective Premium Agreement Or**

22                  **Incurred Deductible Agreement.**

23         The Arbitration Panel's failure to acknowledge Zurich's election to initiate arbitration

24  proceedings as a waiver of its right to assert its rights as they pertain to collateral under the

25  Retrospective Premium Agreements demonstrates a failure to give due deference to the parties'

26  agreement and a manifest disregard for the law.

27         As conveyed by Zurich in all of the pleadings it presented to the Arbitration Panel, the

28  amounts sought by Zurich, and the Arbitration Panel's jurisdiction, arise, at least in part, out of the

1  Retrospective Premium Agreements with effective dates of January 1, 1992 and January 1, 1993.

2  Furthermore, at least a significant portion of the course and conduct of the parties throughout their

3  relationship have been based upon these Retrospective Premium Agreements.

4       The Retrospective Premium Agreements both contain a provision which sets forth Zurich's

5  options in the event of a payment dispute.  This provision states in pertinent part:

6       "If the Insured fails to pay the Company within thirty (30) days of receipt of demand and
        to offer such list of disputed items, the Company may: 1) Draw upon or make claims
7       against any collateral provided by the Insured and held by the Company in order to
        guarantee the payment of the Insured's obligations, regardless of whether or not said
8       Collateral was provided as respects any period subject to this Agreement, or 2) Send a
        demand for Arbitration to the Insured." (emphasis added)
9
        The contract provision is clear:  Zurich was either entitled to enforce its rights as they
10
   pertain to collateral under the Retrospective Premium Agreements or initiate arbitration
11
   proceedings.  Zurich chose to initiate arbitration proceedings and therefore should have been
12
   precluded from seeking to also enforce its rights as they pertain to collateral under the
13
   Retrospective Premium Agreements.
14
        Zurich's choice to initiate arbitration proceedings as opposed to enforcing its rights as they
15
16 pertain to collateral under the Retrospective Premium Agreements not only should have

17 contractually foreclosed Zurich's ability to seek additional collateral, it represents further

18 substantial evidence that Zurich waived its right to seek additional collateral, whether under the

19 Retrospective Premium Agreement or the Incurred Deductible Agreement.

20       It is well-established under both California and New York law that waiver is the

21 intentional relinquishment of a known right after full knowledge of the facts and does not require

22 any act or conduct by the other party. *(DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café &*

23 *Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 59; *Madison Ave. & 92nd St. Corp. v. Hickey*, (1959)

24 15 Misc 2d 1002, 182 NYS2d 180.)  The pivotal issue in a claim of waiver is the intention of the

25 party who allegedly relinquished the known legal right.  The Arbitration Panel's Interim Order

26 failed to acknowledge that Zurich's conscious decision to initiate arbitration proceedings as

27 opposed to enforcing its rights as they pertain to collateral under the Retrospective Premium

28 Agreements or Incurred Deductible Agreements constituted an effectual waiver of such rights.

1    Under such circumstances where Zurich itself never required collateral, the Arbitration

2  Panel acted outside the scope of its jurisdiction and demonstrated a manifest disregard for the law

3  by obliging Zurich's request to impose a contractual term that was <u>never agreed upon</u> between the

4  parties, or otherwise enforced between the parties.

5           **2.    <u>The Panel Failed To Adequately Consider Ablest's Contractual Right</u>**
             **<u>To Offset Any Amounts Purportedly Due To Zurich.</u>**
6

7    The Arbitration Panel's failure to give due consideration to Ablest's contractual right to

8  offset under <u>both</u> the Retrospective Premium Agreements <u>and</u> the Incurred Deductible and

9  Incurred Loss Retrospective Rating Agreement represents a manifest disregard of the parties'

10 contractual agreements and the law.

11    <u>Section "F"</u> of the Retrospective Premium Agreements is entitled "Right of Offset" and

12 states in its entirety that:

13           "The Company and the Insured may offset any balance (s) due from one to the

14           other under the terms of this Agreement."

15    <u>Section "M"</u> of the Incurred Deductible Agreements is entitled "Offset" and states in its

16 entirety:

17

18           "The parties under this agreement each reserve the right to offset any

19           balance due from one party to the other under this or any other

20           agreement entered into between us, except as prohibited by law."

21    According to the <u>clear terms</u> of each agreement, <u>either party</u> is entitled to offset balances

22 due from one party to another.  Thus, while Zurich contends that Ablest owes it $1.9 million,

23 Ablest contends under its cross-demand that they do not owe Zurich any money because of

24 <u>Zurich's breach of their contractual duties</u> under the WC policies, and further, that Zurich's

25 various breaches of the duty to defend has resulted in an affirmative claim for millions of dollars

26 of damages to Ablest.  As such, by granting Zurich's motion for pre-hearing security, the

27 Arbitration Panel failed to give due consideration to Ablest's <u>viable</u> affirmative claims and claims

28 for offset by prematurely adjudicating the merits of the dispute and the parties' respective claims

1   without allowing the parties to present <u>any</u> competent evidence on these core issues.

2           **3.**    <u>The Arbitration Panel Failed To Require Zurich To Meet Its Threshold</u>
    <u>Burden Of Establishing A Likelihood Of Success On The Merits Before</u>
3               <u>Imposing The Drastic Remedy Of Pre-Hearing Security.</u>

4           The Incurred Deductible Agreement contains an arbitration provision which provides that

5   "Any dispute arising out of the interpretation, performance or alleged breach of this Agreement,

6   shall be submitted to arbitration in accordance with the following procedure:" The arbitration

7   provision then goes on to describe the manner in which the arbitrators are to be selected and the

8   authority to be conferred on the arbitrators.  The arbitration provision, however, is <u>silent</u> regarding

9   whether the arbitrators have the power to order a party to post security, let alone <u>pre-judgment</u>

10  <u>security</u>, during the arbitration itself.  As a consequence of the provision's silence on the security

11  issue, the Arbitration Panel was required to look outside the arbitration provision to determine

12  whether or not Ablest can be compelled to post pre-hearing security.  In other words, since the

13  contract does not authorize the posting of security during an arbitration proceeding, the Arbitration

14  Panel was <u>required</u> to determine if the applicable law allows an arbitrator to order a party to post

15  security during the pendency of the proceeding.  Under the circumstances presented here, the

16  applicable law <u>does not</u> support the Arbitration Panel's Interim Order requiring Ablest to post pre-

17  hearing security.

18          Zurich's motion for "pre-hearing security" was nothing more than a thinly veiled attempt

19  to obtain a pre-judgment writ of attachment.  While Ablest does not concede that New York law is

20  applicable to the disputes before the Arbitration Panel, even if New York law, as Zurich continues

21  to argue, is applicable, the Arbitration Panel's Interim Order was in manifest disregard of the law.

22  New York law provides clear and explicit substantive standards for obtaining an attachment in aid

23  of arbitration.  Article 62 of the New York Civil Practices Law and Rules ("C.P.L.R.") provides

24  that in order to obtain what amounts to a pre-judgment writ of attachment under New York law, a

25  party must demonstrate: (1) that they have satisfied the grounds for receiving an attachment; and

26  (2) that they are likely to succeed on the merits of their underlying case. (*See Drexel Burnham*

27  *Lambert, Inc. v. Ruebsamen,* (N.Y. App. Div. 1988) 531 N.Y.S.2d 547, 550; *see also Michaels*

28  *Elec. Supply Corp. v. Trott Elec.,* (N.Y. App. Div. 1996) 647 N.Y.S.2d 839, 840; *Albany Sav.*

9

SELECT PERSONNEL SERVICES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION...

1   *Bank, F.S.B. v. All Advantages Limo. Serv., Inc.,* ( N.Y. App. Div. 1989) 546 N.Y.S.2d 207,208-
2   209.)  Under Article 62, the moving party must also submit affidavits demonstrating that they have
3   satisfied the aforementioned criteria. (*See* C.P.L.R. § 6212(a); *Perrotta v. Giannoccaro,* (N.Y.
4   Sup. Ct. 1988) 532 N.Y.S.2d 998, 999).

5         Zurich did not, and could not, establish that it satisfied the grounds for receiving what
6   amounts to a prejudgment writ of attachment.  Pursuant to C.P.L.R. §7502(c), the sole basis for
7   receiving a prejudgment writ of attachment in connection with an arbitrable controversy is that the
8   award to which the applicant may be entitled may be rendered ineffectual without such provisional
9   relief.   Unlike the backdrop of the cases relied upon by Zurich in its moving papers to the
10  Arbitration Panel, Zurich presented no evidence to the Panel to support such a contention.  Zurich
11  presented no evidence that Ablest and Select do not have the financial resources to satisfy an
12  award made by the Arbitration Panel or that Ablest and Select have engaged in fraudulent
13  transfers of assets in an attempt to render any award by the Arbitration Panel ineffectual.

14        Furthermore, and equally compelling, the Panel failed to require Zurich to establish that it
15  is likely to succeed on the merits of its underlying claim.  As extensively briefed to the Arbitration
16  Panel, it is well-established (under both California and New York law) that a plaintiff seeking
17  recovery for breach of contract must do more than simply prove the existence of the contract and
18  the defendant's failure to discharge his obligations under it. (*See Comm'rs of State Ins. Fund v.*
19  *Branicki,* 2 Misc. 3d 972, 976, 775 N.Y.S.2d 443,446 (Civ. Ct. Kings Co. 2004) (citing *Furia v.*
20  *Furia,* 116 A.D.2d 694, 498 N.Y.S.2d 12 (2d Dep't 1986); *All States Warehousing, Inc. v.*
21  *Mammoth Storage Warehouses, Inc.,* 7 A.D.2d 714, 180 N.Y.S.2d 118 (1st Dep't 1958)).  Rather,
22  to prevail, a party (such as Zurich in this case) must also prove that it performed its own
23  obligations under the contract. *Id.*

24        No discovery was conducted in the arbitration proceedings prior to the Arbitration Panel
25  granting Zurich's motion for pre-hearing security and no competent evidence was presented to the
26  Arbitration Panel establishing that Zurich complied with its contractual obligations.  As such, the
27  Arbitration Panel's analysis was limited to the allegations made by each of the parties.  Ablest
28  clearly alleged in its pleadings presented to the Arbitration Panel that Zurich materially breached

10

SELECT PERSONNEL SERVICES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S ...

1 the terms of the WC Policies. If established, Ablest's claims would not only amount to cognizant

2 claims for offset and affirmative relief, <u>such claims may serve to completely foreclose recovery by</u>

3 <u>Zurich</u>. As such, Zurich did not, and could not establish such a likelihood of success on the merits

4 that would support the Arbitration Panel's Interim Order which requires Select and/or Ablest to

5 post pre-hearing security.

6      This is *not* a case about post-arbitration remedies, or about judicial review of final arbitral

7 decisions. In this case, there has yet to be an evidentiary hearing on the core issues before the

8 Arbitration Panel. Nonetheless, prompted by Zurich's counsel, the Arbitration Panel dispensed

9 with any presentation of evidence and proceeded directly to what, in effect, was a final

10 adjudication on the merits. Neither the arbitration provisions under which the proceedings are

11 being conducted, or any applicable law, authorize the Arbitration Panel to order Select and/or

12 Ablest to essentially pay a disputed amount *before* an evidentiary hearing.

13      Based on the foregoing, the Arbitration Panel demonstrated a manifest disregard for the

14 law by entering an Interim Order that amounts to granting a pre-judgment writ of attachment.

