Retrospective Premi   Agreement                                    Page 4.

c. Automobile Liability Policies

1) $ 250,000 each occurrence/accident involving one or more
   claimants arising out of Bodily Injury, Property Damage,
   No-fault Benefits, Uninsured Motorists, Underinsured
   Motorists or Liability Coverage provided by the policy on a
   combined basis.

2) Allocated Loss Expense is payable by the Insured in addition
   to these Loss Limits.

d. The terms Occurrence and Accident as used herein have specific
   meanings in the Definitions Section of each policy.

Form DRPA Edition 3 (09/89)                            09-Mar-92

Z00004

RETROSPECTIVE PREMIUM AGREEMENT
Agreement No. 68579 - 92

This Agreement between C.H. HEIST CORPORATION ("Insured") and ZURICH INSURANCE COMPANY ("Company"), in consideration of premium paid by the Insured and insurance provided by the Company, is effective at 12:01 A.M., Standard Time, January 1, 1992, at the address of the Insured as stated in the Information Pages of this Agreement.

A.  POLICY PERIOD; POLICIES INCLUDED IN AND EXCLUDED FROM THIS AGREEMENT

    1. The policy period included in this Agreement is as stated in the Information Pages.

    Additional policy periods may be added to this Agreement by the issuance of Renewal Information Pages to form a part hereof.

    2. This Agreement includes:

        a. Those policies listed in the Information Pages, and

        b. Any other policies issued to the Insured by the Company during the policy period designated in the Information  Pages which afford the same or similar insurance.

    3. This Agreement excludes only those policies or coverages which afford the same or similar insurance to those listed as included in the Information Pages that are designated as being specifically excluded therein.

B.  COMPUTATION OF EARNED RETROSPECTIVE PREMIUM

    1. Definitions

        a. Earned Retrospective Premium shall be computed as follows subject to the definitions as stated herein:

        1) Basic Premium, plus

        2) Incurred Losses multiplied by the Loss Factor, then

        3) The total of 1) and 2) multiplied by the Premium Tax Factor, but shall in no event be:

            a) Less than Minimum Retrospective Premium, or

            b) More than Maximum Retrospective Premium.

        b. Standard Premium is computed in accordance with the provisions of the policies, excluding Excess (or "E") Premium and Premium designated as Non-Subject.

Form DRPA Edition 3 (09/89)                          09-Mar-92

Z00005

Retrospective Prem    Agreement                                    Page 6.

c. Basic Premium is:

The rate as stated in the Information Pages multiplied by the audited exposure.

d. Excess Loss Premium - Each Accident - Workers Compensation is:

The rate as stated in the Information Pages multiplied by the audited exposure.

e. Incurred Losses are:

1)  Actual losses paid, plus

2)  Reserves as estimated and established by the Company in accordance with its standard practice for unpaid losses, plus

3)  Allocated Loss Expense, defined as actual payments and estimated reserves for:

a)  legal expenses,
b)  independent adjusters' fees,
c)  attorneys' fees,
d)  court costs,
e)  interest (including pre and post judgement),
f)  expense for expert testimony,
g)  medical expense of any kind not incurred for the benefit of the claimant(s), and
h)  any other expense incurred under the policies which can be directly attributed to a specific claim.

Allocated Loss Expense Excludes:

a)  The usual and normal expenses associated with investigation and adjustment of claims by employees of the Company, and

b)  Damages and payments for medical treatment.

4)  The Company's decision as to the proper reserve for any loss or Allocated Loss Expense shall be final.

5)  Incurred Losses shall exclude any amounts by which losses exceed the Loss Limits as stated in the Information Pages.

f. Loss Factors are as stated in the Information Pages.

Form DRPA Edition 3 (09/89)                                    09-Mar-92

Z00006

Retrospective Prem   Agreement                                Page 7.

    g. Premium Tax Factor.  The Estimated Average Premium Tax
       Factor is as stated in the Information Pages.  At the first
       Retrospective Premium Computation for each policy period, the
       Premium Tax Factor shall be revised by the Company, if
       necessary, to reflect the actual premium tax rates in effect
       during that policy period.

    h. Minimum Retrospective Premium is:

       The rate as stated in the Information Pages multiplied by the
       audited exposure,

       but Minimum Retrospective Premium shall in no event be less
       than the Company is obligated to collect from the Insured in
       accordance with insurance department regulation.

    i. Maximum Retrospective Premium is:

       The rate as stated in the Information Pages multiplied  by
       the audited exposure.

    j. Workers Compensation Residual Market Subsidy Charges are:

       The factor as stated in the Information Pages multiplied by
       the Audited Premium.

    k. Automobile Liability Residual Market Subsidy Charges are:

       The factor as stated in the Information Pages multiplied by
       the Audited Premium.

C.  PAYMENT OF PREMIUM

    1. The Insured shall pay to the Company the Standard Premium,
       Earned Retrospective Premium and Excess Premium in accordance
       with the provisions of the policies, this Agreement or the
       Premium Payment Agreement, as applicable.

    2. Annual Policy Period Premium Computation Option.  Based upon the
       selection of the Annual Policy Period Option in the Information
       Pages, the Company shall compute and the Insured shall pay to
       the Company within ten (10) days of receipt of its demand
       therefore, Earned Retrospective Premium based upon Incurred
       Losses valued as of a date six (6) months after the expiration
       of each such period, as soon as practicable after such
       valuation.  Additional Earned Retrospective Premium Adjustments
       shall be computed by the Company based upon Incurred Losses
       valued annually thereafter as soon as practicable after such
       valuation dates, payable within ten (10) days of receipt of its
       demand therefore, until such time as the Company shall designate
       an adjustment as being final.

Retrospective Prem   Agreement                                    Page 8.

3. Cumulative Policy Period Premium Computation Option.  Based upon the selection of the Cumulative Policy Period Option in the Information Pages, the Insured shall pay to the Company within ten (10) days of receipt of its demand therefore, the Earned Retrospective Premium based upon Incurred Losses valued as of a date six (6) months after the expiration of each such period, cumulatively for all such periods as have then elapsed, as soon as practicable after such valuation.  Additional Cumulative Earned Retrospective Premium Adjustments shall be computed by the Company based upon Incurred Losses valued annually thereafter as soon as practicable after such valuation dates, payable within ten (10) days of receipt of the Company's demand therefore, until such time as the Company shall designate an adjustment as being final.

4. Responsibility For Payment; Additional and Return Premiums. Insured is solely responsible for the payment of additional Earned Retrospective Premium and for the receipt of any return premium.

   If Earned Retrospective Premium and Excess Premium as computed by the Company exceeds premium previously paid to the Company, the Insured shall pay, within ten (10) days of receipt of its demand therefore, that difference to the Company; if less, the Company shall credit or return that difference to the Insured.

5. Bankruptcy or Ownership Change.  In the event of the Insured's insolvency, bankruptcy, involvement in a proceeding for dissolution, assignment for the benefit of creditors, or any other proceeding or arrangement of like nature and in the event of a material change in the ownership of the Insured, the Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium at any time thereafter.  If the amount due the Company is more than the premium previously paid by the Insured, such additional amount is due and payable within ten (10) days of receipt of demand therefore.

6. Payment Disputes and Arbitration.

   a. Disputed Amounts.  In the event that any element or elements of the Earned Retrospective Premium Computation are disputed by the Insured, the Insured shall, within thirty (30) days of receipt of demand therefore, pay to the Company that portion of the Earned Retrospective Premium which is not disputed plus that portion of any disputed item that the Insured acknowledges as being valid. This thirty (30) day period may be extended only upon receipt of written request by the Insured followed by written consent from the Company.  The Insured must, at the time of such partial payment or request for extension, itemize each disputed item and offer an explanation as to their objections to such items.  If there

Retrospective Prem(   Agreement                                    Page 9.

is no dispute as to the amount of Earned Retrospective
Premium, payment is due within ten (10) days of receipt of
the Company's demand therefore.  If the Insured fails to pay
the Company within thirty (30) days of receipt of demand and
to offer such list of disputed items, the Company may:

1) Draw upon or make claims against any Collateral provided
   by the Insured and held by the Company in order to
   guarantee the payment of the Insured's obligations,
   regardless of whether or not said Collateral was provided
   as respects any period subject to this Agreement, or

2) Send a demand for Arbitration to the Insured.

Upon receipt of the explanation of disputed items from the
Insured, the Company shall promptly acknowledge such receipt
and arrange for an immediate mutual review of same.  If the
disputed amounts are resolved upon such review, the Insured
shall, within ten (10) days of such review, pay to the
Company any such amount as agreed.

If, upon review, the Insured and the Company fail to reach
agreement, the disputed amounts may be submitted by the
Company for Arbitration.

b. Arbitration.  As a precedent to any right of action
   hereunder, if any dispute shall arise between the Company and
   the Insured with reference to the interpretation of this
   Agreement or their rights with respect to any transaction
   involved, regardless of when such dispute may arise, such
   dispute, upon written request of either party shall be
   submitted to three (3) arbitrators, one (1) chosen by the
   requesting party at the time of the written request for
   Arbitration, the second by the other party within fifteen
   (15) days of receipt of such request, and the third by the
   first two (2) arbitrators within thirty (30) days
   thereafter.  If the party receiving the written request fails
   to appoint its arbitrator within the time specified, the
   other party may appoint the second arbitrator. The third
   arbitrator shall be a disinterested umpire unconnected with
   either party, and if the first two (2) arbitrators fail to
   agree on the third arbitrator within the time specified, each
   party shall name one (1) person as the proposed third
   arbitrator, and the choice of one (1) of those as third
   arbitrator shall be done by drawing lots.

The arbitrators shall interpret this Agreement as an honorable engagement and not merely as a legal obligation. They are relieved of all judicial formalities and may abstain from the strict rule of law, and they shall make their award with the view of effecting the general purpose of this Agreement in a reasonable manner rather than in accordance with a literal interpretation of the language. Each party shall submit its case to the arbitrators within a reasonable time after appointment of the third arbitrator in accordance with a schedule as agreed upon by the arbitrators.

The decision in writing of any two (2) arbitrators, when filed with the parties hereto, shall be final and binding upon both parties. Judgement may be entered upon final decision of the arbitrators in any court having jurisdiction. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the third arbitrator and of the Arbitration. Said Arbitration shall take place in the Village of Schaumburg, Illinois, unless some other place is mutually agreed upon by the Company and the Insured.

D.  CANCELLATION AND NON-RENEWAL

As used herein, the term Cancellation shall mean at a date other than at a normal anniversary date. If a policy subject to this Agreement is cancelled or non-renewed:

1. Penalties For Cancellation or Non-Renewal by the Insured, Cumulative Policy Period Computation Option.

   a. Standard Premium shall be the sum of same as computed for each completed period of twelve (12) months plus, for the period of less than twelve (12) months, Standard Premium computed in accordance with the Company's short rate table and procedure.

   b. Basic Premium shall be computed based upon Standard Premium as determined in a.,

   c. Minimum Retrospective Premium shall be Standard Premium as determined in a.,

   d. Maximum Retrospective Premium shall be Standard Premium as determined in a., extended on a pro-rata basis through the last day of the final period indicated in the Information Pages for the Cumulative Policy Period Premium Computation Option, then computed as described in Section B.,1.,j.,

   e. The Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium in accordance with the foregoing at any time after such Cancellation or Non-Renewal. If the amount due the Company is more than the premium previously paid by the Insured, such additional amount is due and payable within ten (10) days of receipt of demand therefore.