15 **II.    CONCLUSION**

16      Requiring Ablest and/or Select to post what amounts to a pre-judgment writ of attachment

17 at this early stage in the proceedings is not only contrary to the law, it is intrinsically unfair and

18 constitutes a premature adjudication on the merits of both parties' claims. For the reasons stated

19 herein, the Arbitration Panel's Interim Order should be vacated because the arbitrators exceeded

20 their powers and authority by granting Zurich's motion for pre-hearing security and the Interim

21 Order demonstrates a manifest disregard of the law.

22 DATED: September 23, 2009          ROXBOROUGH, POMERANCE, NYE & ADREANI LLP

23

24                                   By:_____

25                                      DREW E. POMERANCE
                                        MICHAEL L. PHILLIPS
26                                      Attorneys for Petitioner KOOSHAREM
                                        CORPORATION, a California Corporation
27                                      dba SELECT PERSONNEL SERVICES

28

11

**PROOF OF SERVICE**

STATE OF CALIFORNIA            )
                              ) ss.
COUNTY OF LOS ANGELES         )

     I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 5820 Canoga Avenue, Suite 250, Woodland Hills, California 91367.

     On September 23, 2009, I served the foregoing document described as **SELECT PERSONNEL SERVICES AND ABLEST, INC.'S NOTICE OF HEARING ON PETITION TO VACATE ARBITRATION PANEL'S INTERIM ORDER GRANTING ZURICH'S MOTION FOR PRE-HEARING SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES,** on the interested parties in this action by placing the original / a true copy thereof enclosed in (a) sealed envelope(s) addressed as follows:

**[SEE ATTACHED MAILING LIST]**

☒    **BY U.S. MAIL:** I placed a true copy of the foregoing document in sealed envelopes individually addressed to each of the parties listed on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    **BY EMAIL:** I caused such documents listed above to be transmitted via e-mail to the number(s) set forth above.

☒    **STATE:** I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed on September 23, 2009, in the City of Woodland Hills, California.

ELIA RAMIREZ

12

SELECT PERSONNEL SERVICES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO VACATE

## SERVICE LIST

1

2

Steven T. Whitmer, Esq.
3 | LOCKE LORD BISSELL & LIDELL, LLP
111 South Wacker Drive
4 | Chicago, IL. 60606
swhitmer@lockelord.com
5

6 | Meredith V. Hattendorf, Esq.
LOCKE LORD BISSELL & LIDELL, LLP
7 | 111 South Wacker Drive
Chicago, IL. 60606
8 | mhattendorf@lockelord.com

9

Zurich American Insurance Company                    **BY MAIL ONLY**
10 | Administrative Office
1400 American Lane
11 | Schaumberg, Illinois, 60196-1056
Attention: Assistant General Counsel
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ADR-106

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Roxborough, Pomerance, Nye & Adreani LLP<br>Drew E. Pomerance, (101239)<br>5820 Canoga Ave, Suite 250<br>Woodland Hills, CA 91367<br>TELEPHONE NO.: (818) 992-9999    FAX NO. *(Optional):* (818) 992-9991<br>E-MAIL ADDRESS *(Optional):* dep@rpnalaw.com<br>ATTORNEY FOR *(Name):* Petitioners, Select Personnel Services & Ablest, Inc. | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Barbara |
|---|
| STREET ADDRESS: 1100 Anacapa Street |
| MAILING ADDRESS: 1100 Anacapa Street, |
| CITY AND ZIP CODE: Santa Barbara, 93121 |
| BRANCH NAME: Anacapa Division |

PETITIONER: Koosharem Corp. dba Select Personnel Services; Ablest, Inc.

RESPONDENT: Zurich American Insurance Company

| PETITION TO ☐ CONFIRM    ☐ CORRECT    ☑ VACATE<br>CONTRACTUAL ARBITRATION AWARD | |
|---|---|

| Jurisdiction *(check all that apply):* | CASE NUMBER: |
|---|---|
| ☐ Action is a limited civil case<br>    Amount demanded    ☐ does not exceed $10,000<br>                              ☐ exceeds $10,000, but does not exceed $25,000<br>☑ Action is an unlimited civil case (exceeds $25,000) | |

**NOTICE:** You may use this form to request that the court confirm, correct, or vacate an award in an arbitration conducted pursuant to an agreement between the parties that is subject to Code of Civil Procedure section 1285 et seq. and that does not involve an attorney-client fee dispute. If you are requesting court action after an attorney-client fee arbitration award, please read Alternative Dispute Resolution form ADR-105, *Information Regarding Rights After Attorney-Client Fee Arbitration.*

1. **Petitioner and respondent.** Petitioner *(name each):*

   Koosharem Corporation, a California Corporation, dba Select Personnel Services; Ablest, Inc.

   alleges and requests relief against respondent *(name each):*

   Zurich American Insurance Company

2. **Contractual arbitration.** This petition requests the court to confirm, correct, or vacate an award in an arbitration conducted according to an agreement between the parties that is subject to Code of Civil Procedure section 1285 et seq.

3. **Pending or new action.**
   a. ☐ A court case is already pending, and this is a petition filed in that action. *(If so, proceed to item 4.)*
   b. ☑ This petition commences a new action. *(If so, complete items 3b(1) through 3b(4).)*
      (1) **Petitioner's capacity.** Each petitioner named in item 1 is an individual,
         ☑ except petitioner *(state name and complete one or more of the following):* Koosharem Corp.; Ablest, Inc.
         (a) ☑ is a corporation qualified to do business in California.
         (b) ☐ is an unincorporated entity *(specify):*
         (c) ☐ is a representative *(specify):*
         (d) ☐ is *(specify other capacity):*
      (2) **Respondent's capacity.** Each respondent named in item 1 is an individual,
         ☑ except respondent *(state name and complete one or more of the following):* Zurich American Insurance
         (a) ☐ is a business organization, form unknown.
         (b) ☑ is a corporation.
         (c) ☐ is an unincorporated entity *(specify):*
         (d) ☐ is a representative *(specify):*
         (e) ☐ is *(specify other capacity):*

| Form Approved for Optional Use<br>Judicial Council of California<br>ADR-106 [New January 1, 2004] | PETITION TO CONFIRM, CORRECT, OR VACATE<br>CONTRACTUAL ARBITRATION AWARD<br>(Alternative Dispute Resolution) | Code of Civil Procedure, § 1285 et seq.<br><br>American LegalNet, Inc.<br>www.USCourtForms.com |
|---|---|---|

PETITIONER: Koosharem Corp. dba Select Personnel Services; Ablest, Inc.

RESPONDENT: Zurich American Insurance Company

CASE NUMBER:

3. b.  (3)  **Amount or property in dispute.** This petition involves a dispute over *(check and complete all that apply)*:
    (a) ☑ the following amount of money *(specify amount)*: $ 1,100,000.00
    (b) ☐ property *(if the dispute involves property, complete both of the following)*:
        (i) consisting of *(identify property in dispute)*:
        (ii) having a value of *(specify value of property in dispute)*: $

    (4) ☑ **Venue.** This court is the proper court because *(check (a) or (b))*:
        (a) ☐ this is the court in the county in which the arbitration was held.
        (b) ☑ the arbitration was not held exclusively in any county of California, or was held outside of California,
            **and** *(check one or more of the following)*:
            (i) ☐ this is the court in the county where the agreement was made.
            (ii) ☐ this is the court in the county where the agreement is to be performed.
            (iii) ☑ the agreement does not specify a county where it is to be performed and was not made in any
                county in California, and the following party resides or has a place of business in this county
                *(name of party)*:
                Koosharem Corporation dba Select Personnel Services; Ablest, Inc.
            (iv) ☐ the agreement does not specify a county where it is to be performed and was not made in any
                county in California, and no party to this action resides or has a place of business in California.

4. **Agreement to arbitrate.**
  a. **Date.** Petitioner and respondent entered into a written agreement on or about *(date)*: 1/1/92; 1/1/93; 1/1/97
  b. ☑ **Attachment.** A copy of the agreement is submitted as Attachment 4(b) and incorporated herein by this reference.
  c. **Arbitration provision.** Paragraph __C;N__ of the agreement provides for arbitration of disputes arising out of the
      agreement as follows *(either copy the arbitration provision in full or summarize the provision)*:
      The arbitration provisions purport to require arbitration of disputes arising out the agreements.

5. **Dispute subject to arbitration.** A dispute arose between petitioner and respondent concerning the following matter covered by the
    agreement to arbitrate *(summarize the dispute)*:
    Both parties allege breaches of agreements entered into in conjunction with policies of workers'
    compensation insurance;  A copy of Respondent's 6//12/09 Third Amended Demand for Arbitration, as well
    as Petitioner's 6/19/09 First Amended Cross-Demand are attached hereto as Attachment 5(a) and 5(b).

6. **Arbitrator.** The following person was duly selected or appointed as arbitrator *(name of each arbitrator)*:
    Katherine L. Billingham (Umpire)
    Timothy M. Yessman
    Judge Douglas M. Moore, Jr

7. **Arbitration hearing.** The arbitration hearing was conducted as follows *(complete both of the following)*:
  a. **Date** *(each date of arbitration)*: 6/11/09;6/19/09;7/9/09
  b. **Location** *(city and state where arbitration was conducted)*:
    6/11/09 in Chicago, Illinois; 6/19/09 and 7/9/09 via telephone.

8. **Arbitration award.**
  a. **Date of award.** The arbitration award was made on *(date)*: 9/10/09
  b. **Terms of award.** The arbitration award *(check one or more of the following)*:
    (1) ☐ requires ☐ petitioner ☐ respondent to pay the other party this amount: $
    (2) ☐ requires neither party to pay the other anything.
    (3) ☐ is different as to different petitioners and respondents.
    (4) ☑ provides *(specify other terms or check item 8(c) and attach a copy of the award)*:
        That Petitioners must post pre-hearing security in the amount of $1,100,00.00 in the form of an
        unconditional and irrevocable Letter of Credit in favor of Respondent.
  c. ☑ **Attachment of Award.** A copy of the award is submitted as Attachment 8(c).

9. **Service of award.**
  a. The signed award and an accompanying document indicates that the award was served on petitioner on *(date)*: 9/10/09
  b. ☑ Petitioner alleges that a signed copy of the award was actually served on *(date)*: 9/10/09

**PETITION TO CONFIRM, CORRECT, OR VACATE**
**CONTRACTUAL ARBITRATION AWARD**
**(Alternative Dispute Resolution)**

| PETITIONER: Koosharem Corp. dba Select Personnel Services; Ablest, Inc. | CASE NUMBER: |
|---|---|
| RESPONDENT: Zurich American Insurance Company | |

10. **Petitioner requests that the court** *(check all that apply):*

a. ☐ Confirm the award, and enter judgment according to it.

b. ☐ Correct the award and enter judgment according to the corrected award, as follows:

   (1) The award should be corrected because *(check all that apply):*

     (a) ☐ the amount of the award was not calculated correctly, or a person, thing, or property was not described correctly.

     (b) ☐ the arbitrator exceeded his or her authority.

     (c) ☐ the award is imperfect as a matter of form.

   (2) The facts supporting the grounds for correcting the award alleged in item 10b(1) are as follows *(if additional space is required, check here ☐ and submit facts on an attachment labeled 10b(2)):*

   (3) The award should be corrected as follows *(if additional space is required, check here ☐ and describe requested correction on an attachment labeled 10b(3)):*

c. ☑ Vacate (cancel) the award.

   (1) The award should be vacated because *(check all that apply):*

     (a) ☐ the award was obtained by corruption, fraud, or other unfair means.

     (b) ☐ an arbitrator was corrupt.

     (c) ☐ the misconduct of a neutral arbitrator substantially prejudiced petitioner's rights.

     (d) ☑ the arbitrator exceeded his or her authority, and the award cannot be fairly corrected.

     (e) ☐ the arbitrator unfairly refused to postpone the hearing or to hear evidence useful to settle the dispute.

     (f) ☐ an arbitrator failed to disclose within the time for disclosure a ground for disqualification of which the arbitrator was then aware.

     (g) ☐ an arbitrator should have disqualified himself or herself after petitioner made a demand to do so.