2. Penalties For Cancellation by the Insured, Annual Policy Period Premium Computation Option.

   a. Standard Premium shall be computed, for a period of less than twelve (12) months, in accordance with the Company's short rate table and procedure,

   b. Basic Premium shall be computed by the Company, for a period of less than twelve (12) months, based upon the Standard Premium as determined in a.,

   c. Minimum Retrospective Premium shall be, for a period of less than twelve (12) months, the Standard Premium as determined in a.,

   d. Maximum Retrospective Premium shall be, for a period of less than twelve (12) months, the Estimated Annual Standard Premium as determined at inception, then computed as described in Section B.,1.,j.,

   e. The Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium in accordance with the foregoing at any time after such Cancellation. If the amount due the Company is more than the premium previously paid by the Insured, such additional amount is due and payable within ten (10) days of receipt of demand therefore.

3. Cancellation or Non-Renewal by the Company

   a. Standard Premium shall be computed on a pro-rata basis, and

   b. If Cancellation by the Company is for non-payment of premium, the Maximum Retrospective Premium shall be computed in accordance with either Section D.,1.,d. or D.,2.,d., depending upon the selection of either Annual Policy Period Option or Cumulative Policy Period Option, as stated in the Information Pages, and the Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium in accordance with the foregoing at any time after such Cancellation. If the amount due the Company is more than the premium previously paid by the Insured such additional amount is due and payable within ten (10) days of receipt of demand therefore.

Retrospective Premi   Agreement                                    Page 12.

E.   UNDERLYING PLANS

Any other Retrospective Premium Endorsement, participating plan,
premium discount endorsement, or letters of election do not apply
as respects the computation of Earned Retrospective Premium.   The
terms of this Agreement shall govern the computation of all premium
as herein described.

F.   RIGHT OF OFFSET

The Company and the Insured may offset any balance(s) due from one
to the other under the terms of this Agreement.

G.   SEVERABILITY

If any section or portion thereof, term, definition or provision of
this Agreement is held by any governmental authority or court of
law to be illegal or in conflict with the law of any state, the
validity of the remaining portions or provisions shall not be
affected, and the rights and obligations of the Insured and the
Company shall be construed and enforced as if this Agreement did
not contain that particular section or portion thereof, term,
definition or provision held to be invalid.

H.   CHANGES IN THIS AGREEMENT

This Agreement contains all of the terms, conditions and
definitions as respects the obligations, rights and duties of the
Insured and the Company hereunder, and as such, constitutes the
whole Agreement, all other representations notwithstanding.

The terms of this Agreement shall not be waived or changed except
by an Addendum, issued to form a part hereof, executed by a duly
authorized representative of the Insured and the Company.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE CAUSED THIS AGREEMENT TO BE
SIGNED BY THEIR DULY AUTHORIZED REPRESENTATIVES.

ZURICH INSURANCE COMPANY                C.H. HEIST CORPORATION

By _____              By _____
   Robert L. Tinkham                       Title _Vice President - Finance_
   Assistant Vice President

Dated ___3/10/92___                     Dated ___5/28/92___

Form DRPA Edition 3 (09/89)                          09-Mar-92

                                                     Z00012

Retrospective Premium Agreement                                    Page 1.

RETROSPECTIVE PREMIUM AGREEMENT - INFORMATION PAGES

RETROSPECTIVE PREMIUM AGREEMENT
Agreement No.  68579 - 93

1. NAME AND ADDRESS OF INSURED

   C.H. HEIST CORPORATION
   810 NORTH BELCHER ROAD
   CLEARWATER, FLORIDA  34625

2. NAME AND ADDRESS OF COMPANY

   ZURICH INSURANCE COMPANY (Z)
   Zurich Towers
   1400 American Lane
   Schaumburg, Illinois  60196 - 1056

3. POLICY PERIODS AND POLICIES SUBJECT TO AND EXCLUDED FROM THIS
   AGREEMENT

   Effective 12:01 A.M., Standard Time, January 1, 1993,
   Expiring 12:01 A.M., Standard Time, January 1, 1994,
   at the address of Insured stated above.

   A. Policy Period Option  (Selection indicated by  [X] )

      [X]   Annual Policy Period Premium Computation Option

      [ ]   Cumulative Policy Period Premium Computation Option

               Policy Periods Included:   1. _____ to _____
                                          2. _____ to _____
                                          3. _____ to _____

   B. Policy Numbers Subject

      | Company | Line of Business | Effective/Expiration | Policy No. |
      |---------|------------------|----------------------|------------|
      | Z | Workers Comp | 01/01/93 - 01/01/94 | WC 6515929-02 |
      | Z | Comm Gen'l Liab | 01/01/93 - 01/01/94 | GLO6516101-02 |
      | Z | Business Auto | 01/01/93 - 01/01/94 | BAP6516102-02 |
      | Z | Texas Auto | 01/01/93 - 01/01/94 | TAP6516103-02 |
      | Z | Owners, Contractors Protective | 01/01/93 - 01/01/94 | OCP6516165-02 |
      | Z | Owners, Contractors Protective | 01/01/93 - 01/01/94 | OCP6516166-02 |
      | Z | Owners, Contractors Protective | 01/01/93 - 01/01/94 | OCP6516167-02 |
      | Z | Accident & Health | 01/01/93 - 01/01/94 | AH 6838157-00 |

Form DRPA Edition 4 (10/92)                                    05-Mar-93

Retrospective Premium Agreement                                        Page 2.

and any other policies which afford the same or similar
insurance issued during this policy period.

C. Policy Numbers - Policy or Coverage Excluded --

Company   Line/Coverage Excl   Effective/Expiration   Policy No.

Z        Workers Comp         01/01/93 - 01/01/94    WC 6838111-00
Z        Excess               01/01/93 - 01/01/94    CA06838159-00

4. EARNED RETROSPECTIVE PREMIUM, EXCESS LOSS PREMIUM AND RESIDUAL
   MARKET CHARGE(S) - FACTORS AND RATES - SUBJECT TO REVISION FOR EACH
   ANNUAL POLICY PERIOD

Payroll as used herein is defined as Total Workers Compensation and
Accident and Health Payroll, (this Excludes Self-Insured states but
Includes Stop Gap Payroll for covered entities).

A. Basic Premium for this policy period.

   1.)        .08 multiplied by Total Standard Premium, or
   2.)  $5,402,093 multiplied by 1.514135 per $100 of Audited
        Workers Compensation Payroll,

   whichever is greater.

   Estimated Annual Basic Premium is:
   $81,795, adjustable on the basis herein described.

B. Excess Loss Premium - Each Accident - Workers Compensation for
   this policy period.

   1.)        .086248 multiplied by Workers Compensation Standard
        Premium, or
   2.)  $5,402,093 multiplied by .093519 per $100 of Audited
        Workers Compensation Payroll,

   whichever is greater.

   Estimated Annual Excess Loss Premium - Each Accident - Workers
   Compensation is:
   $5,052, adjustable on the basis herein described.

C. Loss Factor for this policy period.  Applies to Losses and
   Allocated Claim Expenses.

   1.11 multiplied by Incurred Losses.

D. Estimated Average Premium Tax Factor for this policy period
   1.038808.  Adjustable as described in Section B.,1.,g. of this
   Agreement.

Form DRPA Edition 4 (10/92)                              05-Mar-93

Retrospective Premium Agreement                    Page 3.

E. Minimum Retrospective Premium for this policy period.

   1.)    .083105 multiplied by Total Standard Premium, or
   2.)   $5,402,093 multiplied by 1.5728903 per $100 of Audited
         Workers Compensation Payroll,

   whichever is less.

   Estimated Annual Minimum Retrospective Premium is:
   $84,969, adjustable on the basis herein described.

F. Aggregate Retention Amount for this policy period.

   Refer to Workers Compensation Premium Payment and Deductible
   Premium Agreement Number 68579-93, as stated in the Information
   Pages, Item 22.

G. Workers Compensation Residual Market Subsidy Charges (Excess
   Premium) for this policy period.

   Estimated Annual Workers Compensation Residual Market Subsidy
   Charges are:
   $291, adjustable at the time of issuance of each Retrospective
   Premium Adjustment as follows:

   1.)  The Workers Compensation Earned Retrospective Premium in
        each state subject to Residual Market Subsidy Factors,
        times

   2.)  The appropriate Residual Market Subsidy Factor, times

   3.)  The appropriate Premium Tax Factor, minus

   4.)  Residual Market Subsidy Charges previously received by the
        Company.

| STATE | RESIDUAL MARKET SUBSIDY FACTOR (%) ** | PREMIUM TAX FACTOR * |
|-------|---------------------------------------|----------------------|
| Alaska | 0.4 | 1.036 |
| Arkansas | 34.7 | 1.068 |
| California | 0.0 | 1.024 |
| Hawaii | 15.6 | 1.080 |
| Idaho | 0.0 | 1.047 |
| Louisiana | 0.0 | 1.073 |
| Maine | State Excluded | 1.053 |
| Missouri | 23.4 | 1.029 |
| Montana | 0.0 | 1.064 |
| Nebraska | 7.4 | 1.037 |
| Nevada | 0.0 | 1.031 |

Form DRPA Edition 4 (10/92)                        05-Mar-93

Retrospective Premium Agreement

Page 4.

| STATE | RESIDUAL MARKET SUBSIDY FACTOR (%) ** | PREMIUM TAX FACTOR * |
|-------|---------------------------------------|----------------------|
| New Jersey | 11.8 | 1.047 |
| North Dakota | 0.0 | 1.036 |
| Ohio | 0.0 | 1.036 |
| Oklahoma | 0.0 | 1.062 |
| Oregon | 7.0 | 1.003 |
| Rhode Island | State Excluded | 1.085 |
| Utah | 0.0 | 1.085 |
| Virginia | 17.1 | 1.031 |
| Washington | 0.0 | 1.031 |
| West Virginia | 0.0 | 1.042 |
| Wisconsin | 2.1 | 1.041 |
| Wyoming | 0.0 | 1.036 |
| Puerto Rico | 0.0 | 1.053 |

    \* Premium Tax Factors adjustable as described in Section B.,1.,g. of this Agreement.

    \*\* These factors are not fixed but will be determined based on the Company factor at the time of each Retrospective Premium Adjustment.

H. Automobile Liability Residual Market Subsidy Charges (Excess Premium) for this policy period.

Estimated Annual Automobile Liability Residual Market Subsidy Charges are:
$4,383, adjustable at the time of issuance of each Retrospective Premium Adjustment as follows:

1.) The Automobile Liability Earned Retrospective Premium in each state subject to Residual Market Subsidy Factors, times

2.) The appropriate Residual Market Subsidy Factor, times

3.) The appropriate Premium Tax Factor, minus

4.) Residual Market Subsidy Charges previously received by the Company.