   (2) The facts supporting the grounds for vacating the award alleged in item 10c(1) are as follows *(if additional space is required, check here ☑ and submit facts on an attachment labeled 10c(2)):*

   (3) Petitioner ☐ does ☑ does not request a new arbitration hearing.

d. ☐ Award petitioner interest from *(date):*

   (1) ☐ at the statutory rate.

   (2) ☐ at rate of ____ % per year.

e. ☐ Award petitioner costs of suit:

   (1) ☐ in the amount of: $

   (2) ☐ according to proof.

f. ☐ Award petitioner attorney fees incurred in this action *(check only if attorney fees are recoverable in this action according to statute or the parties' agreement):*

   (1) ☐ in the amount of: $

   (2) ☐ according to proof.

g. ☐ Award petitioner the following other relief *(describe relief requested; if additional space is required, check here ☐ and describe relief on an attachment labeled 10g):*

11. **Pages and attachments.** Number of pages attached:

Date: 9/21/09

Drew E. Pomerance, Esq.
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PETITIONER OR ATTORNEY)

Retrospective Prem    Agreement                                    Page 1.

RETROSPECTIVE PREMIUM AGREEMENT - INFORMATION PAGES

RETROSPECTIVE PREMIUM AGREEMENT
Agreement No.  68579 - 92

1. NAME AND ADDRESS OF INSURED

   C.H. HEIST CORPORATION
   810 NORTH BELCHER ROAD
   CLEARWATER, FLORIDA  34625

2. NAME AND ADDRESS OF COMPANY

   ZURICH INSURANCE COMPANY (Z)
   Zurich Towers
   1400 American Lane
   Schaumburg, Illinois  60196 - 1056

3. POLICY PERIODS AND POLICIES SUBJECT TO AND EXCLUDED FROM THIS
   AGREEMENT

   Effective 12:01 A.M., Standard Time, 01/01/92,
   Expiring  12:01 A.M., Standard Time, 01/01/93,
   at the address of Insured stated above.

   a. Policy Period Option  (Selection indicated by  [X] )

      [X]  Annual Policy Period Premium Computation Option

      [ ]  Cumulative Policy Period Premium Computation Option

           Policy Periods Included:  1. _____ to _____
                                     2. _____ to _____
                                     3. _____ to _____

   b. Policy Numbers Subject

      Company  Line of Business    Effective/Expiration    Policy No.

         Z     Workers Comp        01/01/92 - 01/01/93      WC 6515929-01
         Z     Comm Gen'l Liab     01/01/92 - 01/01/93      GLO6516101-01
         Z     Business Auto       01/01/92 - 01/01/93      BAP6516102-01
         Z     Texas Auto          01/01/92 - 01/01/93      TAP6516103-01
         Z     Owners, Contractors
               Protective          01/01/92 - 01/01/93      OCP6516165-01
         Z     Owners, Contractors
               Protective          01/01/92 - 01/01/93      OCP6516166-01
         Z     Owners, Contractors
               Protective          01/01/92 - 01/01/93      OCP6516167-01

      and any other policies which afford the same or similar
      insurance issued during this policy period.

Form DRPA Edition 3 (09/89)                                  09-Mar-92

                                                             Z00001

Retrospective Premi   Agreement                                      Page 2.

   c. Policy Numbers – Policy or Coverage Excluded – NONE

4. EARNED RETROSPECTIVE PREMIUM AND EXCESS LOSS PREMIUM – FACTORS AND
RATES – SUBJECT TO REVISION FOR EACH ANNUAL POLICY PERIOD

WC Payroll as defined in this Agreement Excludes Self-Insured
states but Includes Stop Gap Payroll for covered entities.

   a. Basic Premium for this policy period.

     $9,070,880 multiplied by 1.404 per $100 of Audited
WC Payroll.

     Estimated Annual Basic Premium is:
$127,352, adjustable on the basis herein described.

   b. Excess Loss Premium – Each Accident – Workers Compensation for
this policy period.

     $9,070,880 multiplied by .1764 per $100 of Audited
WC Payroll.

     Estimated Annual Excess Loss Premium – Each Accident – Workers
Compensation is:
$16,000, adjustable on the basis herein described.

   c. Loss Factors for this policy period.  Applies to Losses and
Allocated Claim Expenses.

     1) 1.224 multiplied by Incurred Losses for New York Workers
Compensation.
     2) 1.110 multiplied by Incurred Losses for All Other.

   d. Estimated Average Premium Tax Factor for this policy period
1.039.  Adjustable as described in Section B.,1.,g. of this
Agreement.

   e. Minimum Retrospective Premium for this policy period.

     $9,070,880 multiplied by 1.457 per $100 of Audited
WC Payroll.

     Estimated Annual Minimum Retrospective Premium is:
$132,203, adjustable on the basis herein described.

   f. Maximum Retrospective Premium for this policy period.

     $9,070,880 multiplied by 33.401 per $100 of Audited
WC Payroll.

Form DRPA Edition 3 (09/89)                                 09-Mar-92

Retrospective Prem.   Agreement                                    Page 3.

Estimated Annual Maximum Retrospective Premium is:
$3,029,754, adjustable on the basis herein described.

Cumulative Policy Period Premium Computation Option. Total
Incurred Losses as herein defined from each elapsed policy
period shall be included in each Retrospective Premium
Computation up to the Cumulative Maximum Retrospective Premium
at the time of each such computation.

g. Workers Compensation Residual Market Subsidy Charges (Excess
Premium) for this policy period.

.1009 multiplied by Audited WC Standard Premium.

Estimated Annual WC Residual Market Subsidy Charges are:
$54,159, adjustable on the basis herein described.

h. Automobile Liability Residual Market Subsidy Charges (Excess
Premium) for this policy period.

.0121 multiplied by Audited AL Standard Premium.

Estimated Annual Automobile Liability Residual Market Subsidy
Charges are:
$3,366, adjustable on the basis herein described.

5. LOSS LIMITS FOR THIS POLICY PERIOD

a. Workers Compensation Policies

1) $ 250,000 each accident involving one or more employees for
Workers Compensation as provided under the laws of any State,
Territory, Possession or the Federal Government, and
Voluntary Compensation or Other States Coverage.

2) $ 250,000 each accident involving one or more employees
arising out of Employers' Liability Coverage.

3) Allocated Loss Expense is payable by the Insured in addition
to these Loss Limits.

b. Commercial General Liability Policies or Policies Providing the
Same or Similar Insurance

1) $ 500,000 each occurrence involving one or more claimants
arising out of any coverage or coverages provided by the
policy on a combined basis.

2) Allocated Loss Expense is payable by the Insured in addition
to these Loss Limits.

Form DRPA Edition 3 (09/89)                                    09-Mar-92

Z00003

Retrospective Premi    Agreement                                    Page 4.

    c. Automobile Liability Policies

        1) $ 250,000 each occurrence/accident involving one or more
           claimants arising out of Bodily Injury, Property Damage,
           No-fault Benefits, Uninsured Motorists, Underinsured
           Motorists or Liability Coverage provided by the policy on a
           combined basis.

        2) Allocated Loss Expense is payable by the Insured in addition
           to these Loss Limits.

    d. The terms Occurrence and Accident as used herein have specific
       meanings in the Definitions Section of each policy.

Form DRPA Edition 3 (09/89)                                    09-Mar-92

Z00004

Retrospective Premi   Agreement                                    Page 5.

## RETROSPECTIVE PREMIUM AGREEMENT
### Agreement No. 68579 – 92

This Agreement between C.H. HEIST CORPORATION ("Insured") and ZURICH
INSURANCE COMPANY ("Company"), in consideration of premium paid by the
Insured and insurance provided by the Company, is effective at 12:01
A.M., Standard Time, January 1, 1992, at the address of the Insured as
stated in the Information Pages of this Agreement.

A.   POLICY PERIOD; POLICIES INCLUDED IN AND EXCLUDED FROM THIS
     AGREEMENT

     1. The policy period included in this Agreement is as stated in the
        Information Pages.

        Additional policy periods may be added to this Agreement by the
        issuance of Renewal Information Pages to form a part hereof.

     2. This Agreement includes:

        a. Those policies listed in the Information Pages, and

        b. Any other policies issued to the Insured by the Company
           during the policy period designated in the Information  Pages
           which afford the same or similar insurance.

     3. This Agreement excludes only those policies or coverages which
        afford the same or similar insurance to those listed as included
        in the Information Pages that are designated as being
        specifically excluded therein.

B.   COMPUTATION OF EARNED RETROSPECTIVE PREMIUM

     1. Definitions

        a. Earned Retrospective Premium shall be computed as follows
           subject to the definitions as stated herein:

           1) Basic Premium, plus

           2) Incurred Losses multiplied by the Loss Factor, then

           3)  The total of 1) and 2) multiplied by the Premium Tax
               Factor, but shall in no event be:

               a) Less than Minimum Retrospective Premium, or

               b) More than Maximum Retrospective Premium.

        b. Standard Premium is computed in accordance with the
           provisions of the policies, excluding Excess (or "E") Premium
           and Premium designated as Non-Subject.

Form DRPA Edition 3 (09/89)                              09-Mar-92

Z00005

Retrospective Prem . Agreement                                    Page 6.

    c. Basic Premium is:

       The rate as stated in the Information Pages multiplied by the audited exposure.

    d. Excess Loss Premium - Each Accident - Workers Compensation is:

       The rate as stated in the Information Pages multiplied by the audited exposure.

    e. Incurred Losses are:

      1) Actual losses paid, plus

      2) Reserves as estimated and established by the Company in accordance with its standard practice for unpaid losses, plus

      3) Allocated Loss Expense, defined as actual payments and estimated reserves for:

         a) legal expenses,
         b) independent adjusters' fees,
         c) attorneys' fees,
         d) court costs,
         e) interest (including pre and post judgement),
         f) expense for expert testimony,
         g) medical expense of any kind not incurred for the benefit of the claimant(s), and
         h) any other expense incurred under the policies which can be directly attributed to a specific claim.

       Allocated Loss Expense Excludes:

         a) The usual and normal expenses associated with investigation and adjustment of claims by employees of the Company, and

         b) Damages and payments for medical treatment.

      4) The Company's decision as to the proper reserve for any loss or Allocated Loss Expense shall be final.

      5) Incurred Losses shall exclude any amounts by which losses exceed the Loss Limits as stated in the Information Pages.

   f. Loss Factors are as stated in the Information Pages.

Retrospective Prem   Agreement                                   Page 7.

    g. Premium Tax Factor.  The Estimated Average Premium Tax
       Factor is as stated in the Information Pages.  At the first
       Retrospective Premium Computation for each policy period, the
       Premium Tax Factor shall be revised by the Company, if
       necessary, to reflect the actual premium tax rates in effect
       during that policy period.

    h. Minimum Retrospective Premium is:

       The rate as stated in the Information Pages multiplied by the
       audited exposure,

       but Minimum Retrospective Premium shall in no event be less
       than the Company is obligated to collect from the Insured in
       accordance with insurance department regulation.

    i. Maximum Retrospective Premium is:

       The rate as stated in the Information Pages multiplied  by
       the audited exposure.

    j. Workers Compensation Residual Market Subsidy Charges are:

       The factor as stated in the Information Pages multiplied by
       the Audited Premium.

    k. Automobile Liability Residual Market Subsidy Charges are:

       The factor as stated in the Information Pages multiplied by
       the Audited Premium.

C.  PAYMENT OF PREMIUM

    1. The Insured shall pay to the Company the Standard Premium,
       Earned Retrospective Premium and Excess Premium in accordance
       with the provisions of the policies, this Agreement or the
       Premium Payment Agreement, as applicable.