Retrospective Premium Agreement                                        Page 5.

| STATE | RESIDUAL MARKET SUBSIDY FACTOR (%) | PREMIUM TAX FACTOR * |
|-------|-----------------------------------|----------------------|
| Alabama | 9.0 | 1.066 |
| Alaska | 0.0 | 1.043 |
| Arizona | 0.0 | 1.032 |
| Arkansas | 3.3 | 1.036 |
| California | 6.3 | 1.035 |
| Colorado | 0.0 | 1.034 |
| Connecticut | 0.0 | 1.031 |
| Delaware | 6.7 | 1.031 |
| District of Columbia | 0.0 | 1.033 |
| Florida | 0.0 | 1.031 |
| Georgia | 1.4 | 1.048 |
| Hawaii | 0.0 | 1.056 |
| Idaho | 0.0 | 1.042 |
| Illinois | 0.0 | 1.031 |
| Indiana | 0.0 | 1.031 |
| Iowa | 0.0 | 1.035 |
| Kansas | 0.0 | 1.031 |
| Kentucky | 3.0 | 1.031 |
| Louisiana | 6.2 | 1.057 |
| Maine | 0.0 | 1.031 |
| Maryland | 0.0 | 1.031 |
| Massachusetts | 40.6 | 1.032 |
| Michigan | 3.6 | 1.031 |
| Minnesota | 0.0 | 1.031 |
| Mississippi | 6.2 | 1.047 |
| Missouri | 0.0 | 1.031 |
| Montana | 0.0 | 1.058 |
| Nebraska | 0.0 | 1.018 |
| Nevada | 0.0 | 1.036 |
| New Hampshire | 0.0 | 1.031 |
| New Jersey | 12.9 | 1.059 |
| New Mexico | 15.8 | 1.050 |
| New York | 4.8 | 1.041 |
| North Carolina | 0.0 | 1.033 |
| North Dakota | 0.0 | 1.033 |
| Ohio | 0.0 | 1.036 |
| Oklahoma | 1.3 | 1.066 |
| Oregon | 0.0 | 1.034 |
| Pennsylvania | 2.9 | 1.034 |
| Rhode Island | 1.2 | 1.030 |
| South Carolina | 0.8 | 1.032 |
| South Dakota | 0.0 | 1.036 |
| Tennessee | 0.6 | 1.036 |
| Texas | 0.0 | 1.027 |
| Utah | 0.0 | 1.034 |
| Vermont | 0.0 | 1.032 |
| Virginia | 2.4 | 1.040 |
| Washington | 0.0 | 1.031 |
| West Virginia | 0.0 | 1.053 |
| Wisconsin | 0.0 | 1.031 |
| Wyoming | 0.0 | 1.036 |
| Puerto Rico | 0.0 | 1.053 |

Retrospective Premium Agreement                    (Revised) Page 6.

  * Premium Tax Factors adjustable as described in Section B.,1.,g.
    of this Agreement.

  Cumulative Policy Period Premium Computation Option. Total Incurred
  Losses as herein defined from each elapsed policy period shall be
  included in each Retrospective Premium Computation up to the
  Cumulative Maximum Retrospective Premium at the time of each such
  computation.

5. LOSS LIMITS FOR THIS POLICY PERIOD

  A. Workers Compensation and Employee's Death, Burial, Disability,
     Rehabilitation and Medical Benefit Policies

     1.)  Workers Compensation and Employee's Death, Burial,
          Disability, Rehabilitation and Medical Benefit Coverage -
          Loss Limit - Injury or Disease Arising Out of Any One
          Accident.

          The first $250,000 of benefits or damages payable for
          Injury or Disease arising out of Any One Accident as
          defined below involving one or more employees for Workers
          Compensation as provided under the laws of any state,
          territory, possession or the Federal Government.

          Allocated Loss Expense is included in this Loss Limit.

     2.)  Workers Compensation and Employee's Death, Burial,
          Disability, Rehabilitation and Medical Benefit Coverage -
          Loss Limit - Any One Employee, Occupational Injury or
          Disease.

          The first $250,000 of benefits or damages payable to Any
          One Employee arising out of Occupational Injury or Disease
          as defined below for Workers Compensation as provided under
          the laws of any state, territory, possession or the Federal
          Government.

          Allocated Loss Expense is included in this Loss Limit.

     3.)  Coverages Other Than Workers Compensation - Loss Limit -
          Injury or Disease Arising Out of Any One Accident.

          The first $250,000 of benefits or damages payable for
          Injury or Disease arising out of Any One Accident as
          defined below involving one or more employees.

          Allocated Loss Expense is included in this Loss Limit.

Retrospective Premium Agreement                    (Revised) Page 7.

4.) Coverages Other Than Workers Compensation - Loss Limit - Any One Employee, Occupational Injury or Disease.

The first $250,000 of benefits or damages payable to Any One Employee arising out of Occupational Injury or Disease as defined below.

Allocated Loss Expense is included in this Loss Limit.

5.) Definition - Application of Loss Limits - Workers Compensation Coverage - Separately For Each Policy.

a.) Injury or Disease Arising Out of Any One Accident.

Injury or Disease Arising Out of Any One Accident is any circumstance which triggers the payment of benefits or damages other than an Occupational Injury or Disease. An Accident can be characterized as an event, a happening or an occurrence of a short time duration with a known beginning and ending at defined points in time which results in Injury or Disease to one or more employees.

b.) Occupational Injury or Disease, Any One Employee.

An Occupational Injury or Disease is an adverse medical condition caused by exposure to injurious or disease producing conditions encountered in the course of employment over an extended period of time which may or may not have a known beginning or ending at a defined point in time. An Occupational Injury or Disease is not an Injury or Disease Arising Out of Any One Accident.

6.) Definition - Application of Loss Limits - Coverages Other Than Workers Compensation - Separately for Each Policy.

a.) The Loss Limit applies separately with respect to each coverage for which there is a separate Each Employee/Accident Limit of Liability that is triggered by any Injury or Disease Arising Out of Any One Accident or Any One Employee Arising Out of Occupational Injury or Disease, or

b.) In the event that there are combinations of Employee/Accident Limits applying to more than one coverage, the Loss Limit applies once with respect to each such combination for such coverages that are triggered by Any Injury or Disease Arising Out of Any One Accident or Any One Employee Arising Out of Occupational Injury or Disease, or

Retrospective Premium Agreement                    (Revised) Page 8.

        c.) In the event that there are coverages without defined
        Each Employee/Accident Limits of Liability the Loss
        Limit applies separately with respect to each such
        coverage that is triggered by any Injury or Disease
        Arising Out of Any One Accident or Any One Employee
        Arising Out of Occupational Injury or Disease.

B. Commercial General Liability Policies or Policies Providing the
   Same or Similar Insurance

    1.) $ 500,000 each occurrence involving one or more claimants
       arising out of any coverage or coverages provided by the
       policy on a combined basis.

    2.) Allocated Loss Expense is included in these Loss Limits.

C. Automobile Liability Policies

    1.) $ 250,000 each occurrence/accident involving one or more
       claimants arising out of Bodily Injury, Property Damage,
       No-fault Benefits, Uninsured Motorists, Underinsured
       Motorists or Liability Coverage provided by the policy on a
       combined basis.

    2.) Allocated Loss Expense is included in these Loss Limits.

D. The terms Occurrence and Accident as used herein have specific
   meanings in the Definitions Section of each policy.

Form DRPA Edition 4 (10/92)                    20-May-93

Retrospective Premium Agreement                              Page 9.

## RETROSPECTIVE PREMIUM AGREEMENT
Agreement No.  68579 - 93

This Agreement between C.H. HEIST CORPORATION ("Insured") and ZURICH INSURANCE COMPANY ("Company"), in consideration of premium paid by the Insured and insurance provided by the Company, is effective at 12:01 A.M., Standard Time, January 1, 1993, at the address of the Insured as stated in the Information Pages of this Agreement.

A.  POLICY PERIOD; POLICIES INCLUDED IN AND EXCLUDED FROM THIS AGREEMENT

   1.  The policy period included in this Agreement is as stated in the Information Pages.

   Additional policy periods may be added to this Agreement by the issuance of Renewal Information Pages to form a part hereof.

   2.  This Agreement includes:

   a.  Those policies listed in the Information Pages, and

   b.  Any other policies issued to the Insured by the Company during the policy period designated in the Information Pages which afford the same or similar insurance.

   3.  This Agreement excludes only those policies or coverages which afford the same or similar insurance to those listed as included in the Information Pages that are designated as being specifically excluded therein.

B.  COMPUTATION OF EARNED RETROSPECTIVE PREMIUM

   1.  Definitions  :

   a.  Earned Retrospective Premium shall be computed as follows subject to the definitions as stated herein:

   1.)  Basic Premium, plus

   2.)  Incurred Losses multiplied by the Loss Factor, then

   3)  The total of 1) and 2) multiplied by the Premium Tax Factor, but shall in no event be less than the Minimum Retrospective Premium.

   4)  Subject Incurred Losses shall in no event be greater than the Aggregate Retention Amount.

   b.  Standard Premium is computed in accordance with the provisions of the policies, excluding Excess (or "E") Premium and Premium designated as Non-Subject.

Form DRPA Edition 4 (10/92)                              05-Mar-93

Retrospective Premium Agreement                                    Page 10.

    c. Basic Premium is:

       1.) The factor as stated in the Information Pages multiplied
         by the Standard Premium, or

       2.) The rate as stated in the Information Pages multiplied
         by the audited exposure,

      whichever is greater.

    d. Excess Loss Premium - Each Accident - Workers Compensation
      is:

       1.) The factor as stated in the Information Pages multiplied
         by the Workers Compensation Standard Premium, or

       2.) The rate as stated in the Information Pages multiplied by
         the audited exposure,

      whichever is greater.

    e. Incurred Losses are:

       1.) Actual losses paid, plus

       2.) Reserves as estimated and established by the Company in
         accordance with its standard practice for unpaid losses,
         plus

       3.) Allocated Loss Expense, defined as actual payments and
         estimated reserves for:

         a.) legal expenses,
         b.) independent adjusters' fees,
         c.) attorneys' fees,
         d.) court costs,
         e.) interest (including pre and post judgement),
         f.) expense for expert testimony,
         g.) medical expense of any kind not incurred for the
           benefit of the claimant(s), and
         h.) any other expense incurred under the policies which
           can be directly attributed to a specific claim.

         Allocated Loss Expense Excludes:

         a.) The usual and normal expenses associated with
           investigation and adjustment of claims by employees
           of the Company, and

         b.) Damages and payments for medical treatment.

Retrospective Premium Agreement                          Page 11.

    4.) The Company's decision as to the proper reserve for any
        loss or Allocated Loss Expense shall be final.

    5.) Incurred Losses shall exclude any amounts by which
        losses exceed the Loss Limits as stated in the
        Information Pages.

f. Loss Factor(s) are as stated in the Information Pages.

g. Premium Tax Factor.  The Estimated Average Premium Tax
   Factor is as stated in the Information Pages.  At the first
   Retrospective Premium Computation for each policy period, the
   Premium Tax Factor shall be revised by the Company, if
   necessary, to reflect the actual premium tax rates in effect
   during that policy period.

h. Minimum Retrospective Premium is:

    1.) The factor as stated in the Information Pages multiplied
        by the Standard Premium, or

    2.) The rate as stated in the Information Pages multiplied by
        the audited exposure,

   whichever is less, but Minimum Retrospective Premium shall in
   no event be less than the Company is obligated to collect
   from the Insured in accordance with Insurance Department
   Regulation.

i. Workers Compensation Residual Market Subsidy Charges are:

   Subject to adjustment at each Retrospective Premium
   Adjustment based on the Workers Compensation Earned
   Retrospective Premium in each state subject to Residual
   Market Subsidy Factors, times the appropriate Residual Market
   Subsidy Factor as stated in the Information Pages, times the
   appropriate Premium Tax Factor as stated in the Information
   Pages.

j. Automobile Liability Residual Market Subsidy Charges are:

   Subject to adjustment at each Retrospective Premium
   Adjustment based on the Automobile Liability Earned
   Retrospective Premium in each state subject to Residual
   Market Subsidy Factors, times the appropriate Residual Market
   Subsidy Factor as stated in the Information Pages, times the
   appropriate Premium Tax Factor as stated in the Information
   Pages.

Retrospective Premium Agreement                                    Page 12.

C.  PAYMENT OF PREMIUM

1.  The Insured shall pay to the Company the Standard Premium, Earned Retrospective Premium and Excess Premium in accordance with the provisions of the policies, this Agreement or the Premium Payment Agreement, as applicable.