    2. Annual Policy Period Premium Computation Option.  Based upon the
       selection of the Annual Policy Period Option in the Information
       Pages, the Company shall compute and the Insured shall pay to
       the Company within ten (10) days of receipt of its demand
       therefore, Earned Retrospective Premium based upon Incurred
       Losses valued as of a date six (6) months after the expiration
       of each such period, as soon as practicable after such
       valuation.  Additional Earned Retrospective Premium Adjustments
       shall be computed by the Company based upon Incurred Losses
       valued annually thereafter as soon as practicable after such
       valuation dates, payable within ten (10) days of receipt of its
       demand therefore, until such time as the Company shall designate
       an adjustment as being final.

Retrospective Prem    Agreement                                    Page 8.

    3. Cumulative Policy Period Premium Computation Option.  Based upon
       the selection of the Cumulative Policy Period Option in the
       Information Pages, the Insured shall pay to the Company within
       ten (10) days of receipt of its demand therefore, the Earned
       Retrospective Premium based upon Incurred Losses valued as of a
       date six (6) months after the expiration of each such period,
       cumulatively for all such periods as have then elapsed, as soon
       as practicable after such valuation.  Additional Cumulative
       Earned Retrospective Premium Adjustments shall be computed by
       the Company based upon Incurred Losses valued annually
       thereafter as soon as practicable after such valuation dates,
       payable within ten (10) days of receipt of the Company's demand
       therefore, until such time as the Company shall designate an
       adjustment as being final.

    4. Responsibility For Payment; Additional and Return Premiums.
       Insured is solely responsible for the payment of additional
       Earned Retrospective Premium and for the receipt of any return
       premium.

       If Earned Retrospective Premium and Excess Premium as computed
       by the Company exceeds premium previously paid to the Company,
       the Insured shall pay, within ten (10) days of receipt of its
       demand therefore, that difference to the Company; if less, the
       Company shall credit or return that difference to the Insured.

    5. Bankruptcy or Ownership Change.  In the event of the Insured's
       insolvency, bankruptcy, involvement in a proceeding for
       dissolution, assignment for the benefit of creditors, or any
       other proceeding or arrangement of like nature and in the event
       of a material change in the ownership of the Insured, the
       Company may, at its option, make a valuation of Incurred Losses
       and compute Earned Retrospective Premium at any time
       thereafter.  If the amount due the Company is more than the
       premium previously paid by the Insured, such additional amount
       is due and payable within ten (10) days of receipt of demand
       therefore.

    6. Payment Disputes and Arbitration.

       a. Disputed Amounts.  In the event that any element or elements
         of the Earned Retrospective Premium Computation are disputed
         by the Insured, the Insured shall, within thirty (30) days of
         receipt of demand therefore, pay to the Company that portion
         of the Earned Retrospective Premium which is not disputed
         plus that portion of any disputed item that the Insured
         acknowledges as being valid. This thirty (30) day period may
         be extended only upon receipt of written request by the
         Insured followed by written consent from the Company.  The
         Insured must, at the time of such partial payment or request
         for extension, itemize each disputed item and offer an
         explanation as to their objections to such items.  If there

Retrospective Prem Agreement                                          Page 9.

is no dispute as to the amount of Earned Retrospective
Premium, payment is due within ten (10) days of receipt of
the Company's demand therefore.  If the Insured fails to pay
the Company within thirty (30) days of receipt of demand and
to offer such list of disputed items, the Company may:

1)   Draw upon or make claims against any Collateral provided
     by the Insured and held by the Company in order to
     guarantee the payment of the Insured's obligations,
     regardless of whether or not said Collateral was provided
     as respects any period subject to this Agreement, or

2)   Send a demand for Arbitration to the Insured.


Upon receipt of the explanation of disputed items from the
Insured, the Company shall promptly acknowledge such receipt
and arrange for an immediate mutual review of same.  If the
disputed amounts are resolved upon such review, the Insured
shall, within ten (10) days of such review, pay to the
Company any such amount as agreed.

If, upon review, the Insured and the Company fail to reach
agreement, the disputed amounts may be submitted by the
Company for Arbitration.

b. Arbitration.  As a precedent to any right of action
   hereunder, if any dispute shall arise between the Company and
   the Insured with reference to the interpretation of this
   Agreement or their rights with respect to any transaction
   involved, regardless of when such dispute may arise, such
   dispute, upon written request of either party shall be
   submitted to three (3) arbitrators, one (1) chosen by the
   requesting party at the time of the written request for
   Arbitration, the second by the other party within fifteen
   (15) days of receipt of such request, and the third by the
   first two (2) arbitrators within thirty (30) days
   thereafter.  If the party receiving the written request fails
   to appoint its arbitrator within the time specified, the
   other party may appoint the second arbitrator. The third
   arbitrator shall be a disinterested umpire unconnected with
   either party, and if the first two (2) arbitrators fail to
   agree on the third arbitrator within the time specified, each
   party shall name one (1) person as the proposed third
   arbitrator, and the choice of one (1) of those as third
   arbitrator shall be done by drawing lots.

Retrospective Prem    Agreement                                    Page 10.

The arbitrators shall interpret this Agreement as an
honorable engagement and not merely as a legal obligation.
They are relieved of all judicial formalities and may abstain
from the strict rule of law, and they shall make their award
with the view of effecting the general purpose of this
Agreement in a reasonable manner rather than in accordance
with a literal interpretation of the language.  Each party
shall submit its case to the arbitrators within a reasonable
time after appointment of the third arbitrator in accordance
with a schedule as agreed upon by the arbitrators.

The decision in writing of any two (2) arbitrators, when
filed with the parties hereto, shall be final and binding
upon both parties.  Judgement may be entered upon final
decision of the arbitrators in any court having
jurisdiction.  Each party shall bear the expense of its own
arbitrator and shall jointly and equally bear with the other
party the expense of the third arbitrator and of the
Arbitration.  Said Arbitration shall take place in the
Village of Schaumburg, Illinois, unless some other place is
mutually agreed upon by the Company and the Insured.

D.   CANCELLATION AND NON-RENEWAL

As used herein, the term Cancellation shall mean at a date other
than at a normal anniversary date.  If a policy subject to this
Agreement is cancelled or non-renewed:

1.  Penalties For Cancellation or Non-Renewal by the Insured,
Cumulative Policy Period Computation Option.

a.  Standard Premium shall be the sum of same as computed for
each completed period of twelve (12) months plus, for the
period of less than twelve (12) months, Standard Premium
computed in accordance with the Company's short rate table
and procedure.

b.  Basic Premium shall be computed based upon Standard Premium
as determined in a.,

c.  Minimum Retrospective Premium shall be Standard Premium as
determined in a.,

d.  Maximum Retrospective Premium shall be Standard Premium as
determined in a., extended on a pro-rata basis through the
last day of the final period indicated in the Information
Pages for the Cumulative Policy Period Premium Computation
Option, then computed as described in Section B.,1.,j.,

Retrospective Pre.  m Agreement                                    Page 11.

    e. The Company may, at its option, make a valuation of Incurred
       Losses and compute Earned Retrospective Premium in accordance
       with the foregoing at any time after such Cancellation or
       Non-Renewal.  If the amount due the Company is more than the
       premium previously paid by the Insured, such additional
       amount is due and payable within ten (10) days of receipt of
       demand therefore.

2. Penalties For Cancellation by the Insured, Annual Policy Period
   Premium Computation Option.

    a. Standard Premium shall be computed, for a period of less than
       twelve (12) months, in accordance with the Company's short
       rate table and procedure,

    b. Basic Premium shall be computed by the Company, for a period
       of less than twelve (12) months, based upon the Standard
       Premium as determined in a.,

    c. Minimum Retrospective Premium shall be, for a period of less
       than twelve (12) months, the Standard Premium as determined
       in a.,

    d. Maximum Retrospective Premium shall be, for a period of less
       than twelve (12) months, the Estimated Annual Standard
       Premium as determined at inception, then computed as
       described in Section B.,1.,j.,

    e. The Company may, at its option, make a valuation of Incurred
       Losses and compute Earned Retrospective Premium in accordance
       with the foregoing at any time after such Cancellation.  If
       the amount due the Company is more than the premium
       previously paid by the Insured, such additional amount is due
       and payable within ten (10) days of receipt of demand
       therefore.

3. Cancellation or Non-Renewal by the Company

    a. Standard Premium shall be computed on a pro-rata basis, and

    b. If Cancellation by the Company is for non-payment of premium,
       the Maximum Retrospective Premium shall be computed in
       accordance with either Section D.,1.,d. or D.,2.,d.,
       depending upon the selection of either Annual Policy Period
       Option or Cumulative Policy Period Option, as stated in the
       Information Pages, and the Company may, at its option, make a
       valuation of Incurred Losses and compute Earned Retrospective
       Premium in accordance with the foregoing at any time after
       such Cancellation.  If the amount due the Company is more
       than the premium previously paid by the Insured such
       additional amount is due and payable within ten (10) days of
       receipt of demand therefore.

Retrospective Prem!    Agreement                                    Page 12.

E.  UNDERLYING PLANS

Any other Retrospective Premium Endorsement, participating plan,
premium discount endorsement, or letters of election do not apply
as respects the computation of Earned Retrospective Premium.  The
terms of this Agreement shall govern the computation of all premium
as herein described.

F.  RIGHT OF OFFSET

The Company and the Insured may offset any balance(s) due from one
to the other under the terms of this Agreement.

G.  SEVERABILITY

If any section or portion thereof, term, definition or provision of
this Agreement is held by any governmental authority or court of
law to be illegal or in conflict with the law of any state, the
validity of the remaining portions or provisions shall not be
affected, and the rights and obligations of the Insured and the
Company shall be construed and enforced as if this Agreement did
not contain that particular section or portion thereof, term,
definition or provision held to be invalid.

H.  CHANGES IN THIS AGREEMENT

This Agreement contains all of the terms, conditions and
definitions as respects the obligations, rights and duties of the
Insured and the Company hereunder, and as such, constitutes the
whole Agreement, all other representations notwithstanding.

The terms of this Agreement shall not be waived or changed except
by an Addendum, issued to form a part hereof, executed by a duly
authorized representative of the Insured and the Company.


IN WITNESS WHEREOF, THE PARTIES HERETO HAVE CAUSED THIS AGREEMENT TO BE
SIGNED BY THEIR DULY AUTHORIZED REPRESENTATIVES.


ZURICH INSURANCE COMPANY                 C.H. HEIST CORPORATION

By _____                   By _____
   Robert L. Tinkham                        Title Vice President - Finance
   Assistant Vice President

Dated    3/10/92                         Dated   5/28/92


Form DRPA Edition 3 (09/89)                          09-Mar-92

                                                     Z00012

Retrospective Premium Agreement                              Page 1.

RETROSPECTIVE PREMIUM AGREEMENT - INFORMATION PAGES

RETROSPECTIVE PREMIUM AGREEMENT
Agreement No.  68579 - 93

1. NAME AND ADDRESS OF INSURED

   C.H. HEIST CORPORATION
   810 NORTH BELCHER ROAD
   CLEARWATER, FLORIDA  34625

2. NAME AND ADDRESS OF COMPANY

   ZURICH INSURANCE COMPANY (Z)
   Zurich Towers
   1400 American Lane
   Schaumburg, Illinois  60196 - 1056

3. POLICY PERIODS AND POLICIES SUBJECT TO AND EXCLUDED FROM THIS
   AGREEMENT

   Effective 12:01 A.M., Standard Time, January 1, 1993,
   Expiring  12:01 A.M., Standard Time, January 1, 1994,
   at the address of Insured stated above.