2.  Annual Policy Period Premium Computation Option.  Based upon the selection of the Annual Policy Period Option in the Information Pages, the Company shall compute and the Insured shall pay to the Company within ten (10) days of receipt of its demand therefore, Earned Retrospective Premium based upon Incurred Losses valued as of a date six (6) months after the expiration of each such period, as soon as practicable after such valuation.  Additional Earned Retrospective Premium Adjustments shall be computed by the Company based upon Incurred Losses valued annually thereafter as soon as practicable after such valuation dates, payable within ten (10) days of receipt of its demand therefore, until such time as the Company shall designate an adjustment as being final.

3.  Cumulative Policy Period Premium Computation Option.  Based upon the selection of the Cumulative Policy Period Option in the Information Pages, the Insured shall pay to the Company within ten (10) days of receipt of its demand therefore, the Earned Retrospective Premium based upon Incurred Losses valued as of a date six (6) months after the expiration of each such period, cumulatively for all such periods as have then elapsed, as soon as practicable after such valuation.  Additional Cumulative Earned Retrospective Premium Adjustments shall be computed by the Company based upon Incurred Losses valued annually thereafter as soon as practicable after such valuation dates, payable within ten (10) days of receipt of the Company's demand therefore, until such time as the Company shall designate an adjustment as being final.

4.  Responsibility For Payment; Additional and Return Premiums.  Insured is solely responsible for the payment of additional Earned Retrospective Premium and for the receipt of any return premium.

    If Earned Retrospective Premium and Excess Premium as computed by the Company exceeds premium previously paid to the Company, the Insured shall pay, within ten (10) days of receipt of its demand therefore, that difference to the Company; if less, the Company shall credit or return that difference to the Insured.

Form DRPA Edition 4 (10/92)                                    05-Mar-93

Retrospective Premium Agreement                        Page 13.

5. **Bankruptcy or Ownership Change.** In the event of the Insured's insolvency, bankruptcy, involvement in a proceeding for dissolution, assignment for the benefit of creditors, or any other proceeding or arrangement of like nature and in the event of a material change in the ownership of the Insured, the Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium at any time thereafter. If the amount due the Company is more than the premium previously paid by the Insured, such additional amount is due and payable within ten (10) days of receipt of demand therefore.

6. **Payment Disputes and Arbitration.**

   a. **Disputed Amounts.** In the event that any element or elements of the Earned Retrospective Premium Computation are disputed by the Insured, the Insured shall, within thirty (30) days of receipt of demand therefore, pay to the Company that portion of the Earned Retrospective Premium which is not disputed plus that portion of any disputed item that the Insured acknowledges as being valid. This thirty (30) day period may be extended only upon receipt of written request by the Insured followed by written consent from the Company. The Insured must, at the time of such partial payment or request for extension, itemize each disputed item and offer an explanation as to their objections to such items. If there is no dispute as to the amount of Earned Retrospective Premium, payment is due within ten (10) days of receipt of the Company's demand therefore. If the Insured fails to pay the Company within thirty (30) days of receipt of demand and to offer such list of disputed items, the Company may:

      1.) Draw upon or make claims against any Collateral provided by the Insured and held by the Company in order to guarantee the payment of the Insured's obligations, regardless of whether or not said Collateral was provided as respects any period subject to this Agreement, or

      2.) Send a demand for Arbitration to the Insured.

      Upon receipt of the explanation of disputed items from the Insured, the Company shall promptly acknowledge such receipt and arrange for an immediate mutual review of same. If the disputed amounts are resolved upon such review, the Insured shall, within ten (10) days of such review, pay to the Company any such amount as agreed.

      If, upon review, the Insured and the Company fail to reach agreement, the disputed amounts may be submitted by the Company for Arbitration.

Retrospective Premium Agreement                    Page 14.

    b. Arbitration.  As a precedent to any right of action
hereunder, if any dispute shall arise between the Company and
the Insured with reference to the interpretation of this
Agreement or their rights with respect to any transaction
involved, regardless of when such dispute may arise, such
dispute, upon written request of either party shall be
submitted to three (3) arbitrators, one (1) chosen by the
requesting party at the time of the written request for
Arbitration, the second by the other party within fifteen
(15) days of receipt of such request, and the third by the
first two (2) arbitrators within thirty (30) days
thereafter.  If the party receiving the written request fails
to appoint its arbitrator within the time specified, the
other party may appoint the second arbitrator. The third
arbitrator shall be a disinterested umpire unconnected with
either party, and if the first two (2) arbitrators fail to
agree on the third arbitrator within the time specified, each
party shall name one (1) person as the proposed third
arbitrator, and the choice of one (1) of those as third
arbitrator shall be done by drawing lots.

The arbitrators shall interpret this Agreement as an
honorable engagement and not merely as a legal obligation.
They are relieved of all judicial formalities and may abstain
from the strict rule of law, and they shall make their award
with the view of effecting the general purpose of this
Agreement in a reasonable manner rather than in accordance
with a literal interpretation of the language.  Each party
shall submit its case to the arbitrators within a reasonable
time after appointment of the third arbitrator in accordance
with a schedule as agreed upon by the arbitrators.

The decision in writing of any two (2) arbitrators, when
filed with the parties hereto, shall be final and binding
upon both parties.  Judgement may be entered upon final
decision of the arbitrators in any court having
jurisdiction.. Each party shall bear the expense of its own
arbitrator and shall jointly and equally bear with the other
party the expense of the third arbitrator and of the
Arbitration.  Said Arbitration shall take place in the
Village of Schaumburg, Illinois, unless some other place is
mutually agreed upon by the Company and the Insured.

  7. Diminished Hazards.  With respect only to the rate multiplied by
an exposure base alternative for computing Basic Premium, Excess
Loss Premium and Minimum Premium, the use of such rates
acknowledges that certain hazards exist at the time of policy
inception which require a certain floor level combination of
premium and Retrospective Premium Factors to adequately fund
these elements, including anticipated Incurred Loss Amounts.
Since the Company cannot control certain aspects of premium

makeup, such as experience modifiers applying to Workers Compensation premium that may be unrelated to existing hazards, the floor level rate times the exposure basis assures that these hazards are properly funded from an Earned Retrospective Premium standpoint. Increased hazards during the period are generally subject to differing premium rates and classifications that are self-correcting at the time of Premium Audit, then charged as a percentage of premium as respects the application of Retrospective Rating Factors.

In the event that hazards decrease during the period and the Insured believes the rate multiplied by the exposure base to be, as a result, inappropriate, the Insured may request, and when presented with such request, the Company shall adjust these rates downward on a basis proportionate with such reduction of hazard, provided that such reduction can be demonstrated based upon objectively determined criteria.

D. CANCELLATION AND NON-RENEWAL

As used herein, the term Cancellation shall mean at a date other than at a normal anniversary date. If a policy subject to this Agreement is cancelled or non-renewed:

1. Penalties For Cancellation or Non-Renewal by the Insured, Cumulative Policy Period Computation Option.

   a. Standard Premium shall be the sum of same as computed for each completed period of twelve (12) months plus, for the period of less than twelve (12) months, Standard Premium computed in accordance with the Company's short rate table and procedure.

   b. Basic Premium shall be computed based upon Standard Premium as determined in a.,

   c. Minimum Retrospective Premium shall be Standard Premium as determined in a.,

   d. Aggregate Losses subject to the Retrospective Plan shall be based on exposures determined as is Standard Premium in a., extended on a pro-rata basis through the last day of the final period indicated in the Information Pages for the Cumulative Policy Period Premium Computation Option, but the Aggregate Retention Amount shall never be less than $2,800,000.

   e. The Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium in accordance with the foregoing at any time after such Cancellation or Non-Renewal. If the amount due the Company is more than the premium previously paid by the Insured, such additional amount is due and payable within ten (10) days of receipt of demand therefore.

Retrospective Premium Agreement                                    Page 16.

2. Penalties For Cancellation by the Insured, Annual Policy Period Premium Computation Option.

   a. Standard Premium shall be computed, for a period of less than twelve (12) months, in accordance with the Company's short rate table and procedure,

   b. Basic Premium shall be computed by the Company, for a period of less than twelve (12) months, based upon the Standard Premium as determined in a.,

   c. Minimum Retrospective Premium shall be, for a period of less than twelve (12) months, the Standard Premium as determined in a.,

   d. Aggregate Retention Amount shall be, for a period of less than twelve (12) months, the Estimated Annual Aggregate Retention Amount as determined at inception.

   e. The Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium in accordance with the foregoing at any time after such Cancellation.  If the amount due the Company is more than the premium previously paid by the Insured, such additional amount is due and payable within ten (10) days of receipt of demand therefore.

3. Cancellation or Non-Renewal by the Company

   a. Standard Premium shall be computed on a pro-rata basis, and

   b. If Cancellation by the Company is for non-payment of premium, the Aggregate Retention Amount shall be computed in accordance with either Section D.,1.,d. or D.,2.,d., depending upon the selection of either Annual Policy Period Option or Cumulative Policy Period Option, as stated in the Information Pages, and the Company may, at its option, make a valuation of Incurred Losses and compute Earned Retrospective Premium in accordance with the foregoing at any time after such Cancellation.  If the amount due the Company is more than the premium previously paid by the Insured such additional amount is due and payable within ten (10) days of receipt of demand therefore.

Retrospective Premium Agreement                                    Page 17.

E.   UNDERLYING PLANS

Any other Retrospective Premium Endorsement, participating plan, premium discount endorsement, or letters of election do not apply as respects the computation of Earned Retrospective Premium.  The terms of this Agreement shall govern the computation of all premium as herein described.

F.   RIGHT OF OFFSET

The Company and the Insured may offset any balance(s) due from one to the other under the terms of this Agreement.

G.   SEVERABILITY

If any section or portion thereof, term, definition or provision of this Agreement is held by any governmental authority or court of law to be illegal or in conflict with the law of any state, the validity of the remaining portions or provisions shall not be affected, and the rights and obligations of the Insured and the Company shall be construed and enforced as if this Agreement did not contain that particular section or portion thereof, term, definition or provision held to be invalid.

H.   CHANGES IN THIS AGREEMENT

This Agreement contains all of the terms, conditions and definitions as respects the obligations, rights and duties of the Insured and the Company hereunder, and as such, constitutes the whole Agreement, all other representations notwithstanding.

The terms of this Agreement shall not be waived or changed except by an Addendum, issued to form a part hereof, executed by a duly authorized representative of the Insured and the Company.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE CAUSED THIS AGREEMENT TO BE SIGNED BY THEIR DULY AUTHORIZED REPRESENTATIVES.

ZURICH INSURANCE COMPANY                    C.H. HEIST CORPORATION

By _____               By _____
   Robert L. Tinkham
   Assistant Vice President                Title _____

Dated ___3/8/93___                         Dated ___8/11/93___

Form DRPA Edition 4 (10/92)                              05-Mar-93



## INCURRED DEDUCTIBLE AND
## INCURRED LOSS RETROSPECTIVE RATING AGREEMENT

This Agreement, effective on the date stated in the Specifications attached as part of this Agreement, between Ablest Service Corp. (referred to as "You" and "Your") and Zurich Insurance Company collectively referred to as "We," "Us" and "Our".

### TERMS AND CONDITIONS

A. Purpose of the Agreement

The purpose of this Agreement is to outline (a) the scope, description and structure of the Incurred Incurred Deductible Program ("IDP") and the Incurred Loss Retrospective Rating Program ("ILR") (collectively referred to as the "Program") You and We have entered into and (b) the duties and obligations of each party with respect to this Program.

B. Scope of the Agreement

The Policy(ies) for each line of business issued by the applicable insurance company, including all endorsements, extensions, renewals and/or rewrites, subject to this Agreement are stated in the Specifications.