   A. Policy Period Option  (Selection indicated by  [X] )

      [X]   Annual Policy Period Premium Computation Option

      [ ]   Cumulative Policy Period Premium Computation Option

                 Policy Periods Included:   1. _____ to _____
                                            2. _____ to _____
                                            3. _____ to _____

   B. Policy Numbers Subject

      | Company | Line of Business | Effective/Expiration | Policy No. |
      |---------|------------------|----------------------|------------|
      | Z | Workers Comp | 01/01/93 - 01/01/94 | WC 6515929-02 |
      | Z | Comm Gen'l Liab | 01/01/93 - 01/01/94 | GLO6516101-02 |
      | Z | Business Auto | 01/01/93 - 01/01/94 | BAP6516102-02 |
      | Z | Texas Auto | 01/01/93 - 01/01/94 | TAP6516103-02 |
      | Z | Owners, Contractors Protective | 01/01/93 - 01/01/94 | OCP6516165-02 |
      | Z | Owners, Contractors Protective | 01/01/93 - 01/01/94 | OCP6516166-02 |
      | Z | Owners, Contractors Protective | 01/01/93 - 01/01/94 | OCP6516167-02 |
      | Z | Accident & Health | 01/01/93 - 01/01/94 | AH 6838157-00 |

Form DRPA Edition 4 (10/92)                              05-Mar-93

Retrospective Premium Agreement                                    Page 2.

and any other policies which afford the same or similar
insurance issued during this policy period.

C. Policy Numbers - Policy or Coverage Excluded -

| Company | Line/Coverage Excl | Effective/Expiration | Policy No. |
|---------|--------------------|--------------------|------------|
| Z | Workers Comp | 01/01/93 - 01/01/94 | WC 6838111-00 |
| Z | Excess | 01/01/93 - 01/01/94 | CAO6838159-00 |

4. EARNED RETROSPECTIVE PREMIUM, EXCESS LOSS PREMIUM AND RESIDUAL
MARKET CHARGE(S) - FACTORS AND RATES - SUBJECT TO REVISION FOR EACH
ANNUAL POLICY PERIOD

Payroll as used herein is defined as Total Workers Compensation and
Accident and Health Payroll, (this Excludes Self-Insured states but
Includes Stop Gap Payroll for covered entities).

A. Basic Premium for this policy period.

1.)        .08 multiplied by Total Standard Premium, or
2.) $5,402,093 multiplied by 1.514135 per $100 of Audited
     Workers Compensation Payroll,

whichever is greater.

Estimated Annual Basic Premium is:
$81,795, adjustable on the basis herein described.

B. Excess Loss Premium - Each Accident - Workers Compensation for
this policy period.

1.)        .086248 multiplied by Workers Compensation Standard
     Premium, or
2.) $5,402,093 multiplied by .093519 per $100 of Audited
     Workers Compensation Payroll,

whichever is greater.

Estimated Annual Excess Loss Premium - Each Accident - Workers
Compensation is:
$5,052, adjustable on the basis herein described.

C. Loss Factor for this policy period.  Applies to Losses and
Allocated Claim Expenses.

1.11 multiplied by Incurred Losses.

D. Estimated Average Premium Tax Factor for this policy period
1.038808.  Adjustable as described in Section B.,1.,g. of this
Agreement.

Form DRPA Edition 4 (10/92)                              05-Mar-93

Retrospective Premium Agreement                                    Page 3.

    E. Minimum Retrospective Premium for this policy period.

        1.)    .083105 multiplied by Total Standard Premium, or
        2.)  $5,402,093 multiplied by 1.5728903 per $100 of Audited
             Workers Compensation Payroll,

    whichever is less.

    Estimated Annual Minimum Retrospective Premium is:
    $84,969, adjustable on the basis herein described.

    F. Aggregate Retention Amount for this policy period.

    Refer to Workers Compensation Premium Payment and Deductible
    Premium Agreement Number 68579-93, as stated in the Information
    Pages, Item 22.

    G. Workers Compensation Residual Market Subsidy Charges (Excess
    Premium) for this policy period.

    Estimated Annual Workers Compensation Residual Market Subsidy
    Charges are:
    $291, adjustable at the time of issuance of each Retrospective
    Premium Adjustment as follows:

    1.)  The Workers Compensation Earned Retrospective Premium in
        each state subject to Residual Market Subsidy Factors,
        times

    2.)  The appropriate Residual Market Subsidy Factor, times

    3.)  The appropriate Premium Tax Factor, minus

    4.)  Residual Market Subsidy Charges previously received by the
        Company.

| STATE | RESIDUAL MARKET SUBSIDY FACTOR (%) ** | PREMIUM TAX FACTOR * |
|---|---|---|
| Alaska | 0.4 | 1.036 |
| Arkansas | 34.7 | 1.068 |
| California | 0.0 | 1.024 |
| Hawaii | 15.6 | 1.080 |
| Idaho | 0.0 | 1.047 |
| Louisiana | 0.0 | 1.073 |
| Maine | State Excluded | 1.053 |
| Missouri | 23.4 | 1.029 |
| Montana | 0.0 | 1.064 |
| Nebraska | 7.4 | 1.037 |
| Nevada | 0.0 | 1.031 |

Form DRPA Edition 4 (10/92)                                    05-Mar-93

Retrospective Premium Agreement                                    Page 4.

| STATE | RESIDUAL MARKET SUBSIDY FACTOR (%) ** | PREMIUM TAX FACTOR * |
|-------|---------------------------------------|----------------------|
| New Jersey | 11.8 | 1.047 |
| North Dakota | 0.0 | 1.036 |
| Ohio | 0.0 | 1.036 |
| Oklahoma | 0.0 | 1.062 |
| Oregon | 7.0 | 1.003 |
| Rhode Island | State Excluded | 1.085 |
| Utah | 0.0 | 1.085 |
| Virginia | 17.1 | 1.031 |
| Washington | 0.0 | 1.031 |
| West Virginia | 0.0 | 1.042 |
| Wisconsin | 2.1 | 1.041 |
| Wyoming | 0.0 | 1.036 |
| Puerto Rico | 0.0 | 1.053 |

    *  Premium Tax Factors adjustable as described in Section B.,1.,g. of this Agreement.

    **  These factors are not fixed but will be determined based on the Company factor at the time of each Retrospective Premium Adjustment.

H. Automobile Liability Residual Market Subsidy Charges (Excess Premium) for this policy period.

Estimated Annual Automobile Liability Residual Market Subsidy Charges are:
$4,383, adjustable at the time of issuance of each Retrospective Premium Adjustment as follows:

1.) The Automobile Liability Earned Retrospective Premium in each state subject to Residual Market Subsidy Factors, times

2.) The appropriate Residual Market Subsidy Factor, times

3.) The appropriate Premium Tax Factor, minus

4.) Residual Market Subsidy Charges previously received by the Company.

Retrospective Premium Agreement                                    Page 5.

| STATE | RESIDUAL MARKET SUBSIDY FACTOR (%) | PREMIUM TAX FACTOR * |
|-------|-----------------------------------|----------------------|
| Alabama | 9.0 | 1.066 |
| Alaska | 0.0 | 1.043 |
| Arizona | 0.0 | 1.032 |
| Arkansas | 3.3 | 1.036 |
| California | 6.3 | 1.035 |
| Colorado | 0.0 | 1.034 |
| Connecticut | 0.0 | 1.031 |
| Delaware | 6.7 | 1.031 |
| District of Columbia | 0.0 | 1.033 |
| Florida | 0.0 | 1.031 |
| Georgia | 1.4 | 1.048 |
| Hawaii | 0.0 | 1.056 |
| Idaho | 0.0 | 1.042 |
| Illinois | 0.0 | 1.031 |
| Indiana | 0.0 | 1.031 |
| Iowa | 0.0 | 1.035 |
| Kansas | 0.0 | 1.031 |
| Kentucky | 3.0 | 1.031 |
| Louisiana | 6.2 | 1.057 |
| Maine | 0.0 | 1.031 |
| Maryland | 0.0 | 1.031 |
| Massachusetts | 40.6 | 1.032 |
| Michigan | 3.6 | 1.031 |
| Minnesota | 0.0 | 1.031 |
| Mississippi | 6.2 | 1.047 |
| Missouri | 0.0 | 1.031 |
| Montana | 0.0 | 1.058 |
| Nebraska | 0.0 | 1.018 |
| Nevada | 0.0 | 1.036 |
| New Hampshire | 0.0 | 1.031 |
| New Jersey | 12.9 | 1.059 |
| New Mexico | 15.8 | 1.050 |
| New York | 4.8 | 1.041 |
| North Carolina | 0.0 | 1.033 |
| North Dakota | 0.0 | 1.033 |
| Ohio | 0.0 | 1.036 |
| Oklahoma | 1.3 | 1.066 |
| Oregon | 0.0 | 1.034 |
| Pennsylvania | 2.9 | 1.034 |
| Rhode Island | 1.2 | 1.030 |
| South Carolina | 0.8 | 1.032 |
| South Dakota | 0.0 | 1.036 |
| Tennessee | 0.6 | 1.036 |
| Texas | 0.0 | 1.027 |
| Utah | 0.0 | 1.034 |
| Vermont | 0.0 | 1.032 |
| Virginia | 2.4 | 1.040 |
| Washington | 0.0 | 1.031 |
| West Virginia | 0.0 | 1.053 |
| Wisconsin | 0.0 | 1.031 |
| Wyoming | 0.0 | 1.036 |
| Puerto Rico | 0.0 | 1.053 |

Form DRPA Edition 4 (10/92)                                    05-Mar-93

Retrospective Premium Agreement                    (Revised) Page 6.

> \* Premium Tax Factors adjustable as described in Section B.,1.,g.
> of this Agreement.

Cumulative Policy Period Premium Computation Option. Total Incurred
Losses as herein defined from each elapsed policy period shall be
included in each Retrospective Premium Computation up to the
Cumulative Maximum Retrospective Premium at the time of each such
computation.

5. LOSS LIMITS FOR THIS POLICY PERIOD

   A. Workers Compensation and Employee's Death, Burial, Disability,
      Rehabilitation and Medical Benefit Policies

      1.) Workers Compensation and Employee's Death, Burial,
         Disability, Rehabilitation and Medical Benefit Coverage -
         Loss Limit - Injury or Disease Arising Out of Any One
         Accident.

         The first $250,000 of benefits or damages payable for
         Injury or Disease arising out of Any One Accident as
         defined below involving one or more employees for Workers
         Compensation as provided under the laws of any state,
         territory, possession or the Federal Government.

         Allocated Loss Expense is included in this Loss Limit.

      2.) Workers Compensation and Employee's Death, Burial,
         Disability, Rehabilitation and Medical Benefit Coverage -
         Loss Limit - Any One Employee, Occupational Injury or
         Disease.

         The first $250,000 of benefits or damages payable to Any
         One Employee arising out of Occupational Injury or Disease
         as defined below for Workers Compensation as provided under
         the laws of any state, territory, possession or the Federal
         Government.

         Allocated Loss Expense is included in this Loss Limit.

      3.) Coverages Other Than Workers Compensation - Loss Limit -
         Injury or Disease Arising Out of Any One Accident.

         The first $250,000 of benefits or damages payable for
         Injury or Disease arising out of Any One Accident as
         defined below involving one or more employees.

         Allocated Loss Expense is included in this Loss Limit.

Retrospective Premium Agreement                    (Revised) Page 7.

4.) Coverages Other Than Workers Compensation - Loss Limit -
    Any One Employee, Occupational Injury or Disease.

    The first $250,000 of benefits or damages payable to Any
    One Employee arising out of Occupational Injury or Disease
    as defined below.

    Allocated Loss Expense is included in this Loss Limit.

5.) Definition - Application of Loss Limits - Workers
    Compensation Coverage - Separately For Each Policy.

    a.) Injury or Disease Arising Out of Any One Accident.