This Agreement has two parts: Terms and Conditions and Specifications. Each part of the Agreement will be signed by both parties. The Agreement term is continuous and will be amended for each Program change by adding new Specifications, effective on the date of the change, and signed by both parties.

This Agreement governs the structure and operation of and the duties and obligations of each party to this Program and supersedes any Deductible and Retrospective Rating endorsements to the Policy(ies), prior communications, negotiations, participating plans or letters of election.

C. Program Description

Under the Program, We have selected a Third Party Administrator ("TPA") at Your request to handle and pay the claims presented in accordance with the provisions of the Policy(ies). You assume the risk within the Loss Limit(s) and We accept the risk transfer excess of the Loss Limit(s) and the Aggregate Amount, if applicable, up to the limits of liability under the Policy(ies).



EXHIBIT
C

Z00013

## C. Program Description (continued)

With respect to the IDP, the Specifications state the amount of Your initial payment to Us with respect to the Deductible Premium and the expected Incurred Losses within the Loss Limit(s), as determined by Us, plus related expenses and assessments. The amounts paid by You for Your obligations within the Loss Limit(s) under the IDP will be held by Us in a Loss Reimbursement Fund.  With respect to the ILR, the Specifications state the amount and composition of Your initial premium payment to Us.

The Retrospective Premium and the Loss Reimbursement Fund are calculated and adjusted based on Your loss experience at specified loss valuation dates after the expiration of the Policy(ies) until the Aggregate Amount, if applicable, is reached.

Since We may not prefund Your estimated total obligation under the Program, We assume a financial risk that may require Collateral.  The initial amount of the Collateral and how and when the amount may be adjusted is stated in the Specifications.

## D. Program Structure

The Program has two primary, independent components: (1) the insurance coverage provided under the Policy(ies); and (2) the cash flow benefits achieved through the financing arrangement under the Program.

If You Default, We may, at Our option, terminate the financing arrangements under the Program.  This will result in all of Your financial obligations under the Program becoming immediately due and payable to Us.

## E. Definitions

Allocated Loss Adjustment Expense ("ALAE") is an expense directly allocable to a specific claim and shall include but not be limited to all Supplementary payments as defined under the Policy(ies); all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the Policy(ies).

Z00014

E. Definitions (continued)

ALAE Reserve is Our estimated value of unpaid ALAE under the Policy(ies).

Aggregate Amount is the greatest amount for the Program term stated in the Specifications You shall pay for Your obligations within the Loss Limit(s) under the Program including, but not limited to the components of the (1) Aggregate Deductible, (2) Deductible Premium and (3) Maximum Retrospective Premium, as stated in the Specifications.

Aggregate Deductible is the greatest amount for the Program term stated in the Specifications of Paid Losses within the Loss Limit(s) and, if applicable in accordance with the Specifications, Paid ALAE, plus related Unallocated Loss Adjustment Expense and Loss Based Assessment charges You shall pay under the IDP Policy(ies).

Aggregate Deductible Charge is the premium for limiting the losses paid by You to an Aggregate Deductible amount.

Basic Premium is an amount representing Our expenses under the ILR.

Collateral is a financial instrument or cash provided by You to secure the deferral of Your financial obligations under the Program. We have provided You with the required form and parameters for the type of Collateral both parties have agreed will be used.

Combined Elements shall include certain common elements of the IDP and the ILR that apply to the Program.

Deductible Amount(s) is the amount You shall pay for each occurrence, accident or claim under the IDP Policy(ies) as stated in the Specifications.

Deductible Fee is an amount representing Our expenses under the IDP.

Deductible Premium is the amount paid by You to Us for the IDP.

Default occurs when

1. You fail to pay any amount when it is due under this Agreement including but not limited to the initial Loss Reimbursement Fund amount and subsequent adjustments.

Z00015

E. Definition (continued)

2. You file a petition in bankruptcy, a declaration of insolvency or an action or proceeding for dissolution is filed by or against You; a receiver or trustee is appointed for You; You execute a workout agreement; You make an assignment for the benefit of creditors; or any other proceeding or arrangement of a similar nature is instituted by or against You.

3. You fail to provide the initial, adjusted or replacement Collateral as required in this Agreement.

Due on Demand is when a payment is due Us at the time the bill is presented to You.

Earned Retrospective Premium is the premium that is calculated at a Retrospective Premium adjustment that is subject to the Minimum Retrospective Premium and the Maximum Retrospective Premium.

Excess Premium is the premium You pay to Us for limiting the losses paid by You to the Loss Limit(s) and for Our assumption of the risk transfer excess of the Loss Limit(s) up to the limits of liability under the Program Policy(ies).

Incurred ALAE is the Paid ALAE plus the ALAE Reserve under the Policy(ies).

Incurred But Not Reported ("IBNR") is a reserve that has been established by Us as a provision for future obligations under the Policy(ies) arising from either (a) claims and related ALAE that have occurred but have not as yet been reported to You and/or to Us; or (b) anticipated changes in Incurred Loss and Incurred ALAE for claims that have been previously reported to You and/or to Us.

Incurred Loss is a Paid Loss plus a Loss Reserve under the Policy(ies).

Insurance Charge is the premium You pay to Us representing the charge made for limiting the losses paid by You to an amount between the Minimum Retrospective Premium and the Maximum Retrospective Premium.  Under this Agreement, the term Insurance Charge shall also include the Aggregate Deductible Charge as a Combined Element.

Loss Based Assessment ("LBA") is a state charge levied against losses.

Z00016

Loss Limit(s) is the amount You shall pay for each occurrence, accident or claim under the ILR Policy(ies) as stated in the Specifications. Under this Agreement, the term Loss Limit(s) shall also include Deductible Amount(s).

E. Definitions (continued)

Loss Reimbursement Fund is a non-interest bearing account where Your funds are held by Us to provide for the payment of Your obligations within the Loss Limit(s) under the Policy(ies) for the IDP.

Loss Reserve is Our estimated value of an unpaid claim that has been previously reported to Us under the Policy(ies).

Maximum Retrospective Premium is the greatest amount for the Program term stated in the Specifications You shall pay for Your obligations under the ILR in accordance with the Retrospective Rating Formula stated in the Specifications.

Minimum Retrospective Premium is the least amount for the Program term stated in the Specifications You shall pay for Your obligations under the ILR in accordance with the Retrospective Rating Formula stated in the Specifications.

Other Special Charges shall include but not be limited to additional premium taxes, premium and loss assessments, residual market subsidies, administrative, statutory or court-ordered fines or penalties not the result of Our negligence, any expenses We incur to collect from You amounts past due and to enforce any of the provisions of this Agreement.

Paid ALAE is a payment made by Us for ALAE under the Policy(ies).

Paid Loss is a payment made by Us for a claim under the Policy(ies).

Premium Surcharge includes federal, state, city and municipal charges by governmental agencies due in addition to the Policy premium that are billed separately at Program inception and adjusted at audit.

Premium Tax includes state taxes and assessments that under (1) the IDP is a rate that may be charged against the full state Standard Premium or the Deductible Premium; and (2) under the ILR is expressed as a Tax Multiplier and charged against both loss and expense within the formula.

Z00017

Retrospective Development Factor is an factor used to stabilize Retrospective Premium adjustments by anticipating future increases in losses. The factor is applied to Incurred Losses and Incurred ALAE in the Retrospective Rating Formula stated in the Specifications.

E. Definitions (continued)

Retrospective Premium is the premium developed by applying the Retrospective Rating Formula, subject to a Minimum Retrospective Premium and a Maximum Retrospective Premium.

Retrospective Rating Formula is the method of calculating the Retrospective Premium as stated in the Specifications.

Standard Premium is calculated in accordance with the National Council on Compensation Insurance rules using Our manual rates times the exposure times the experience modification and, if required, times premium discount.

Ultimate Retrospective Premium is the premium that is calculated at Program inception and at each Retrospective Premium adjustment that represents Our estimate of the Retrospective Premium based on a current loss valuation plus IBNR.

Unallocated Loss Adjustment Expense ("ULAE") includes expenses that are not directly allocated to a specific claim. The ULAE may be charged to You either by applying: (a) a Loss Conversion Factor ("LCF") that is a factor applied to the Incurred Loss, plus the Incurred ALAE; or (b) a Claim Handling Fee ("CHF") that is a dollar amount charged per reported claim, as stated in the Specifications.

F. Payments Due

The payments under this Program and the dates these amounts become due are stated in the Specifications. Each party to the Agreement agrees to remit all payments so that they are received on or before the due date. If any amount is payable and a specific due date is not stated, thirty (30) days from the date of billing will be the due date. You and each named insured stated in the Policy(ies) shall be jointly and severally responsible for the obligations under this Agreement.

In the event all or part of a payment due under the Program is in dispute:

Z00018

a. The undisputed portion of the payment will be remitted in accordance with the terms of this Agreement.

b. A written notice stating the amount and explaining the reason for the dispute will be sent to the address stated in the Specifications on or before the payment due date.

F. Payments Due (continued)

Both parties agree to attempt to resolve any dispute within sixty (60) days after the date of the notice.

G. Loss Reimbursement Fund

The initial amount of the Loss Reimbursement Fund paid by You and held by Us is stated in the Specifications.

The Loss Reimbursement Fund is adjusted based on Your Incurred Losses, Incurred ALAE, ULAE and LBA at specified loss valuation dates after the expiration of the Policy(ies) until the Aggregate Amount, if applicable, is reached.

H. Collateral

Initial Letter of Credit

On or before the inception date of this Agreement, You shall give Us a clean, unconditional, irrevocable Letter of Credit ("LOC") with an automatic renewal term of twelve (12) months.   The LOC must be from a bank approved by the National Association of Insurance Commissioners and in the form provided by Us.

Computation and Adjustment of LOC Amount

The LOC amount shall be in an amount sufficient to secure Your obligations under the Program.  We reserve the right to adjust the LOC amount at any time.  The initial amount of the LOC and how it is adjusted are stated in the Specifications.  You shall provide us with an amendment to the LOC for any increase or decrease in the amount required within thirty (30) days of Our request.

Replacement LOC

Z00019

If the issuing bank notifies Us of nonrenewal of the LOC in not less than thirty (30) days prior to its expiration or if We advise You that the form has been amended to meet new regulatory requirements, You shall provide Us with a replacement LOC in an equal or adjusted amount not less than fifteen (15) days prior to the expiration date.

### H.  Collateral (continued)

#### Draws on LOC

In the event of a Default, We reserve the right to draw on the LOC provided by You under the provisions of this or any other Agreement between You and Us at any time to pay any amount that is due or may become due, including without limitation IBNR, under this Agreement.

#### Surrender of LOC

Your duty to provide Collateral will continue until We determine that the Collateral is no longer required under this Agreement. You understand and agree that this duty may continue after this Agreement terminates or is canceled.

### I.  Audit

An audit for the Program term stated in the Specifications will be conducted in accordance with the provisions of the Policy(ies). The adjustable elements of the Program will be adjusted based on the audited exposures.   The processing of the audit for any or all of the adjustable elements may be deferred, at Our option, until the calculation of the first Retrospective Premium Adjustment.

### J.  Invalidity and Severability

It is agreed that if any provision of this Agreement is found to be invalid or unenforceable by a governmental authority or court of law,  all the other provisions of this Agreement shall remain valid and enforceable as if the Agreement did not contain the invalid or unenforceable provision. The invalid or unenforceable provision shall be amended to the minimum extent necessary to cure the invalid or unenforceable element and to preserve the original intent.

### K.  Non-Waiver Of Rights

Z00020

Failure by either party to enforce any provision of this Agreement shall not be interpreted as a waiver of such provision or any other provision or any existing or future rights or privileges under this Agreement. The terms and conditions of this Agreement may be strictly enforced at any time despite any past or subsequent failure to do so by either party.