        Injury or Disease Arising Out of Any One Accident is
        any circumstance which triggers the payment of benefits
        or damages other than an Occupational Injury or
        Disease.  An Accident can be characterized as an event,
        a happening or an occurrence of a short time duration
        with a known beginning and ending at defined points in
        time which results in Injury or Disease to one or more
        employees.

    b.) Occupational Injury or Disease, Any One Employee.

        An Occupational Injury or Disease is an adverse medical
        condition caused by exposure to injurious or disease
        producing conditions encountered in the course of
        employment over an extended period of time which may or
        may not have a known beginning or ending at a defined
        point in time.  An Occupational Injury or Disease is
        not an Injury or Disease Arising Out of Any One
        Accident.

6.) Definition - Application of Loss Limits - Coverages Other
    Than Workers Compensation - Separately for Each Policy.

    a.) The Loss Limit applies separately with respect to each
        coverage for which there is a separate Each
        Employee/Accident Limit of Liability that is triggered
        by any Injury or Disease Arising Out of Any One
        Accident or Any One Employee Arising Out of
        Occupational Injury or Disease, or

    b.) In the event that there are combinations of
        Employee/Accident Limits applying to more than one
        coverage, the Loss Limit applies once with respect to
        each such combination for such coverages that are
        triggered by Any Injury or Disease Arising Out of Any
        One Accident or Any One Employee Arising Out of
        Occupational Injury or Disease, or

Form DRPA Edition 4 (10/92)                          20-May-93

Retrospective Premium Agreement                    (Revised) Page 8.

        c.) In the event that there are coverages without defined
            Each Employee/Accident Limits of Liability the Loss
            Limit applies separately with respect to each such
            coverage that is triggered by any Injury or Disease
            Arising Out of Any One Accident or Any One Employee
            Arising Out of Occupational Injury or Disease.

B. Commercial General Liability Policies or Policies Providing the
   Same or Similar Insurance

   1.) $ 500,000 each occurrence involving one or more claimants
       arising out of any coverage or coverages provided by the
       policy on a combined basis.

   2.) Allocated Loss Expense is included in these Loss Limits.

C. Automobile Liability Policies

   1.) $ 250,000 each occurrence/accident involving one or more
       claimants arising out of Bodily Injury, Property Damage,
       No-fault Benefits, Uninsured Motorists, Underinsured
       Motorists or Liability Coverage provided by the policy on a
       combined basis.

   2.) Allocated Loss Expense is included in these Loss Limits.

D. The terms Occurrence and Accident as used herein have specific
   meanings in the Definitions Section of each policy.

Retrospective Premium Agreement                              Page 9.

RETROSPECTIVE PREMIUM AGREEMENT
Agreement No.  68579 - 93

This Agreement between C.H. HEIST CORPORATION ("Insured") and ZURICH INSURANCE COMPANY ("Company"), in consideration of premium paid by the Insured and insurance provided by the Company, is effective at 12:01 A.M., Standard Time, January 1, 1993, at the address of the Insured as stated in the Information Pages of this Agreement.

A.  POLICY PERIOD; POLICIES INCLUDED IN AND EXCLUDED FROM THIS AGREEMENT

  1. The policy period included in this Agreement is as stated in the Information Pages.

     Additional policy periods may be added to this Agreement by the issuance of Renewal Information Pages to form a part hereof.

  2. This Agreement includes:

     a. Those policies listed in the Information Pages, and

     b. Any other policies issued to the Insured by the Company during the policy period designated in the Information Pages which afford the same or similar insurance.

  3. This Agreement excludes only those policies or coverages which afford the same or similar insurance to those listed as included in the Information Pages that are designated as being specifically excluded therein.

B.  COMPUTATION OF EARNED RETROSPECTIVE PREMIUM

  1. Definitions

     a. Earned Retrospective Premium shall be computed as follows subject to the definitions as stated herein:

        1.) Basic Premium, plus

        2.) Incurred Losses multiplied by the Loss Factor, then

        3) The total of 1) and 2) multiplied by the Premium Tax Factor, but shall in no event be less than the Minimum Retrospective Premium.

        4) Subject Incurred Losses shall in no event be greater than the Aggregate Retention Amount.

     b. Standard Premium is computed in accordance with the provisions of the policies, excluding Excess (or "E") Premium and Premium designated as Non-Subject.

Form DRPA Edition 4 (10/92)                              05-Mar-93

Retrospective Premium Agreement                                  Page 10.

    c. Basic Premium is:

        1.) The factor as stated in the Information Pages multiplied
           by the Standard Premium, or

        2.) The rate as stated in the Information Pages multiplied
           by the audited exposure,

    whichever is greater.

    d. Excess Loss Premium - Each Accident - Workers Compensation
       is:

        1.) The factor as stated in the Information Pages multiplied
           by the Workers Compensation Standard Premium, or

        2.) The rate as stated in the Information Pages multiplied by
           the audited exposure,

    whichever is greater.

    e. Incurred Losses are:

        1.) Actual losses paid, plus

        2.) Reserves as estimated and established by the Company in
           accordance with its standard practice for unpaid losses,
           plus

        3.) Allocated Loss Expense, defined as actual payments and
           estimated reserves for:

           a.) legal expenses,
           b.) independent adjusters' fees,
           c.) attorneys' fees,
           d.) court costs,
           e.) interest (including pre and post judgement),
           f.) expense for expert testimony,
           g.) medical expense of any kind not incurred for the
               benefit of the claimant(s), and
           h.) any other expense incurred under the policies which
               can be directly attributed to a specific claim.

          Allocated Loss Expense Excludes:

           a.) The usual and normal expenses associated with
               investigation and adjustment of claims by employees
               of the Company, and

           b.) Damages and payments for medical treatment.

Form DRPA Edition 4 (10/92)                                  05-Mar-93.

Retrospective Premium Agreement                                  Page 11.

    4.) The Company's decision as to the proper reserve for any
        loss or Allocated Loss Expense shall be final.

    5.) Incurred Losses shall exclude any amounts by which
        losses exceed the Loss Limits as stated in the
        Information Pages.

f. Loss Factor(s) are as stated in the Information Pages.

g. Premium Tax Factor.  The Estimated Average Premium Tax
   Factor is as stated in the Information Pages.  At the first
   Retrospective Premium Computation for each policy period, the
   Premium Tax Factor shall be revised by the Company, if
   necessary, to reflect the actual premium tax rates in effect
   during that policy period.

h. Minimum Retrospective Premium is:

    1.) The factor as stated in the Information Pages multiplied
        by the Standard Premium, or

    2.) The rate as stated in the Information Pages multiplied by
        the audited exposure,

   whichever is less, but Minimum Retrospective Premium shall in
   no event be less than the Company is obligated to collect
   from the Insured in accordance with Insurance Department
   Regulation.

i. Workers Compensation Residual Market Subsidy Charges are:

   Subject to adjustment at each Retrospective Premium
   Adjustment based on the Workers Compensation Earned
   Retrospective Premium in each state subject to Residual
   Market Subsidy Factors, times the appropriate Residual Market
   Subsidy Factor as stated in the Information Pages, times the
   appropriate Premium Tax Factor as stated in the Information
   Pages.

j. Automobile Liability Residual Market Subsidy Charges are:

   Subject to adjustment at each Retrospective Premium
   Adjustment based on the Automobile Liability Earned
   Retrospective Premium in each state subject to Residual
   Market Subsidy Factors, times the appropriate Residual Market
   Subsidy Factor as stated in the Information Pages, times the
   appropriate Premium Tax Factor as stated in the Information
   Pages.   ..

C.  PAYMENT OF PREMIUM

    1. The Insured shall pay to the Company the Standard Premium, Earned Retrospective Premium and Excess Premium in accordance with the provisions of the policies, this Agreement or the Premium Payment Agreement, as applicable.

    2. Annual Policy Period Premium Computation Option.  Based upon the selection of the Annual Policy Period Option in the Information Pages, the Company shall compute and the Insured shall pay to the Company within ten (10) days of receipt of its demand therefore, Earned Retrospective Premium based upon Incurred Losses valued as of a date six (6) months after the expiration of each such period, as soon as practicable after such valuation.  Additional Earned Retrospective Premium Adjustments shall be computed by the Company based upon Incurred Losses valued annually thereafter as soon as practicable after such valuation dates, payable within ten (10) days of receipt of its demand therefore, until such time as the Company shall designate an adjustment as being final.

    3. Cumulative Policy Period Premium Computation Option.  Based upon the selection of the Cumulative Policy Period Option in the Information Pages, the Insured shall pay to the Company within ten (10) days of receipt of its demand therefore, the Earned Retrospective Premium based upon Incurred Losses valued as of a date six (6) months after the expiration of each such period, cumulatively for all such periods as have then elapsed, as soon as practicable after such valuation.  Additional Cumulative Earned Retrospective Premium Adjustments shall be computed by the Company based upon Incurred Losses valued annually thereafter as soon as practicable after such valuation dates, payable within ten (10) days of receipt of the Company's demand therefore, until such time as the Company shall designate an adjustment as being final.

    4. Responsibility For Payment; Additional and Return Premiums.  Insured is solely responsible for the payment of additional Earned Retrospective Premium and for the receipt of any return premium.

    If Earned Retrospective Premium and Excess Premium as computed by the Company exceeds premium previously paid to the Company, the Insured shall pay, within ten (10) days of receipt of its demand therefore, that difference to the Company; if less, the Company shall credit or return that difference to the Insured.

Retrospective Premium Agreement                              Page 13.

5. Bankruptcy or Ownership Change.  In the event of the Insured's insolvency, bankruptcy, involvement in a proceeding for dissolution, assignment for the benefit of creditors, or any other proceeding or arrangement of like nature and in the event of a material change in the ownership of the Insured, the Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium at any time thereafter.  If the amount due the Company is more than the premium previously paid by the Insured, such additional amount is due and payable within ten (10) days of receipt of demand therefore.

6. Payment Disputes and Arbitration.

   a. Disputed Amounts.  In the event that any element or elements of the Earned Retrospective Premium Computation are disputed by the Insured, the Insured shall, within thirty (30) days of receipt of demand therefore, pay to the Company that portion of the Earned Retrospective Premium which is not disputed plus that portion of any disputed item that the Insured acknowledges as being valid. This thirty (30) day period may be extended only upon receipt of written request by the Insured followed by written consent from the Company.  The Insured must, at the time of such partial payment or request for extension, itemize each disputed item and offer an explanation as to their objections to such items.  If there is no dispute as to the amount of Earned Retrospective Premium, payment is due within ten (10) days of receipt of the Company's demand therefore.  If the Insured fails to pay the Company within thirty (30) days of receipt of demand and to offer such list of disputed items, the Company may:

      1.) Draw upon or make claims against any Collateral provided by the Insured and held by the Company in order to guarantee the payment of the Insured's obligations, regardless of whether or not said Collateral was provided as respects any period subject to this Agreement, or

      2.) Send a demand for Arbitration to the Insured.

   Upon receipt of the explanation of disputed items from the Insured, the Company shall promptly acknowledge such receipt and arrange for an immediate mutual review of same.  If the disputed amounts are resolved upon such review, the Insured shall, within ten (10) days of such review, pay to the Company any such amount as agreed.

   If, upon review, the Insured and the Company fail to reach agreement, the disputed amounts may be submitted by the Company for Arbitration.

Form DRPA Edition 4 (10/92)                              05-Mar-93

b. Arbitration.  As a precedent to any right of action
hereunder, if any dispute shall arise between the Company and
the Insured with reference to the interpretation of this
Agreement or their rights with respect to any transaction
involved, regardless of when such dispute may arise, such
dispute, upon written request of either party shall be
submitted to three (3) arbitrators, one (1) chosen by the
requesting party at the time of the written request for
Arbitration, the second by the other party within fifteen
(15) days of receipt of such request, and the third by the
first two (2) arbitrators within thirty (30) days
thereafter.  If the party receiving the written request fails
to appoint its arbitrator within the time specified, the
other party may appoint the second arbitrator.  The third
arbitrator shall be a disinterested umpire unconnected with
either party, and if the first two (2) arbitrators fail to
agree on the third arbitrator within the time specified, each
party shall name one (1) person as the proposed third
arbitrator, and the choice of one (1) of those as third
arbitrator shall be done by drawing lots.