L. **Changes In This Agreement**

This Agreement shall not be waived, changed or assigned except by an Addendum, signed by a duly authorized representative of each party to this Agreement.

M. **Offset**

The parties under this Agreement each reserve the right to offset any balance due from one party to the other under this or any other Agreement entered into between Us, except as prohibited by law.

N. **Arbitration**

Any dispute arising out of the interpretation, performance or alleged breach of this Agreement, shall be submitted to arbitration in accordance with the following procedure:

1. Written notice requesting arbitration will be sent certified or registered mail, return receipt requested.

2. A panel shall be made up of three arbitrators. Each party shall select one arbitrator and the two selected arbitrators shall select an impartial third arbitrator who shall preside at the hearing.

3. If either party fails to appoint its arbitrator within thirty (30) days of the request, the other party shall send notice by certified or registered mail of its intention to appoint a second arbitrator and may do so within ten days of the notice date.

4. If the two arbitrators do not select the third arbitrator within thirty (30) days of their appointment, each arbitrator shall select three candidates, or a smaller number as agreed to by the two arbitrators, from a list of qualified candidates provided by the American Arbitration Association. At the request of the two arbitrators, the American Arbitration Association shall select the third arbitrator from the list of candidates submitted.

Z00021

5.  Within thirty (30) days after notice of appointment of all arbitrators, the arbitrators shall meet and determine timely periods for briefs, discovery procedures and schedules of hearings.

## N.  Arbitration (continued)

6.  The arbitrators shall be relieved of all judicial formality and shall not be bound by the strict rules of procedure and evidence.  Unless the parties under this Agreement agree otherwise, arbitration shall take place in Schaumburg, Illinois.

7.  The arbitrators shall make their decision considering the custom and practice of the applicable insurance business as promptly as possible following the termination of the hearings.  The award may not include any form of fine or multiple, punitive or exemplary damages.  Confirmation of the award may be entered in any court having jurisdiction.

8.  Each party shall pay the expense of its own arbitrator and equally pay the expenses of the third arbitrator and any other expenses of the arbitration proceeding.  Each party shall pay their own costs of counsel.

## O.  Termination

This Agreement will terminate by mutual written consent.  We also reserve the right to terminate this Agreement if (1) there is a material change in Your ownership or (2) one or more of the Policy(ies) stated in the Specifications is canceled.  Despite the termination of the Agreement, You are still liable for all Your obligations under this Agreement incurred up to the date of termination.  It is understood and agreed by both parties that if billings are suspended at any point in time because all payments have been made, We still reserve the right to bill You at a future date for any and all claims subsequently reported, together with related expenses, provided the Aggregate Amount, if any, has not been exhausted.

In the event of a mid-term termination of the Program, (a) the Standard Premium will be calculated in accordance with the cancellation provisions of the Policy(ies); and (b) the calculation of the applicable Program elements, including but not limited to the Deductible Premium, Basic Premium, Excess Premium, Insurance Charge, Minimum Retrospective

Z00022

Premium and the Aggregate Amount, will be subject to the minimum amounts stated in the Specifications.

In the event of a Default or a material change in Your financial condition, We may, at Our option, terminate the financing portion of the Program.  The amount immediately due and payable to Us will be determined by Us using either of the following options:  (1) all of

O.  Termination (continued)

Your obligations under the IDP calculated using the most recent loss valuation, plus IBNR and Your ultimate obligations under the ILR through the calculation of an unscheduled Retrospective Premium adjustment using the most recent loss valuation, plus IBNR; or (2) the full Standard Premium by converting the Program to a guaranteed cost rating plan using Our manual rates in effect as of the Program effective date.


P.  Governing Law And Jurisdiction

This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

Z00023

The parties have caused this Agreement to be signed by their duly authorized representatives and witnessed.

ABLEST SERVICE CORP.

By: _Mari P. Kasline_

Title: _Treasurer, CFO_

Witness: _Lisa M. Allen._

Date: _6/19/97_

ZURICH INSURANCE COMPANY, U.S. BRANCH

By: _Odette Aufrance_

Title: Assistant Vice President

Witness: _Cathi Dunn_

Date: _6/11/97_

12                                    Z00024



SPECIFICATIONS TO INCURRED DEDUCTIBLE AND
INCURRED LOSS RETROSPECTIVE RATING AGREEMENT
BETWEEN
ABLEST SERVICE CORP.
AND
ZURICH INSURANCE COMPANY ("ZIC")

Program Effective Date: January 1, 1997

Applicable Policies

| Line of Business | Program | Company | Policy Number | Expiration Date |
|---|---|---|---|---|
| WC & EL | ILD | ZIC | WC 8445472-00 | 1/1/98 |
| GL | ILR | ZIC | GLO 8445473-00 | 1/1/98 |

Loss Limit(s)

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to all coverages provided under the Policy(ies):

A. The first $250,000 under Workers' Compensation and Employers' Liability ("WC") arising out of each accident involving one or more employees.

B. The first $250,000 under WC arising out of occupational disease payable to each affected employee.

C. The first $250,000 under Employers" Liability ("EL") coverage arising out of each accident involving one or more employees.

D. The first $250,000 under EL coverage arising out of occupational disease payable to each affected employee.

E. The first $500,000 for each occurrence for all of the coverages provided under the Commercial General Liability ("GL") Policy(ies).

F. With respect to A through E above, ALAE will be handled and paid as follows:

ALAE is included within the limits of liability and the Loss Limit(s) under the Policy(ies) and is paid by You up to the Loss Limit(s). We pay the indemnity and ALAE excess of the Loss Limit(s) up to the limits of liability under the Policy(ies).

G.  The limits of liability under the Policy(ies) shall be reduced by the application of the Loss Limit(s).

**Aggregate Retention - Combined for the Incurred WC Deductible and the Incurred GL Retro**

All Paid Losses (and paid ALAE) as stated under the Loss Limits above will be stopped at an Aggregate Retention amount of $2,850,000. The Aggregate Retention shall be adjusted at a rate of 6.889216 per $100. of audited payroll. In no event shall the Aggregate Retention be less than $2,850,000.

**Deductible Premium**

Deductible Premium is a minimum amount that is adjustable at audit as follows:

| Line of Business | Exposure Base | Rate per $100 | Premium |
|---|---|---|---|
| | Payroll | | |
| WC/EL | (41,369,000) | .45652 | $188,858 |

*If Taxes are adjustable and billed separately, or if identified for those states requiring payment on the full Standard Premium, add the following schedule:*

Premium Taxes are included in the Deductible Premium.

**Retrospective Rating Formula**

Formula:  IL + IALAE x  LCF +  Basic X TM = ERP

Components:

Incurred Losses within the Loss Limit(s) (IL) and Incurred ALAE (IALAE) times the Loss Conversion Factor (LCF), plus
Basic times
Tax Multiplier (TM), equals
Earned Retrospective Premium (ERP)

Z00026

**Minimum Retrospective Premium**

The Retrospective Premium calculated is subject to a Minimum Retrospective Premium equal to the Basic times the Tax Multiplier, subject to a minimum amount of $10,720.  The Minimum Retrospective Premium will be adjusted at the first Retrospective Premium Adjustment using the audited payroll.

**Maximum Retrospective Premium**

The maximum Retrospective Premium is unlimited; however, the Incurred Losses and ALAE used in the retrospective calculation shall be subject to a Minimum Aggregate Retention of $2,850,000 based on a rate of 6.889216 per $100. of audited payroll.

See Aggregate Amount under Combined Elements.

**Retrospective Premium Elements**

A. Basic is a minimum amount of $10,388. that is adjustable at a rate of $ 19.81% per $100 of audited standard premium.

B. Tax Multiplier

   The following are the average rates charged based on the state distribution of Your premium:

   | Line of Business | Tax Multiplier |
   | --- | --- |
   | GL | 1.032 |

**Combined Elements**

A. Excess Premium is a minimum amount that is adjustable as follows:

   | Line of Business | Exposure Base | Rate per $1000 | Premium |
   | --- | --- | --- | --- |
   | GL | Revenue | .52722 | $28,823. |

Z00027

Combined Elements (continued)

B.  Loss Based Assessments - Incurred WC Deductible

You will be billed for the actual state LBA at each adjustment.  The current rates applied to WC Incurred Losses are as follows:

| State | Percentage |
|-------|------------|
| NY | 21.5% of Paid Loss |

C.  Unallocated Loss Adjustment Expense

The LCF is applied to Incurred Loss, plus Incurred ALAE, as follows:

| Line of Business | LCF |
|------------------|-----|
| WC/EL | 1.09 |
| GL | 1.09 |

Audit

The processing of the audit for all of the adjustable elements of the Program will be deferred until the calculation of the first Retrospective Premium Adjustment.

You will pay the additional premium due Us or We will pay the return premium due You within twenty (20) days of the billing date.

Retrospective Premium Adjustments

The first Retrospective Premium Adjustment will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter by applying the Retrospective Rating Formula.

The amount due at the first Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium and the audited Standard Premium.  The amount due at each subsequent Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium less the Earned Retrospective Premium calculated at the prior adjustment.

4

Z00028

Audit (continued)

At each adjustment, You will pay the additional premium due Us or we will pay the return premium due You within twenty (20) days of the billing date.

Loss Reimbursement Fund - (Loss Fund)

Initial Loss Reimbursement Fund amount is $200,627. due in 12 installments as stated in this Agreement.

The amount paid by You includes expected Incurred Losses within the Deductible Amount(s), Incurred ALAE, and Incurred ALAE at the first adjustment, and LBA, as determined by Us.

The first adjustment of the Loss Reimbursement Fund will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter. Adjustments will be calculated by using the following formula in accordance with the Loss Limit(s) stated above:

(a) Incurred Losses within the Loss Limit(s) and Incurred ALAE; times
(b) the LCF; plus
(c) WC Incurred Losses times applicable state LBA; equals
(d) adjusted Loss Reimbursement Fund

The adjusted Loss Reimbursement Fund less the Loss Reimbursement Fund held equals the additional or return amount due.

At each adjustment, You will pay the additional amount due Us or We will pay the return amount due You within twenty (20) days of the billing date.

Collateral

*If no collateral is required at inception, add:*

As of the effective date, Collateral is not required under the Program.   Collateral requirements will be reviewed periodically and we reserve the right to require Collateral as We deem necessary to secure Your obligations to Us under the Program.

5

Z00029

## Notices

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

| | |
|---|---|
| If to You: | Mr. John L. Rowley |
| Address: | Ablest Service Corp.<br>45 Anderson Road<br>Buffalo, N.Y. 14225 |
| If to Us: | Zurich Insurance Company |
| Address: | Administrative Offices<br>1400 American Lane<br>Schaumburg, Illinois 60196-1056<br>Attention: Ben Grado |
| Telephone: | (847) 605-6805 |
| Telefax: | (847) 605-6832 |

6

Z00030

The parties have caused the Specifications, effective January 1, 1997 to be signed by their duly authorized representatives and witnessed.

ABLEST SERVICE CORP.