The arbitrators shall interpret this Agreement as an
honorable engagement and not merely as a legal obligation.
They are relieved of all judicial formalities and may abstain
from the strict rule of law, and they shall make their award
with the view of effecting the general purpose of this
Agreement in a reasonable manner rather than in accordance
with a literal interpretation of the language.  Each party
shall submit its case to the arbitrators within a reasonable
time after appointment of the third arbitrator in accordance
with a schedule as agreed upon by the arbitrators.

The decision in writing of any two (2) arbitrators, when
filed with the parties hereto, shall be final and binding
upon both parties.  Judgement may be entered upon final
decision of the arbitrators in any court having
jurisdiction.  Each party shall bear the expense of its own
arbitrator and shall jointly and equally bear with the other
party the expense of the third arbitrator and of the
Arbitration.  Said Arbitration shall take place in the
Village of Schaumburg, Illinois, unless some other place is
mutually agreed upon by the Company and the Insured.

7. Diminished Hazards.  With respect only to the rate multiplied by
an exposure base alternative for computing Basic Premium, Excess
Loss Premium and Minimum Premium, the use of such rates
acknowledges that certain hazards exist at the time of policy
inception which require a certain floor level combination of
premium and Retrospective Premium Factors to adequately fund
these elements, including anticipated Incurred Loss Amounts.
Since the Company cannot control certain aspects of premium

makeup, such as experience modifiers applying to Workers
Compensation premium that may be unrelated to existing hazards,
the floor level rate times the exposure basis assures that these
hazards are properly funded from an Earned Retrospective Premium
standpoint.  Increased hazards during the period are generally
subject to differing premium rates and classifications that are
self-correcting at the time of Premium Audit, then charged as a
percentage of premium as respects the application of
Retrospective Rating Factors.

In the event that hazards decrease during the period and the
Insured believes the rate multiplied by the exposure base to be,
as a result, inappropriate, the Insured may request, and when
presented with such request, the Company shall adjust these
rates downward on a basis proportionate with such reduction of
hazard, provided that such reduction can be demonstrated based
upon objectively determined criteria.

D.  CANCELLATION AND NON-RENEWAL

As used herein, the term Cancellation shall mean at a date other
than at a normal anniversary date.  If a policy subject to this
Agreement is cancelled or non-renewed:

1.  Penalties For Cancellation or Non-Renewal by the Insured,
    Cumulative Policy Period Computation Option.

    a. Standard Premium shall be the sum of same as computed for
       each completed period of twelve (12) months plus, for the
       period of less than twelve (12) months, Standard Premium
       computed in accordance with the Company's short rate table
       and procedure.

    b. Basic Premium shall be computed based upon Standard Premium
       as determined in a.,

    c. Minimum Retrospective Premium shall be Standard Premium as
       determined in a.,

    d. Aggregate Losses subject to the Retrospective Plan shall be
       based on exposures determined as is Standard Premium in a.,
       extended on a pro-rata basis through the last day of the
       final period indicated in the Information Pages for the
       Cumulative Policy Period Premium Computation Option, but the
       Aggregate Retention Amount shall never be less than
       $2,800,000.

    e. The Company may, at its option, make a valuation of Incurred
       Losses and compute Earned Retrospective Premium in accordance
       with the foregoing at any time after such Cancellation or
       Non-Renewal.  If the amount due the Company is more than the
       premium previously paid by the Insured, such additional
       amount is due and payable within ten (10) days of receipt of
       demand therefore.

Retrospective Premium Agreement                    Page 16.

2. Penalties For Cancellation by the Insured, Annual Policy Period Premium Computation Option.

    a. Standard Premium shall be computed, for a period of less than twelve (12) months, in accordance with the Company's short rate table and procedure,

    b. Basic Premium shall be computed by the Company, for a period of less than twelve (12) months, based upon the Standard Premium as determined in a.,

    c. Minimum Retrospective Premium shall be, for a period of less than twelve (12) months, the Standard Premium as determined in a.,

    d. Aggregate Retention Amount shall be, for a period of less than twelve (12) months, the Estimated Annual Aggregate Retention Amount as determined at inception.

    e. The Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium in accordance with the foregoing at any time after such Cancellation.  If the amount due the Company is more than the premium previously paid by the Insured, such additional amount is due and payable within ten (10) days of receipt of demand therefore.

3. Cancellation or Non-Renewal by the Company

    a. Standard Premium shall be computed on a pro-rata basis, and

    b. If Cancellation by the Company is for non-payment of premium, the Aggregate Retention Amount shall be computed in accordance with either Section D.,1.,d. or D.,2.,d., depending upon the selection of either Annual Policy Period Option or Cumulative Policy Period Option, as stated in the Information Pages, and the Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium in accordance with the foregoing at any time after such Cancellation.  If the amount due the Company is more than the premium previously paid by the Insured such additional amount is due and payable within ten (10) days of receipt of demand therefore.

Retrospective Premium Agreement                                    Page 17.

E.   UNDERLYING PLANS

Any other Retrospective Premium Endorsement, participating plan,
premium discount endorsement, or letters of election do not apply
as respects the computation of Earned Retrospective Premium.  The
terms of this Agreement shall govern the computation of all premium
as herein described.

F.   RIGHT OF OFFSET

The Company and the Insured may offset any balance(s) due from one
to the other under the terms of this Agreement.

G.   SEVERABILITY

If any section or portion thereof, term, definition or provision of
this Agreement is held by any governmental authority or court of
law to be illegal or in conflict with the law of any state, the
validity of the remaining portions or provisions shall not be
affected, and the rights and obligations of the Insured and the
Company shall be construed and enforced as if this Agreement did
not contain that particular section or portion thereof, term,
definition or provision held to be invalid.

H.   CHANGES IN THIS AGREEMENT

This Agreement contains all of the terms, conditions and
definitions as respects the obligations, rights and duties of the
Insured and the Company hereunder, and as such, constitutes the
whole Agreement, all other representations notwithstanding.

The terms of this Agreement shall not be waived or changed except
by an Addendum, issued to form a part hereof, executed by a duly
authorized representative of the Insured and the Company.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE CAUSED THIS AGREEMENT TO BE
SIGNED BY THEIR DULY AUTHORIZED REPRESENTATIVES.


ZURICH INSURANCE COMPANY                    C.H. HEIST CORPORATION


By _____               By _____
   Robert L. Tinkham                          Title _____
   Assistant Vice President

Dated ____3/8/93____                        Dated ____8/1/93____


Form DRPA Edition 4 (10/92)                                 05-Mar-93



## INCURRED DEDUCTIBLE AND
## INCURRED LOSS RETROSPECTIVE RATING AGREEMENT

This Agreement, effective on the date stated in the Specifications attached as part of this Agreement, between Ablest Service Corp. (referred to as "You" and "Your") and Zurich Insurance Company collectively referred to as "We," "Us" and "Our".

### TERMS AND CONDITIONS

**A. Purpose of the Agreement**

The purpose of this Agreement is to outline (a) the scope, description and structure of the Incurred Incurred Deductible Program ("IDP") and the Incurred Loss Retrospective Rating Program ("ILR") (collectively referred to as the "Program") You and We have entered into and (b) the duties and obligations of each party with respect to this Program.

**B. Scope of the Agreement**

The Policy(ies) for each line of business issued by the applicable insurance company, including all endorsements, extensions, renewals and/or rewrites, subject to this Agreement are stated in the Specifications.

This Agreement has two parts: Terms and Conditions and Specifications. Each part of the Agreement will be signed by both parties. The Agreement term is continuous and will be amended for each Program change by adding new Specifications, effective on the date of the change, and signed by both parties.

This Agreement governs the structure and operation of and the duties and obligations of each party to this Program and supersedes any Deductible and Retrospective Rating endorsements to the Policy(ies), prior communications, negotiations, participating plans or letters of election.

**C. Program Description**

Under the Program, We have selected a Third Party Administrator ("TPA") at Your request to handle and pay the claims presented in accordance with the provisions of the Policy(ies). You assume the risk within the Loss Limit(s) and We accept the risk transfer excess of the Loss Limit(s) and the Aggregate Amount, if applicable, up to the limits of liability under the Policy(ies).

Z00013

## C. Program Description (continued)

With respect to the IDP, the Specifications state the amount of Your initial payment to Us with respect to the Deductible Premium and the expected Incurred Losses within the Loss Limit(s), as determined by Us, plus related expenses and assessments. The amounts paid by You for Your obligations within the Loss Limit(s) under the IDP will be held by Us in a Loss Reimbursement Fund. With respect to the ILR, the Specifications state the amount and composition of Your initial premium payment to Us.

The Retrospective Premium and the Loss Reimbursement Fund are calculated and adjusted based on Your loss experience at specified loss valuation dates after the expiration of the Policy(ies) until the Aggregate Amount, if applicable, is reached.

Since We may not prefund Your estimated total obligation under the Program, We assume a financial risk that may require Collateral. The initial amount of the Collateral and how and when the amount may be adjusted is stated in the Specifications.

## D. Program Structure

The Program has two primary, independent components: (1) the insurance coverage provided under the Policy(ies); and (2) the cash flow benefits achieved through the financing arrangement under the Program.

If You Default, We may, at Our option, terminate the financing arrangements under the Program. This will result in all of Your financial obligations under the Program becoming immediately due and payable to Us.

## E. Definitions

Allocated Loss Adjustment Expense ("ALAE") is an expense directly allocable to a specific claim and shall include but not be limited to all Supplementary payments as defined under the Policy(ies); all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the Policy(ies).

Z00014

E. Definitions (continued)

ALAE Reserve is Our estimated value of unpaid ALAE under the Policy(ies).

Aggregate Amount is the greatest amount for the Program term stated in the Specifications You shall pay for Your obligations within the Loss Limit(s) under the Program including, but not limited to the components of the (1) Aggregate Deductible, (2) Deductible Premium and (3) Maximum Retrospective Premium, as stated in the Specifications.

Aggregate Deductible is the greatest amount for the Program term stated in the Specifications of Paid Losses within the Loss Limit(s) and, if applicable in accordance with the Specifications, Paid ALAE, plus related Unallocated Loss Adjustment Expense and Loss Based Assessment charges You shall pay under the IDP Policy(ies).

Aggregate Deductible Charge is the premium for limiting the losses paid by You to an Aggregate Deductible amount.

Basic Premium is an amount representing Our expenses under the ILR.

Collateral is a financial instrument or cash provided by You to secure the deferral of Your financial obligations under the Program. We have provided You with the required form and parameters for the type of Collateral both parties have agreed will be used.

Combined Elements shall include certain common elements of the IDP and the ILR that apply to the Program.

Deductible Amount(s) is the amount You shall pay for each occurrence, accident or claim under the IDP Policy(ies) as stated in the Specifications.

Deductible Fee is an amount representing Our expenses under the IDP.

Deductible Premium is the amount paid by You to Us for the IDP.

Default occurs when

1. You fail to pay any amount when it is due under this Agreement including but not limited to the initial Loss Reimbursement Fund amount and subsequent adjustments.

3

Z00015

E. Definition (continued)

2. You file a petition in bankruptcy, a declaration of insolvency or an action or proceeding for dissolution is filed by or against You; a receiver or trustee is appointed for You; You execute a workout agreement; You make an assignment for the benefit of creditors; or any other proceeding or arrangement of a similar nature is instituted by or against You.