By: _Illinq C Kaslui_

Title: _Treatsurer,   CFO_

Witness: _Lisa. M. Allen_

Date: _6/19/97_

ZURICH INSURANCE COMPANY,
U.S. BRANCH

By: _Arleta Afare_

Title:  Assistant Vice President

Witness: _CaTai  Dura_

Date: _6/11/97_

7

Z00031



SPECIFICATIONS TO INCURRED DEDUCTIBLE AND
INCURRED LOSS RETROSPECTIVE RATING AGREEMENT
BETWEEN
ABLEST SERVICE CORP.
AND
ZURICH INSURANCE COMPANY ("ZIC")

**Program Effective Date:** January 1, 1998

**Applicable Policies**

| Line of Business | Program | Company | Policy Number | Expiration Date |
|---|---|---|---|---|
| WC & EL | IDP | ZIC | WC 8445472-01 | 1/1/99 |
| WC & EL | ILR | ZIC | WC 8445534-01 | 1/1/99 |
| GL | ILR | ZIC | GLO 8445473-01 | 1/1/99 |

**Loss Limit(s)**

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to all coverages provided under the Policy(ies):

A. The first $250,000 under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

B. The first $250,000 under WC coverage arising out of occupational disease payable to each affected employee.

C. The first $250,000 under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

D. The first $250,000 under EL coverage arising out of occupational disease payable to each affected employee.

E. The first $500,000 for each occurrence for all of the coverages provided under the Commercial General Liability ("GL") Policy(ies).

F. With respect to A, B, C, D and E above, ALAE will be handled and paid as follows:

Z00032

Loss Limit(s) (continued)

ALAE is included within the limits of liability and the Loss Limit(s) under the Policy(ies) and is paid by You up to the Loss Limit(s). We pay the indemnity and ALAE excess of the Loss Limit(s) up to the limits of liability under the Policy(ies).

G. The limits of liability under the Policy(ies) shall be reduced by the application of the Loss Limit(s).

Aggregate Retention - Combined for C.H. Heist Corp. and Ablest Service Corp. and applies to the Incurred WC Deductible and the Incurred WC Retro (WI only) and GL Retro.

All Paid Losses (and paid ALAE) as stated under the Loss Limit(s) above will be stopped at an Aggregate Retention Amount of $4,000,000. The Aggregate Retention shall be adjusted at a rate of 5.545174 per $100. of audited payroll. In no event that the Aggregate Retention be less than $4,000,000.

Deductible Premium

Deductible Premium is a minimum amount that is adjustable at audit as follows:

| Line of Business | Exposure Base | Rate per $100 | Premium |
|---|---|---|---|
| | Payroll | | |
| WC/EL | (57,943,000) | .330036 | $191,233. |

A. Aggregate Deductible Charge is included.
B. Excess Premium is included
C. Premium Taxes are included in the Deductible Premium.

Retrospective Rating Formula

Formula: IL + IALAE x  LCF +  Basic X TM = ERP

Components:

Incurred Losses within the Loss Limit(s) (IL) and Incurred ALAE (IALAE) times the Loss Conversion Factor (LCF), plus
Basic times
Tax Multiplier (TM), equals
Earned Retrospective Premium (ERP).

Z00033

**Minimum Retrospective Premium**

The Retrospective Premium calculated is subject to a Minimum Retrospective Premium equal to the Basic times the Tax Multiplier, subject to a minimum amount of $8,384. The Minimum Retrospective Premium will be adjusted at the first Retrospective Premium Adjustment using the audited subject premium.

**Maximum Retrospective Premium**

The maximum Retrospective Premium is unlimited; however, the Incurred Losses and ALAE used in the retrospective calculation shall be subject to a minimum Aggregate Retention of $4,000,000. based on a rate of 5.545174 per $100 of audited payroll.

The Maximum Retrospective Premium is not reduced by the payment of ALAE. The ALAE paid by You in accordance with the terms of this Agreement is in addition to the Maximum Retrospective Premium.

**Retrospective Premium Elements**

A. Basic is a minimum amount of $8,132. that is adjustable at a rate of $ 21.57% per $100 of audited subject premium.

B. Tax Multiplier

   The following are the average rates charged based on the state distribution of Your premium:

   | Line of Business | Tax Multiplier |
   | --- | --- |
   | WC/EL (WI only) | 1.031 |
   | GL | 1.031 |

**Combined Elements**

The Combined Elements will be adjusted at the first Retrospective Premium Adjustment using the audited payroll unless otherwise stated in this Agreement.

Z00034

Combined Elements (continued)

A.  Excess Premium is a minimum amount that is adjustable as follows:

| Line of Business | Exposure Base | Rate | Premium |
|---|---|---|---|
| WC/EL (WI only) | Payroll | Per $100. | Incl in Basic |
| GL ($74,850,000) | Revenue | .34532 per $1,000 | $25,847. |

B.  Premium Surcharges

The amount based on current rates is $7,571. and is subject to change at audit.  The Premium Surcharges are due in one installment at Program inception, except for the following states that require the Premium Surcharges to be paid in the same number of installments as the Deductible and retrospective Premium:

| | |
|---|---|
| Missouri | $    86. |
| New York | $7,192. |

C.  Loss Based Assessments

As of the effective date, there are no states included in the Program that require the payment of Loss Based Assessments.

D.  Unallocated Loss Adjustment Expense

The LCF is applied to Incurred Loss, plus Incurred ALAE, as follows:

| Line of Business | LCF |
|---|---|
| WC/EL | 1.08 |
| GL | 1.08 |

Audit

The processing of the audit for all of the adjustable elements of the Program will be deferred until the calculation of the first Retrospective Premium Adjustment.

You will pay the additional premium due Us or We will pay the return premium due You within twenty (20) days of the billing date.

Z00035

### Retrospective Premium Adjustments

The first Retrospective Premium Adjustment will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter by applying the Retrospective Rating Formula.

The amount due at the first Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium and the audited Standard Premium.  The amount due at each subsequent Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium less the Earned Retrospective Premium calculated at the prior adjustment.

At each adjustment, You will pay the additional premium due Us or we will pay the return premium due You within twenty (20) days of the billing date.

### Loss Reimbursement Fund - (Loss Fund)

Initial Loss Reimbursement Fund amount is $136,046. due in 12 installments as stated in this Agreement.

The amount paid by You includes expected Incurred Losses within the Deductible Amount(s), Incurred ALAE,  and LBA, as determined by Us.

The first adjustment of the Loss Reimbursement Fund will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter. Adjustments will be calculated by using the following formula in accordance with the Loss Limit(s) stated above:

(a)  Incurred Losses within the Loss Limit(s) and Incurred ALAE; times
(b)  the LCF; plus
(c)  WC Incurred Losses times applicable state LBA; equals
(d)  adjusted Loss Reimbursement Fund

The adjusted Loss Reimbursement Fund less the Loss Reimbursement Fund held equals the additional or return amount due.

At each adjustment, You will pay the additional amount due Us or We will pay the return amount due You within twenty (20) days of the billing date.

Z00036

## Collateral

As of the effective date, Collateral is not required under the Program.   Collateral require-
ments will be reviewed periodically and we reserve the right to require Collateral as We deem
necessary to secure Your obligations to Us under the Program.

Z00037

**Notices**

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

If to You:        Mr. John L. Rowley

Address:        Ablest Service Corp.
                45 Anderson Road
                Buffalo, N.Y.  14225


If to Us:         Zurich Insurance Company

Address:        Administrative Offices
                1400 American Lane
                Schaumburg, Illinois 60196-1056
                Attention:  Assistant General Counsel

Telephone:      (847) 605-6002

Telefax:        (847) 605-4356

Z00038

The parties have caused the Specifications, effective January 1, 1998 to be signed by their duly authorized representatives and witnessed.

| ABLEST SERVICE CORP. | ZURICH INSURANCE COMPANY, U.S. BRANCH |
|---|---|
| By _Michael K. Saline_ | By _RS_ |
| Title: _TREASURER, CFO_ | Title: _Vice President_ |
| Witness: _____ | Witness: _Carla Duran_ |
| Date: _7/16/98_ | Date: _4/15/98_ |

8

Z00039



## SPECIFICATIONS TO INCURRED DEDUCTIBLE AND
## INCURRED LOSS RETROSPECTIVE RATING AGREEMENT
## BETWEEN
## ABLEST SERVICE CORP, etal
## AND
## ZURICH AMERICAN INSURANCE COMPANY ("ZAIC")

**Program Effective Date: January 1, 1999**

LOSS SENSITIVE SERVICES
PRODUCT SERVICES

SEP 22 1999

**Applicable Policies**

| Line of Business | Program | Company | Policy Number | Expiration Date |
|---|---|---|---|---|
| WC & EL | ILD | ZAIC | WC8445472-02 | 1/1/2000 |
| WC & EL | ILR | ZAIC | WC8445534-02 | 1/1/2000 |
| GL | ILR | ZAIC | GLO8445473-02 | 1/1/2000 |

**Loss Limit(s)**

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to all coverages provided under the Policy(ies):

A. The first $ 250,000 under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

B. The first $ 250,000 under WC coverage arising out of occupational disease payable to each affected employee.

C. The first $ 250,000 under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

D. The first $ 250,000 under EL coverage arising out of occupational disease payable to each affected employee.

E. The first $ 500,000 for each occurrence for all of the coverages provided under the Commercial General Liability ("GL") Policy(ies).

Z00040

indedrsp 6/97

F.  With respect to A through E above, ALAE will be handled and paid as follows:

ALAE is included within the limits of liability and the Loss Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s).  We pay the indemnity and ALAE excess of the Loss Limit(s) up to the limits of liability under the Policy(ies).

G.  The limits of liability under the Policy(ies) shall be reduced by the application of the Loss Limits(s).

Aggregate Retention – Combined for C.H. Heist Corp. and Ablest Service Corp. and applies to the incurred WC Deductibles and the incurred WC (WI only), GL and AL Retros.

All Paid Losses [and Paid ALAE], as stated under the Loss Limit(s) above will be stopped at an Aggregate Retention amount of $4,000,000.  The Aggregate Retention shall be adjusted at a rate of 5.423287 per $100. of audited payroll.  In no event shall the Aggregate Retention be less than $4,000,000.

Deductible Premium

Deductible Premium is a minimum amount that is adjustable at audit as follows:

| Line of Business | Exposure Base | Exposure | Rate per [$100 | Premium |
|---|---|---|---|---|
| WC/.EL | Payroll | 59.030,000 | .310327 per $100. | $183,186. |

A.  Aggregate Deductible Charge is included.

B.  Excess Premium is included.

C.  Premium Taxes are included in the Deductible Premium.

Z00041

indedrsp 6/97

Retrospective Rating Formula

[Formula:  [((IL + IALAE) x  LCF + Basic] X TM = ERP]

Components:

Incurred Losses within the Loss Limit(s) (IL) and Incurred ALAE (IALAE) times
the Loss Conversion Factor (LCF) plus
Basic times
Tax Multiplier (TM), equals
Earned Retrospective Premium (ERP)

Minimum Retrospective Premium

The Retrospective Premium calculated is subject to a Minimum Retrospective Premium equal
to the Basic times the Tax Multiplier, subject to a minimum amount of $8,152.  The Minimum
Retrospective Premium will be adjusted at the first Retrospective Premium Adjustment using
the audited payroll.

Maximum Retrospective Premium

The maximum Retrospective Premium is unlimited; however, the Incurred Losses and ALAE
used in the retrospective calculation shall be subject to a minimum Aggregate Retention of
$4,000,000 based on a rate of 5.432387 per $100 of audited payroll.

Retrospective Premium Elements

A.  Basic is a minimum amount of $7.930 that is adjustable at a rate of 23.6% per $100 of
    audited standard premium.

B.  Tax Multiplier

Z00042

3                                                      Indedrsp 6/97

The Tax Multiplier is based on Our current rates and is not adjustable.

The  following are the average rates charged based on the state distribution of Your premium:

| Line of Business | Tax Multiplier |
|---|---|
| WC/EL | 1.028 |
| GL | 1.028 |

Combined Elements

The Combined Elements will be adjusted at the first Retrospective Premium Adjustment using the audited payroll/revenue unless otherwise stated in this Agreement.