3. You fail to provide the initial, adjusted or replacement Collateral as required in this Agreement.

Due on Demand is when a payment is due Us at the time the bill is presented to You.

Earned Retrospective Premium is the premium that is calculated at a Retrospective Premium adjustment that is subject to the Minimum Retrospective Premium and the Maximum Retrospective Premium.

Excess Premium is the premium You pay to Us for limiting the losses paid by You to the Loss Limit(s) and for Our assumption of the risk transfer excess of the Loss Limit(s) up to the limits of liability under the Program Policy(ies).

Incurred ALAE is the Paid ALAE plus the ALAE Reserve under the Policy(ies).

Incurred But Not Reported ("IBNR") is a reserve that has been established by Us as a provision for future obligations under the Policy(ies) arising from either (a) claims and related ALAE that have occurred but have not as yet been reported to You and/or to Us; or (b) anticipated changes in Incurred Loss and Incurred ALAE for claims that have been previously reported to You and/or to Us.

Incurred Loss is a Paid Loss plus a Loss Reserve under the Policy(ies).

Insurance Charge is the premium You pay to Us representing the charge made for limiting the losses paid by You to an amount between the Minimum Retrospective Premium and the Maximum Retrospective Premium.  Under this Agreement, the term Insurance Charge shall also include the Aggregate Deductible Charge as a Combined Element.

Loss Based Assessment ("LBA") is a state charge levied against  losses.

Z00016

Loss Limit(s) is the amount You shall pay for each occurrence, accident or claim under the ILR Policy(ies) as stated in the Specifications.  Under this Agreement, the term Loss Limit(s) shall also include Deductible Amount(s).

E. Definitions (continued)

Loss Reimbursement Fund is a non-interest bearing account where Your funds are held by Us to provide for the payment of Your obligations within the Loss Limit(s) under the Policy(ies) for the IDP.

Loss Reserve is Our estimated value of an unpaid claim that has been previously reported to Us under the Policy(ies).

Maximum Retrospective Premium is the greatest amount for the Program term stated in the Specifications You shall pay for Your obligations under the ILR in accordance with the Retrospective Rating Formula stated in the Specifications.

Minimum Retrospective Premium is the least amount for the Program term stated in the Specifications You shall pay for Your obligations under the ILR in accordance with the Retrospective Rating Formula stated in the Specifications.

Other Special Charges shall include but not be limited to additional premium taxes, premium and loss assessments, residual market subsidies, administrative, statutory or court-ordered fines or penalties not the result of Our negligence, any expenses We incur to collect from You amounts past due and to enforce any of the provisions of this Agreement.

Paid ALAE is a payment made by Us for ALAE under the Policy(ies).

Paid Loss is a payment made by Us for a claim under the Policy(ies).

Premium Surcharge includes federal, state, city and municipal charges by governmental agencies due in addition to the Policy premium that are billed separately at Program inception and adjusted at audit.

Premium Tax includes state taxes and assessments that under (1) the IDP is a rate that may be charged against the full state Standard Premium or the Deductible Premium; and (2) under the ILR is expressed as a Tax Multiplier and charged against both loss and expense within the formula.

Z00017

Retrospective Development Factor is a factor used to stabilize Retrospective Premium adjustments by anticipating future increases in losses. The factor is applied to Incurred Losses and Incurred ALAE in the Retrospective Rating Formula stated in the Specifications.

E. Definitions (continued)

Retrospective Premium is the premium developed by applying the Retrospective Rating Formula, subject to a Minimum Retrospective Premium and a Maximum Retrospective Premium.

Retrospective Rating Formula is the method of calculating the Retrospective Premium as stated in the Specifications.

Standard Premium is calculated in accordance with the National Council on Compensation Insurance rules using Our manual rates times the exposure times the experience modification and, if required, times premium discount.

Ultimate Retrospective Premium is the premium that is calculated at Program inception and at each Retrospective Premium adjustment that represents Our estimate of the Retrospective Premium based on a current loss valuation plus IBNR.

Unallocated Loss Adjustment Expense ("ULAE") includes expenses that are not directly allocated to a specific claim. The ULAE may be charged to You either by applying: (a) a Loss Conversion Factor ("LCF") that is a factor applied to the Incurred Loss, plus the Incurred ALAE; or (b) a Claim Handling Fee ("CHF") that is a dollar amount charged per reported claim, as stated in the Specifications.

F. Payments Due

The payments under this Program and the dates these amounts become due are stated in the Specifications. Each party to the Agreement agrees to remit all payments so that they are received on or before the due date. If any amount is payable and a specific due date is not stated, thirty (30) days from the date of billing will be the due date. You and each named insured stated in the Policy(ies) shall be jointly and severally responsible for the obligations under this Agreement.

In the event all or part of a payment due under the Program is in dispute:

Z00018

a. The undisputed portion of the payment will be remitted in accordance with the terms of this Agreement.

b. A written notice stating the amount and explaining the reason for the dispute will be sent to the address stated in the Specifications on or before the payment due date.

F. Payments Due (continued)

Both parties agree to attempt to resolve any dispute within sixty (60) days after the date of the notice.

G. Loss Reimbursement Fund

The initial amount of the Loss Reimbursement Fund paid by You and held by Us is stated in the Specifications.

The Loss Reimbursement Fund is adjusted based on Your Incurred Losses, Incurred ALAE, ULAE and LBA at specified loss valuation dates after the expiration of the Policy(ies) until the Aggregate Amount, if applicable, is reached.

H. Collateral

Initial Letter of Credit

On or before the inception date of this Agreement, You shall give Us a clean, unconditional, irrevocable Letter of Credit ("LOC") with an automatic renewal term of twelve (12) months. The LOC must be from a bank approved by the National Association of Insurance Commissioners and in the form provided by Us.

Computation and Adjustment of LOC Amount

The LOC amount shall be in an amount sufficient to secure Your obligations under the Program. We reserve the right to adjust the LOC amount at any time. The initial amount of the LOC and how it is adjusted are stated in the Specifications. You shall provide us with an amendment to the LOC for any increase or decrease in the amount required within thirty (30) days of Our request.

Replacement LOC

Z00019

If the issuing bank notifies Us of nonrenewal of the LOC in not less than thirty (30) days prior to its expiration or if We advise You that the form has been amended to meet new regulatory requirements, You shall provide Us with a replacement LOC in an equal or adjusted amount not less than fifteen (15) days prior to the expiration date.

H.  Collateral (continued)

Draws on LOC

In the event of a Default, We reserve the right to draw on the LOC provided by You under the provisions of this or any other Agreement between You and Us at any time to pay any amount that is due or may become due, including without limitation IBNR, under this Agreement.

Surrender of LOC

Your duty to provide Collateral will continue until We determine that the Collateral is no longer required under this Agreement.  You understand and agree that this duty may continue after this Agreement terminates or is canceled.

I.  Audit

An audit for the Program term stated in the Specifications will be conducted in accordance with the provisions of the Policy(ies).  The adjustable elements of the Program will be adjusted based on the audited exposures.   The processing of the audit for any or all of the adjustable elements may be deferred, at Our option, until the calculation of the first Retrospective Premium Adjustment.

J.  Invalidity and Severability

It is agreed that if any provision of this Agreement is found to be invalid or unenforceable by a governmental authority or court of law,  all the other provisions of this Agreement shall remain valid and enforceable as if the Agreement did not contain the invalid or unenforceable provision.  The invalid or unenforceable provision shall be amended to the minimum extent necessary to cure the invalid or unenforceable element and to preserve the original intent.

K.  Non-Waiver Of Rights

Z00020

Failure by either party to enforce any provision of this Agreement shall not be interpreted as a waiver of such provision or any other provision or any existing or future rights or privileges under this Agreement. The terms and conditions of this Agreement may be strictly enforced at any time despite any past or subsequent failure to do so by either party.

L. Changes In This Agreement

This Agreement shall not be waived, changed or assigned except by an Addendum, signed by a duly authorized representative of each party to this Agreement.

M. Offset

The parties under this Agreement each reserve the right to offset any balance due from one party to the other under this or any other Agreement entered into between Us, except as prohibited by law.

N. Arbitration

Any dispute arising out of the interpretation, performance or alleged breach of this Agreement, shall be submitted to arbitration in accordance with the following procedure:

1.  Written notice requesting arbitration will be sent certified or registered mail, return receipt requested.

2.  A panel shall be made up of three arbitrators. Each party shall select one arbitrator and the two selected arbitrators shall select an impartial third arbitrator who shall preside at the hearing.

3.  If either party fails to appoint its arbitrator within thirty (30) days of the request, the other party shall send notice by certified or registered mail of its intention to appoint a second arbitrator and may do so within ten days of the notice date.

4.  If the two arbitrators do not select the third arbitrator within thirty (30) days of their appointment, each arbitrator shall select three candidates, or a smaller number as agreed to by the two arbitrators, from a list of qualified candidates provided by the American Arbitration Association. At the request of the two arbitrators, the American Arbitration Association shall select the third arbitrator from the list of candidates submitted.

Z00021

5. Within thirty (30) days after notice of appointment of all arbitrators, the arbitrators shall meet and determine timely periods for briefs, discovery procedures and schedules of hearings.

## N. Arbitration (continued)

6. The arbitrators shall be relieved of all judicial formality and shall not be bound by the strict rules of procedure and evidence. Unless the parties under this Agreement agree otherwise, arbitration shall take place in Schaumburg, Illinois.

7. The arbitrators shall make their decision considering the custom and practice of the applicable insurance business as promptly as possible following the termination of the hearings. The award may not include any form of fine or multiple, punitive or exemplary damages. Confirmation of the award may be entered in any court having jurisdiction.

8. Each party shall pay the expense of its own arbitrator and equally pay the expenses of the third arbitrator and any other expenses of the arbitration proceeding. Each party shall pay their own costs of counsel.

## O. Termination

This Agreement will terminate by mutual written consent. We also reserve the right to terminate this Agreement if (1) there is a material change in Your ownership or (2) one or more of the Policy(ies) stated in the Specifications is canceled. Despite the termination of the Agreement, You are still liable for all Your obligations under this Agreement incurred up to the date of termination. It is understood and agreed by both parties that if billings are suspended at any point in time because all payments have been made, We still reserve the right to bill You at a future date for any and all claims subsequently reported, together with related expenses, provided the Aggregate Amount, if any, has not been exhausted.

In the event of a mid-term termination of the Program, (a) the Standard Premium will be calculated in accordance with the cancellation provisions of the Policy(ies); and (b) the calculation of the applicable Program elements, including but not limited to the Deductible Premium, Basic Premium, Excess Premium, Insurance Charge, Minimum Retrospective

Z00022

Premium and the Aggregate Amount, will be subject to the minimum amounts stated in the Specifications.

In the event of a Default or a material change in Your financial condition, We may, at Our option, terminate the financing portion of the Program. The amount immediately due and payable to Us will be determined by Us using either of the following options: (1) all of

O.  Termination (continued)

Your obligations under the IDP calculated using the most recent loss valuation, plus IBNR and Your ultimate obligations under the ILR through the calculation of an unscheduled Retrospective Premium adjustment using the most recent loss valuation, plus IBNR; or (2) the full Standard Premium by converting the Program to a guaranteed cost rating plan using Our manual rates in effect as of the Program effective date.

P.  Governing Law And Jurisdiction

This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

Z00023

The parties have caused this Agreement to be signed by their duly authorized representatives and witnessed.

ABLEST SERVICE CORP.

By: _Mark P. Kastner_

Title: _Treasurer, COO_

Witness: _Lisa M. Allen._

Date: _6/19/97_

ZURICH INSURANCE COMPANY, U.S. BRANCH

By: _Roberto Aufranc_

Title: _Assistant Vice President_

Witness: _Cathi Dunn_

Date: _6/11/97_

12

Z00024