A.  Excess Premium is a minimum amount that is adjustable as follows:

| Line of Business | Exposure Base | Exposure | Rate per [$100/$1000] | Premium |
|---|---|---|---|---|
| WC/EL | Payroll | If any | Per $100. | Incl. in Basic |
| GL | Revenue | 85,000,000 | .294553 per $1000. | 25,037. |

B.  Premium Surcharges

The amount based on current rates is $4,700. and is subject to change at audit. The Premium Surcharges are due in one installment at Program inception. except for the following states that require the Premium Surcharges to be paid in the same number of installments as the Deductible and Retrospective Premium:  MO & NY

C.  Loss Based Assessments - Incurred WC Deductible

As of the effective date, there are no states included in the Program that require the payment of Loss Based Assessments.

Z00043

indedrsp 6/97

D. Unallocated Loss Adjustment Expense

The LCF is applied to Incurred Loss, plus Incurred ALAE, as follows:

| Line of Business | LCF |
|---|---|
| WC/EL | 1.08 |
| GL | 1.08 |

## Audit

The processing of the audit for all of the adjustable elements of the Program will be deferred until the calculation of the first Retrospective Premium Adjustment[:.]

You will pay the additional premium due Us or We will pay the return premium due You within twenty (20) days of the billing date.

## Retrospective Premium Adjustments

The first Retrospective Premium Adjustment will be calculated based on a loss valuation date [eighteen (18)] months after the Program effective date and annually thereafter by applying the Retrospective Rating Formula.

The amount due at the first Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium and the audited Standard Premium.  The amount due at each subsequent Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium less the Earned Retrospective Premium calculated at the prior adjustment.

At each adjustment, You will pay the additional premium due Us or we will pay the return premium due You within twenty (20) days of the billing date.

## Loss Reimbursement Fund

Initial Loss Reimbursement Fund amount is $200,328. due in twelve installments as stated in this Agreement.

The amount paid by You includes expected Incurred Losses within the Deductible Limit(s), Incurred ALAE and LBA, as determined by Us.

Z00044

indedrsp 6/97

The first adjustment of the Loss Reimbursement Fund will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter. Adjustments will be calculated by using the following formula in accordance with the Loss Limit(s) stated above:

(a) Incurred Losses within the Loss Limit(s) and Incurred ALAE; [times
(b) the LCF; plus
(c) WC Incurred Losses within the Loss Limit(s) times applicable state LBA; equals
(d) adjusted Loss Reimbursement Fund

The adjusted Loss Reimbursement Fund less the Loss Reimbursement Fund held equals the additional or return amount due.

At each adjustment, You will pay the additional amount due Us or We will pay the return amount due You within twenty (20) days of the billing date.

Collateral

As of the effective date, Collateral is not required under the Program.   Collateral requirements will be reviewed periodically and we reserve the right to require Collateral as We deem necessary to secure Your obligations to Us under the Program.

Z00045

Indedrsp 6/97

**Notices**

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

If to You:     Mr. John L. Rowley
              c/o C.H. Heist Corp.
Address:      45 Anderson Rd.
              Buffalo, NY 14225


Telephone:    716-894-3035

Telefax:      716-897-2896

If to Us:     Zurich American Insurance Company

Address:      Administrative Offices
              1400 American Lane
              Schaumburg, Illinois 60196-1056
              Attention:  Assistant Legal Counsel


Telephone:    847-605-6002

Telefax:      847-605-4356

Z00046

7                                                    indedrsp 6/97

The parties have caused the Specifications, effective January 1, 1999 to be signed by their
duly authorized representatives and witnessed.

ABLEST SERVICE CORP. etal

By: _M au d ／. K.J.-8._____

Title: _Treasurer, CdO_____

Witness: _Kim (Ellen Wilezak_____

Date: _August 13, A99_____

ZURICH AMERICAN INSURANCE
COMPANY

By: _____

Title: Assistant Vice President

Witness: _Cathie Dueras_____

Date: ___4/26/99_____

Z00047

indedrsp 6/97



SPECIFICATIONS TO INCURRED DEDUCTIBLE AND
INCURRED LOSS RETROSPECTIVE RATING AGREEMENT
BETWEEN
ABLEST SERVICE CORP. etal
AND
ZURICH AMERICAN INSURANCE COMPANY ("ZAIC)

**Program Effective Date: January 1, 2000**

**Applicable Policies**

| Line of Business | Program | Company | Policy Number | Expiration Date |
|---|---|---|---|---|
| WC & EL | ILD | ZAIC | WC8445472-03 | 1/1/2001 |
| WC & EL | ILR | ZAIC | WC8445534-03 | 1/1/2001 |
| GL | ILR | ZAIC | GLO8445473-03 | 1/1/2001 |

**Loss Limit(s)**

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to all coverages provided under the Policy(ies):

A.  The first $ 250,000 under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

B.  The first $ 250,000 under WC coverage arising out of occupational disease payable to each affected employee.

C.  The first $ 250,000 under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

D.  The first $ 250,000 under  EL coverage arising out of occupational disease payable to each affected employee.

E.  The first $ 500,000 for each occurrence for all of the coverages provided under the Commercial General Liability ("GL") Policy(ies).

Z00048

F. With respect to A through E above, ALAE will be handled and paid as follows:

ALAE is included within the limits of liability and the Loss Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s). We pay the indemnity and ALAE excess of the Loss Limit(s) up to the limits of liability under the Policy(ies).

G. The limits of liability under the Policy(ies) shall be reduced by the application of the Loss Limits(s).

Aggregate Retention - Applies to the Incurred WC Deductible and the Incurred WC (WI only), GL and AL Retros.

All Paid Losses [and Paid ALAE], as stated under the Loss Limit(s) above will be stopped at an Aggregate Retention amount of $2,800,000. The Aggregate Retention shall be adjusted at a rate of 3.9587 per $100. of audited payroll. In no event shall the Aggregate Retention be less than $2,800,000.

Deductible Premium

Deductible Premium is a minimum amount that is adjustable at audit as follows:

| Line of Business | Exposure Base | Exposure | Rate per $100 | Premium |
|---|---|---|---|---|
| WC/EL | Payroll | 70,180,000 | .284325 per $100. | $199,539. |

A. Aggregate Deductible Charge is included.

B. Excess Premium is included.

C. Premium Taxes are included in the Deductible Premium.

Z00049

indedrsp 6/97

## Retrospective Rating Formula

[Formula:  [((IL + IALAE) x  LCF + Basic] X TM = ERP]

Components:

Incurred Losses within the Loss Limit(s) (IL) and Incurred ALAE (IALAE) times
the Loss Conversion Factor (LCF) plus
Basic times
Tax Multiplier (TM), equals
Earned Retrospective Premium (ERP)

### Minimum Retrospective Premium

The Retrospective Premium calculated is subject to a Minimum Retrospective Premium equal
to the Basic times the Tax Multiplier, subject to a minimum amount of $14,188.  The Minimum
Retrospective Premium will be adjusted at the first Retrospective Premium Adjustment using
the audited payroll.

### Maximum Retrospective Premium

The maximum Retrospective Premium is unlimited; however, the Incurred Losses and ALAE
used in the retrospective calculation shall be subject to a minimum Aggregate Retention of
$2,800,000 based on a rate of 3.9587 per $100 of audited payroll.


### Retrospective Premium Elements

A. Basic is a minimum amount of $13,815 that is adjustable at a rate of 44.04%  of audited
   standard premium.

B. Tax Multiplier

   The Tax Multiplier is based on Our current rates and is not adjustable.

   The  following are the average rates charged based on the state distribution of Your
   premium:

| Line of Business | Tax Multiplier |
|---|---|
| WC/EL | 1.027 |
| GL | 1.027 |

Z00050

3                                                    indedrsp 6/97

## Combined Elements

The Combined Elements will be adjusted at the first Retrospective Premium Adjustment using the audited payroll/revenue unless otherwise stated in this Agreement.

A. Excess Premium is a minimum amount that is adjustable as follows:

| Line of Business | Exposure Base | Exposure | Rate per [$100/$1000] | Premium |
|---|---|---|---|---|
| WC/EL | Payroll | 550,000 | Per $100. | Incl. in Basic |
| GL | Revenue | 100,350,000 | .559 per $1000. | 56,096. |

B. Premium Surcharges

The amount based on current rates is $8,498. and is subject to change at audit. The Premium Surcharges are due in one installment at Program inception, except for the following states that require the Premium Surcharges to be paid in the same number of installments as the Deductible and Retrospective Premium:  NY

C. Loss Based Assessments - Incurred WC Deductible

As of the effective date, there are no states included in the Program that require the payment of Loss Based Assessments.

D. Unallocated Loss Adjustment Expense

The LCF is applied to Incurred Loss, plus Incurred ALAE, as follows:

| Line of Business | LCF |
|---|---|
| WC/EL | 1.08 |
| GL | 1.08 |

## Audit

The processing of the audit for all of the adjustable elements of the Program will be deferred until the calculation of the first Retrospective Premium Adjustment.

You will pay the additional premium due Us or We will pay the return premium due You within twenty (20) days of the billing date.

Z00051

indedrsp 6/97

### Retrospective Premium Adjustments

The first Retrospective Premium Adjustment will be calculated based on a loss valuation date [eighteen (18)] months after the Program effective date and annually thereafter by applying the Retrospective Rating Formula.

The amount due at the first Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium and the audited Standard Premium. The amount due at each subsequent Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium less the Earned Retrospective Premium calculated at the prior adjustment.

At each adjustment, You will pay the additional premium due Us or we will pay the return premium due You within twenty (20) days of the billing date.

### Loss Reimbursement Fund

Initial Loss Reimbursement Fund amount is $234,028, due in twelve installments as stated in this Agreement.

The amount paid by You includes expected Incurred Losses within the Deductible Limit(s), Incurred ALAE and LBA, as determined by Us.

The first adjustment of the Loss Reimbursement Fund will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter. Adjustments will be calculated by using the following formula in accordance with the Loss Limit(s) stated above:

(a) Incurred Losses within the Loss Limit(s) and Incurred ALAE: [times
(b) the LCF; plus
(c) WC Incurred Losses within the Loss Limit(s) times applicable state LBA; equals
(d) adjusted Loss Reimbursement Fund

The adjusted Loss Reimbursement Fund less the Loss Reimbursement Fund held equals the additional or return amount due.

At each adjustment, You will pay the additional amount due Us or We will pay the return amount due You within twenty (20) days of the billing date.

Z00052

indedrsp 6/97

**Collateral**

As of the effective date, Collateral is <u>not required</u> under the Program.   Collateral requirements will be reviewed periodically and we reserve the right to require Collateral as We deem necessary to secure Your obligations to Us under the Program.

Z00053

## Notices

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

If to You:   Mr. Mark Kashmanian
             c/o Ablest Service Corp.
Address:     45 Anderson Rd.
             Buffalo, NY 14225


Telephone:   716-894-3035

Telefax:     716-897-2896

If to Us:    Zurich American Insurance Company

Address:     Administrative Offices
             1400 American Lane
             Schaumburg. Illinois 60196-1056
             Attention:  Assistant Legal Counsel


Telephone:   847-605-6002

Telefax:     847-605-4356


Z00054

7                                    indedrsp 6/97

The parties have caused the Specifications, effective January 1, 2000 to be signed by their duly authorized representatives and witnessed.

ABLEST SERVICE CORP. etal

By: _Marc J. Ksh_____

Title: _Treasurer, CAO_____

Witness: _Lisa M Mller Walczak_

Date: _1/10/00_____

ZURICH AMERICAN INSURANCE COMPANY

By: _Gary Egut_____

Title: Assistant Vice President

Witness: _Cathie Dec_____

Date: _1/26/2000_____

Z00055

8                                    indedrsp 6/97