Agreement No. 010101b

## SPECIFICATIONS TO INCURRED DEDUCTIBLE AND
## INCURRED LOSS RETROSPECTIVE RATING AGREEMENT
## BETWEEN
## ABLEST INC.
## AND
## ZURICH AMERICAN INSURANCE COMPANY("ZAIC")

**Program Effective Date: January 1, 2001**

**Applicable Policies**

| Line of Business | Program | Company | Policy Number | Expiration Date |
|---|---|---|---|---|
| WC & EL | ILD | ZAIC | WC8445472-04 | 1/1/2002 |
| WC & EL | ILR | ZAIC | WC8445534-04 | 1/1/2002 |
| GL | ILR | ZAIC | GLO8445473-03 | 1/1/2002 |

**Loss Limit(s)**

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to all coverages provided under the Policy(ies):

A. The first $250,000 under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

B. The first $250,000 under WC coverage arising out of occupational disease payable to each affected employee.

INDEDRSP 3/00

Z00056

C.  The first $250,000 under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

D.  The first $250,000 under EL coverage arising out of occupational disease payable to each affected employee.

E.  The first $500,000 for each occurrence all of the coverages provided under the Commercial General Liability ("GL") Policy(ies).

F.  With respect to A through E above. ALAE will be handled and paid as follows:

ALAE is included within the limits of liability and the Loss Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s).  We pay the indemnity and ALAE excess of the Loss Limit(s) up to the limits of liability under the Policy(ies).

G.  The limits of liability under the Policy(ies) shall be reduced by the application of the Loss Limit(s).

Aggregate Retention – Applies to the Incurred WC Deductible and the Incurred WC (WI only) and GL Retro.

All Paid Losses and Paid ALAE, as stated under the Loss Limit(s) above will be stopped at a Aggregate Retention amount of $2,800,000.  The Aggregate Retention shall be adjusted at a rate of 3.28107% of audited payroll.  In no event shall the Aggregate Retention be less than $2,800,000.

INDEDRSP 3/00

Z00057

Deductible Premium

Deductible Premium is a minimum amount that is adjustable at audit as follows:

| Line of Business | Exposure Base | Exposure | Rate % of Audited Payroll | Premium |
|---|---|---|---|---|
| WC/.EL | Payroll | 85,338,000 | .289901% | 247,396. |

A.  Aggregate Deductible Charge is included.

B.  Excess Premium is included.

C.  Premium Taxes are included in the Deductible Premium.

Retrospective Rating Formula

Formula:  [((IL + IALAE) x  LCF + Basic] X TM = ERP

Components:

Incurred Losses within the Loss Limit(s) (IL) and Incurred ALAE (IALAE) times
the Loss Conversion Factor (LCF), plus
Basic times
Tax Multiplier (TM), equals
Earned Retrospective Premium (ERP)

INDEDRSP 3/00

Z00058

## Minimum Retrospective Premium

The Retrospective Premium calculated is subject to a Minimum Retrospective Premium equal to the Basic times the Tax Multiplier, subject to a minimum amount of $14,583. The Minimum Retrospective Premium will be adjusted at the first Retrospective Premium Adjustment using the audited payroll.

## Maximum Retrospective Premium

The maximum Retrospective Premium is unlimited; however, the Incurred Losses and ALAE used in the retrospective calculation shall be subject to a minimum Aggregate Retention of $2,800,000 based on a rate of 3.28107% of audited payroll.

## Retrospective Premium Elements

A. Basic is a minimum amount of $14,200 that is adjustable at a rate of 29% of audited standard premium.

B. Tax Multiplier

The Tax Multiplier is based on Our current rates and is not adjustable.

The following are the average rates charged based on the state distribution of Your premium:

| Line of Business | Tax Multiplier |
| --- | --- |
| WC/EL | 1.027 |
| GL | 1.027 |

4

INDEDRSP 3:00

Z00059

## Combined Elements

The Combined Elements will be adjusted at the first Retrospective Premium Adjustment using the audited payroll and revenue unless otherwise stated in this Agreement.

Excess Premium is a minimum amount that is adjustable as follows:

| Line of Business | Exposure Base | Exposure | Rate | Premium |
|---|---|---|---|---|
| WC/EL | Payroll | 616,000 | .094156% of Payroll | 580. |
| GL | Revenue | 120,280,000 | 398387 per $1000 | 47,918. |

## Premium Surcharges

The amount based on current rates is $16,580 and is subject to change at audit. The Premium Surcharges are due in one installment at Program inception, except for the following states that require the Premium Surcharges to be paid in the same number of installments as the Deductible and Retrospective Premium:  NY

## Loss Based Assessments – Incurred WC Deductible

As of the effective date, there are no states included in the Program that require the payment of Loss Based Assessments.  If there are WC Incurred Losses in states for which Loss Based Assessments are payable, the amount(s) You are obligated to reimburse Us for will be included in the calculation of the Loss Reimbursement Fund and the Retrospective Premium Adjustments based on the effective state rates.

5

INDEDRSP 3/00

Z00060

New or Modified State Assessments

If any state should require a new assessment or surcharge, or change the basis upon which an assessment or surcharge is calculated after the program effective date, you will be billed for such an assessment or surcharge according to state regulations.

Unallocated Loss Adjustment Expense

The LCF is applied to Incurred Loss, plus Incurred ALAE, as follows:

| Line of Business | LCF |
| --- | --- |
| WC/EL | 1.09 |
| GL | 1.09 |

Premium and Loss Reimbursement Fund Payment

The Deductible Premium and the Loss Reimbursement Fund for the states under the IDP and the Standard Premium for the states under the ILR and Combined Elements are payable in twelve installments due on the following dates:
1/10/2001, 2/10/2001, 3/10/2001, 4/10/2001, 5/10/2001, 6/10/2001, 7/10/2001, 8/10/2001, 9/10/2001, 10/1/2001, 11/10/2001 and 12/1/2001

Audit

The processing of the audit for all of the adjustable elements of the Program will be deferred until the calculation of the first Retrospective Premium Adjustment.

You will pay the additional premium due Us or We will pay the return premium due You within twenty (20) days of the billing date.

6

## Retrospective Premium Adjustments

The first Retrospective Premium Adjustment will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter by applying the Retrospective Rating Formula.

The amount due at the first Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium and the audited Standard Premium. The amount due at each subsequent Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium less the Earned Retrospective Premium calculated at the prior adjustment.

At each adjustment, You will pay the additional premium due Us or we will pay the return premium due You within twenty (20) days of the billing date.

## Loss Reimbursement Fund

Initial Loss Reimbursement Fund amount is $490,952 due in twelve installments as stated in this Agreement.

The amount paid by You includes expected Incurred Losses within the Loss Limit(s), Incurred ALAE and LBA, as determined by Us.

The first adjustment of the Loss Reimbursement Fund will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter. Adjustments will be calculated by using the following formula in accordance with the Loss Limit(s) stated above:

(a)  Incurred Losses within the Loss Limit(s) and Incurred ALAE; times
(b)  the LCF; plus
(c)  WC Incurred Losses within the Loss Limit(s) times applicable state LBA; equals

7

Z00062

(d)  adjusted Loss Reimbursement Fund

The adjusted Loss Reimbursement Fund less the Loss Reimbursement Fund held equals the additional or return amount due.  However, in no event will the amount of the Loss Reimbursement Fund be in excess of the Aggregate Deductible.

At each adjustment, You will pay the additional amount due Us or We will pay the return amount due You within twenty (20) days of the billing date.

Collateral

As of the effective date, Collateral is not required under the Program.   Collateral requirements will be reviewed periodically and we reserve the right to require Collateral as We deem necessary to secure Your obligations to Us under the Program.

8

INDEDRSP.DOC

Z00063

**Notices**

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

| | |
|---|---|
| If to You: | Mr. Mark Kashmanian |
| | C/o Ablest Inc. |
| Address: | 1901 Ulmerton Road |
| | Suite 300 |
| | Clearwater, FL 33762 |
| | |
| Telephone: | 727-299-1200 |
| | |
| Telefax: | 727-299-1297 |
| | |
| If to Us: | Zurich American Insurance Company |
| | |
| Address: | Administrative Offices |
| | 1400 American Lane |
| | Schaumburg, Illinois 60196-1056 |
| | Attention:  Assistant General Counsel |
| | |
| Telephone: | 847-605-6002 |
| | |
| Telefax: | 847-605-4356 |

9

INDEDRSP 3/00

Z00064

The parties have caused the Specifications, effective January 1, 2001 to be signed by their duly authorized representatives and witnessed.


ABLEST INC.

By: _____

Title: TREASURER   CAO

Witness: _____

Date: _____3 / 8 / 01_____


ZURICH AMERICAN INSURANCE COMPANY

By: _____

Title:  Assistant Vice President

Witness: _____

Date: ____3/6/2001_____

10

Agreement No. 010102b

## SPECIFICATIONS TO INCURRED DEDUCTIBLE AND
## INCURRED LOSS RETROSPECTIVE RATING AGREEMENT
## BETWEEN
## ABLEST INC.
## AND
## ZURICH AMERICAN INSURANCE COMPANY("ZAIC")

Program Effective Date   January 1, 2002

**Applicable Policies**

| Line of Business | Program | Company | Policy Number | Expiration Date |
|---|---|---|---|---|
| WC & EL | ILD | ZAIC | WC 8445472-05 | 1/1/2003 |
| WC & EL | ILR | ZAIC | WC 8445534-06 | 1/1/2003 |
| GL | ILR | ZAIC | GLO 8445473-05 | 1/1/2003 |

Loss Limit(s) and/or Deductible Limit(s)

The following are the Loss Limit(s) and/or Deductible Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to all coverages provided under the Policy(ies):

A.  The first $250,000 under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

B.  The first $250,000 under WC coverage arising out of occupational disease payable to each affected employee.

1

INCEDRSP 3/00

Z00066

C. The first $250,000 under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

D. The first $250,000 under EL coverage arising out of occupational disease payable to each affected employee.

E. The first $500,000 for all of the coverages provided under the Commercial General Liability ("GL") Policy(ies).

F. With respect to A through E above, ALAE will be handled and paid as follows:

ALAE is included within the limits of liability and the Loss Limit(s) and/or Deductible Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s) and/or Deductible Limit(s). We pay the indemnity and ALAE excess of the Loss Limit(s) and/or Deductible Limit(s) up to the limits of liability under the Policy(ies). *or*

G. The limits of liability under the Policy(ies) shall be reduced by the application of the Loss Limit(s) and/or Deductible Limit(s)


**Combined Minimum Loss Amount -- Combined for WC ILD, WC ILR and GL ILR**

At eighteen (18) months after the program effective date, all incurred losses and incurred ALAE as stated under the Loss Limit(s) and/or Deductible Limit(s) above will be subject to a minimum amount of $750,000. The combined minimum loss amount will be adjusted at a rate of 1.147315% of audited WC payroll. In no event shall the combined minimum loss amount be less than $750,000.

    Gard Payroll = 29,399         $ 78,832,027 · 1.147315% = $904,452.

    Deductible Payroll = 78,800,628       *Incurred Amount @ cut/else is over MINIMUM.*

**Aggregate Retention --** Applies to the Incurred WC Deductible and the Incurred WC (WI only) and GL Retro.

2

All Paid Losses and Paid ALAE, as stated under the Loss Limit(s) and/or Deductible Limit(s) above will be stopped at an Aggregate Retention amount of $2,800,000.  The Aggregate Retention shall be adjusted at a rate of 4.235557% of audited payroll.  In no event shall the Aggregate Retention be less than $2,800,000.

$78,652.02 × 4.235557% = $3,338,975

**Deductible Premium**

Deductible Premium is a minimum amount that is adjustable at audit as follows:

| Line of Business | Exposure Base | Exposure | Rate | Minimum Premium |
|---|---|---|---|---|
| WC/EL | Payroll | 65,370,000 | .5350787% | $349,781. |

A.  Aggregate Deductible Charge – is included.

B.  Excess Premium – is included.

C   Premium Taxes are included in the Deductible Premium.

**Retrospective Rating Formula**

Formula: IL + IALAE x  LCF + Basic X TM = ERP

Components:
Incurred Losses within the Loss Limit(s) (IL) and Incurred ALAE (IALAE) times
the Loss Conversion Factor (LCF), plus
Basic times
Tax Multiplier (TM), equals
Earned Retrospective Premium (ERP), plus
Excess Premium

3

INDEDRSP 3/00

Z00068

**Minimum Retrospective Premium**

The Retrospective Premium calculated is subject to a Minimum Retrospective Premium equal to the Basic times the Tax Multiplier, subject to a minimum amount of $15,450. The Minimum Retrospective Premium will be adjusted at the first Retrospective Premium Adjustment using the audited subject premium.

*Basic = $15,000*
*x 1.03*
*$15,450*

**Maximum Retrospective Premium**

The Maximum Retrospective Premium is unlimited; however, the Incurred Losses and ALAE used in the retrospective calculation shall be subject to a minimum Aggregate Retention of $2,800,000 based on a rate of 4.235557% of audited payroll.

**Retrospective Premium Elements**

A. Basic is a minimum amount of $15,000 that is adjustable at a rate of 29% of subject premium.

*Subject Premium = $773*
*x 29%*
*$224 > Bsc Min*

B. Tax Multiplier

The Tax Multiplier is based on Our current rates and is not adjustable

The following are the average rates charged based on the state distribution of Your premium:

| Line of Business | Tax Multiplier |
|---|---|
| WC/EL | 1.03 |
| GL | 1.03 |

4

Z00069

## Combined Elements

The Combined Elements will be adjusted at the first Retrospective Premium Adjustment using the audited payroll unless otherwise stated in this Agreement.

Excess Premium is a minimum amount that is adjustable as follows:

| Line of Business | Exposure Base | Exposure | Rate | Minimum Premium |
|---|---|---|---|---|
| WC/EL | Payroll | 373,000 | .2823056% | $ 1,053. |
| GL | Revenue | 93,034,400 | .519098 per $1,000 | $48,294. |

## Premium Surcharges

The amount based on current rates is $12,798. and is subject to change at audit. The Premium Surcharges are due in one installment at Program inception, except for the following states that require the Premium Surcharges to be paid in the same number of installments as the Deductible and Retrospective Premium: NY

## Loss Based Assessments

As of the effective date, there are no states included in the Program that require the payment of Loss Based Assessments. If there are WC Incurred Losses in states for which Loss Based Assessments are payable, the amount(s) You are obligated to reimburse Us for will be included in the calculation of the Loss Reimbursement Fund and the Retrospective Premium Adjustments based on the effective state rates.

## New or Modified State Assessments

If any state should require a new assessment or surcharge, or change the basis upon which an assessment or surcharge is calculated after the program effective date, you will be billed for such an assessment or surcharge according to state regulations.

5

Z00070

Unallocated Loss Adjustment Expense

The LCF is applied to Incurred Loss, plus Incurred ALAE, as follows:

| Line of Business | LCF |
|---|---|
| WC/EL | 1.10 |
| GL | 1.10 |

Premium and Loss Reimbursement Fund Payment

The Deductible Premium and the Loss Reimbursement Fund for the states under the IDP and the Standard Premium for the states under the ILR and Combined Elements are payable in twelve installments due on the following dates:

| | |
|---|---|
| 1/10/2002 | 7/10/2002 |
| 2/10/2002 | 8/10/2002 |
| 3/10/2002 | 9/10/2002 |
| 4/10/2002 | 10/10/2002 |
| 5/10/2002 | 11/10/2002 |
| 6/10/2002 | 12/20/2002 |

Audit

The processing of the audit for all of the adjustable elements of the Program will be deferred until the calculation of the first Retrospective Premium Adjustment.

You will pay the additional premium due Us or We will pay the return premium due You within twenty (20) days of the billing date.

6

INDEDRSP 3:00

Z00071

## Retrospective Premium Adjustments

The first Retrospective Premium Adjustment will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter by applying the Retrospective Rating Formula.

The amount due at the first Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium and the audited Standard Premium. The amount due at each subsequent Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium less the Earned Retrospective Premium calculated at the prior adjustment.

At each adjustment, You will pay the additional premium due Us or we will pay the return premium due You within twenty (20) days of the billing date.

## Loss Reimbursement Fund

Initial Loss Reimbursement Fund amount is $750,000 due in twelve (12) installments as stated in this Agreement.

The amount paid by You includes expected Incurred Losses within the Loss Limit(s), Incurred ALAE, as determined by Us.

The first adjustment of the Loss Reimbursement Fund will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter. Adjustments will be calculated by using the following formula in accordance with the Loss Limit(s) stated above:

(a) Incurred Losses within the Loss Limit(s) and Incurred ALAE; times
(b) the LCF; plus

7

INOEDRSP 3:03

Z00072

(c)  WC Incurred Losses within the Loss Limit(s) times applicable state LBA; equals

(d)  adjusted Loss Reimbursement Fund

The adjusted Loss Reimbursement Fund less the Loss Reimbursement Fund held equals the additional or return amount due.  However, in no event will the amount of the Loss Reimbursement Fund be in excess of the Aggregate Retention.

At each adjustment, You will pay the additional amount due Us or We will pay the return amount due You within twenty (20) days of the billing date.

## Collateral

As of the effective date, Collateral is not required under the Program.   Collateral requirements will be reviewed periodically and we reserve the right to require Collateral as We deem necessary to secure Your obligations to Us under the Program.

8

INOEORSP 3/00

Z00073

**Notices**

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

If to You:      Mr. Mark Kashmanian
                c/o Ablest Inc.

Address:        1901 Ulmerton Road
                Suite 300
                Clearwater, Florida  33762

Telephone:      (727) 299-1200

Telefax:        (727) 299-1297


If to Us:       Zurich American Insurance Company

Address:        Administrative Offices
                1400 American Lane
                Schaumburg, Illinois 60196-1056
                Attention: Assistant General Counsel

Telephone:      (847) 605-6002

Telefax:        (847) 605-4356

9

INDEDRSP 3/00

Z00074

The parties have caused the Specifications, effective <u>January 1, 2002</u> to be signed by their duly authorized representatives and witnessed.


<u>ABLEST INC.</u>

By: _Mara N. Kishner_

Title: _Treasurer_

Witness: _Aurie Booth_

Date: _4/30/02_


<u>ZURICH AMERICAN INSURANCE COMPANY</u>

By: _Gary Egut_

Title: _Assistant Vice President_

Witness: _Denise Newton_

Date: _6/28/02_


10

INCEDRSP 3/00

Z00075

Agreement No. 010103b

SPECIFICATIONS TO INCURRED DEDUCTIBLE AND
INCURRED LOSS RETROSPECTIVE RATING AGREEMENT
BETWEEN
ABLEST INC.
AND
ZURICH AMERICAN INSURANCE COMPANY("ZAIC")

Program Effective Date   January 1, 2003

Applicable Policies

| Line of Business | Program | Company | Policy Number | Expiration Date |
|---|---|---|---|---|
| WC & EL | ILD | ZAIC | WC 8445472-06 | 1/1/2004 |
| WC & EL | ILR | ZAIC | WC 8445534-07 | 1/1/2004 |
| GL | ILR | ZAIC | GLO 8445473-06 | 1/1/2004 |

Loss Limit(s) and/or Deductible Limit(s)

The following are the Loss Limit(s) and/or Deductible Limit(s) applying to all losses, claims suits, actions or other proceedings with respect to all coverages provided under the Policy(ies):

A   The first $250,000 under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

B.   The first $250,000 under WC coverage arising out of occupational disease payable to each affected employee.

1

INDEDRSP 3/00

Z00076

C.  The first $250,000 under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

D.  The first $250,000 under EL coverage arising out of occupational disease payable to each affected employee.

E.  The first $500,000 for all of the coverages provided under the Commercial General Liability ("GL") Policy(ies).

F.  With respect to A through E above, ALAE will be handled and paid as follows:

ALAE is included within the limits of liability and the Loss Limit(s) and/or Deductible Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s) and/or Deductible Limit(s).  We pay the indemnity and ALAE excess of the Loss Limit(s) and/or Deductible Limit(s) up to the limits of liability under the Policy(ies).

G.  The limits of liability under the Policy(ies) shall be reduced by the application of the Loss Limit(s) and/or Deductible Limit(s)

Combined Minimum Loss Amount -- Combined for WC ILD, WC ILR and GL ILR

At eighteen (18) months after the program effective date, all incurred losses and incurred ALAE as stated under the Loss Limit(s) and/or Deductible Limit(s) above will be subject to a minimum amount of $750,000  The combined minimum loss amount will be adjusted at a rate of .979751 per $100 of audited WC payroll.  In no event shall the combined minimum loss amount be less than $750,000.

Aggregate Retention -- Applies to the Incurred WC Deductible and the Incurred WC (WI only) and GL Retro.

INDEDRSP 3/00

## Minimum Retrospective Premium

The Retrospective Premium calculated is subject to a Minimum Retrospective Premium equal to the Basic times the Tax Multiplier, subject to a minimum amount of $12,196. The Minimum Retrospective Premium will be adjusted at the first Retrospective Premium Adjustment using the audited subject premium.

## Maximum Retrospective Premium

The Maximum Retrospective Premium is unlimited; however, the Incurred Losses and ALAE used in the retrospective calculation shall be subject to a minimum Aggregate Retention of $3,125,000 based on a rate of 4.0822991 per $100 of audited WC payroll.

## Retrospective Premium Elements

A   Basic is a minimum amount of $11,864 that is adjustable at a rate of 29% of subject GL premium.

B.   Tax Multiplier

The Tax Multiplier is based on Our current rates and is not adjustable.

The following are the average rates charged based on the state distribution of Your premium:

| Line of Business | Tax Multiplier |
|---|---|
| WC/EL – WI Policy | 1.028 |
| GL | 1.028 |

4

Z00078

## Combined Elements

The Combined Elements will be adjusted at the first Retrospective Premium Adjustment using the audited payroll unless otherwise stated in this Agreement.

Excess Premium is a minimum amount that is adjustable as follows:

| Line of Business | Exposure Base | Exposure | Rate | Minimum Premium |
|---|---|---|---|---|
| WC/EL – WI Policy | Payroll | IfAny | .2823056 per $100 | Rate X Payroll |
| GL | Revenue | 110,620,000 | 5632254 per $1,000 | $62,304 |

## Premium Surcharges

The amount based on current rates is $11,317. and is subject to change at audit. The Premium Surcharges are due in one installment at Program inception, except for the following states that require the Premium Surcharges to be paid in the same number of installments as the Deductible and Retrospective Premium: NY

## Loss Based Assessments

As of the effective date, there are no states included in the Program that require the payment of Loss Based Assessments. If there are WC Incurred Losses in states for which Loss Based Assessments are payable, the amount(s) You are obligated to reimburse Us for will be included in the calculation of the Loss Reimbursement Fund and the Retrospective Premium Adjustments based on the effective state rates.

## New or Modified State Assessments

If any state should require a new assessment or surcharge, or change the basis upon which an assessment or surcharge is calculated after the program effective date, you will be billed for such an assessment or surcharge according to state regulations.

5

'NDEDRSP 3/00

Z00079

Unallocated Loss Adjustment Expense

The LCF is applied to Incurred Loss, plus Incurred ALAE, as follows:

| Line of Business | LCF |
|---|---|
| WC/EL | 1.10 |
| GL | 1.10 |

Premium and Loss Reimbursement Fund Payment

The Deductible Premium and the Loss Reimbursement Fund for the states under the IDP and the Standard Premium for the states under the ILR and Combined Elements are payable in twelve installments due on the following dates:

| | |
|---|---|
| 1/10/2003 | 7/10/2003 |
| 2/10/2003 | 8/10/2003 |
| 3/10/2003 | 9/10/2003 |
| 4/10/2003 | 10/10/2003 |
| 5/10/2003 | 11/10/2003 |
| 6/10/2003 | 12/10/2003 |

Audit

The processing of the audit for all of the adjustable elements of the Program will be deferred until the calculation of the first Retrospective Premium Adjustment.

You will pay the additional premium due Us or We will pay the return premium due You within twenty (20) days of the billing date.

6

INDEORSP 3/00

Z00080

## Retrospective Premium Adjustments

The first Retrospective Premium Adjustment will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter by applying the Retrospective Rating Formula.

The amount due at the first Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium and the audited Standard Premium.  The amount due at each subsequent Retrospective Premium Adjustment will represent the difference between the Earned Retrospective Premium less the Earned Retrospective Premium calculated at the prior adjustment.

At each adjustment, You will pay the additional premium due Us or we will pay the return premium due You within twenty (20) days of the billing date.

## Loss Reimbursement Fund

Initial Loss Reimbursement Fund amount is $885,000 due in twelve (12) installments as stated in this Agreement.

The amount paid by You includes expected Incurred Losses within the Loss Limit(s). Incurred ALAE as determined by Us.

The first adjustment of the Loss Reimbursement Fund will be calculated based on a loss valuation date eighteen (18) months after the Program effective date and annually thereafter. Adjustments will be calculated by using the following formula in accordance with the Loss Limit(s) stated above:

(a)  Incurred Losses within the Loss Limit(s) and Incurred ALAE; times
(b)  the LCF; plus
(c)  WC Incurred Losses within the Loss Limit(s) times applicable state LBA; equals
(d)  adjusted Loss Reimbursement Fund

7

Z00081

The adjusted Loss Reimbursement Fund less the Loss Reimbursement Fund held equals the additional or return amount due.  However, in no event will the amount of the Loss Reimbursement Fund be in excess of the Aggregate Retention.

At each adjustment, You will pay the additional amount due Us or We will pay the return amount due You within twenty (20) days of the billing date

## Collateral

As of the effective date, Collateral is not required under the Program.  Collateral requirements will be reviewed periodically and we reserve the right to require Collateral as We deem necessary to secure Your obligations to Us under the Program

8

INDEORSP 3:00

Z00082

Notices

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

| | |
|---|---|
| If to You: | Vincent J. Lombardo |
| | V.P./Chief Financial Officer |
| | c/o Ablest Inc. |
| | |
| Address: | 1901 Ulmerton Road |
| | Suite 300 |
| | Clearwater, Florida 33762 |
| | |
| Telephone: | (727) 299-1200 |
| | |
| Telefax: | (727) 299-1297 |
| | |
| | |
| If to Us: | Zurich American Insurance Company |
| | |
| Address: | Administrative Offices |
| | 1400 American Lane |
| | Schaumburg, Illinois 60196-1056 |
| | Attention:  Assistant General Counsel |
| | |
| Telephone: | (847) 605-6002 |
| | |
| Telefax: | (847) 605-4356 |

9

INDEORSP 3/00

Z00083

The parties have caused the Specifications, effective <u>January 1, 2003</u> to be signed by their duly authorized representatives and witnessed.

<u>ABLEST INC.</u>

By: _Kat J. Ill_____

Title: _VP & CFO_____

Witness: _____

Date: _2/3/03_____


ZURICH AMERICAN INSURANCE COMPANY

By: _____

Title: _Assistant Vice President_____

Witness: _____

Date: _____

10

INDEDRSP 3.00

Agreement No. 010104b



## SPECIFICATIONS TO INCURRED DEDUCTIBLE AND
## INCURRED LOSS RETROSPECTIVE RATING AGREEMENT
## BETWEEN
## ABLEST INC.
## AND
## ZURICH AMERICAN INSURANCE COMPANY("ZAIC")

Program Effective Date   January 1, 2004

Applicable Policies

| Line of Business | Program | Company | Policy Number | Expiration Date |
|---|---|---|---|---|
| WC & EL | ILD | ZAIC | WC 8445472-07 | 1/1/2005 |
| WC & EL | ILR | ZAIC | WC 8445534-08 | 1/1/2005 |
| GL | ILR | ZAIC | GLO 8445473-07 | 1/1/2005 |
| AL | ILD | ZAIC | BAP 8445812-00 | 1/1/2005 |

Loss Limit(s) and/or Deductible Limit(s)

The following are the Loss Limit(s) and/or Deductible Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to all coverages provided under the Policies:

A. The first $250,000 under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

B. The first $250,000 under WC coverage arising out of occupational disease payable to each affected employee.

INDEDRSP 3/03

Z00085

C.  The first $250,000 under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

D.  The first $250,000 under EL coverage arising out of occupational disease payable to each affected employee.

E.  The first $150,000 for all of the coverages provided under the Commercial General Liability ("GL") Policies.

F.  The first $100,000 for each accident for all of the coverages provided under the Automobile Liability ("AL") Policy.

G.  With respect to A through F above, ALAE will be handled and paid as follows:

ALAE is in addition to the limits of liability and included within the Loss Limit(s) and/or Deductible Limit(s) under the Policies and is reimbursed to Us by You up to the Loss Limit(s) and/or Deductible Limit(s).  We pay the indemnity and ALAE excess of the Loss Limit(s) and/or Deductible Limit(s).

H.  The limits of liability under the Policies shall be reduced by the application of the Loss Limit(s) and/or Deductible Limit(s)

**Combined Minimum Loss Amount** – Combined for WC ILD, WC ILR, GL ILR, and AL ILD

At eighteen (18) months after the program effective date, all incurred losses and incurred ALAE as stated under the Loss Limit(s) and/or Deductible Limit(s) above will be subject to a minimum amount of $850,000.  The combined minimum loss amount will be adjusted at a rate of 1.0625 per $100 of audited WC payroll.  In no event shall the combined minimum loss amount be less than $850,000.

2

Aggregate Retention – Applies to the Incurred WC Deductible, the Incurred WC (WI only), the Incurred GL Retro and the Incurred AL Deductible.

All Paid Losses and Paid ALAE, as stated under the Loss Limit(s) and/or Deductible Limit(s) above will be stopped at an Aggregate Retention amount of $4,900,000.  The Aggregate Retention shall be adjusted at a rate of 6.125 per $100 of audited WC payroll.  In no event shall the Aggregate Retention be less than $4,900,000.

Deductible Premium

Deductible Premium is a minimum amount that is adjustable at audit as follows:

| Line of Business | Exposure Base | Exposure | Rate per $100 | Minimum Premium |
|---|---|---|---|---|
| WC/EL | Payroll | 80,000,000 | .616725 | $493,380 |

A.  Aggregate Deductible Charge – is included.
B.  Excess Premium – is included.
C.  Premium Taxes are included in the Deductible Premium.

Retrospective Rating Formula

Formula: [(IL + IALAE) x  LCF] ÷ Basic X TM = ERP

Components:
Incurred Losses within the Loss Limit(s) (IL) and Incurred ALAE (IALAE) times
the Loss Conversion Factor (LCF) plus
Basic times
. Tax Multiplier (TM), equals
Earned Retrospective Premium (ERP), plus
Excess Premium equals
Policy premium

3

INDEORSP 3X0

**Minimum Retrospective Premium**

The Retrospective Premium calculated is subject to a Minimum Retrospective Premium equal to the Basic times the Tax Multiplier, subject to a minimum amount of $13,901. The Minimum Retrospective Premium will be adjusted at the first Retrospective Premium Adjustment using the audited Retrospective Subject Premium.

**Maximum Retrospective Premium**

The Maximum Retrospective Premium is unlimited; however, the Incurred Losses and ALAE used in the retrospective calculation shall be subject to a minimum Aggregate Retention of $4,900,000 based on a rate of 6.125 per $100 of audited WC payroll.

**Retrospective Premium Elements**

A. Basic is a minimum amount of $13,522 that is adjustable at a rate of 29% of audited Subject GL Premium.

B. Tax Multiplier

The Tax Multiplier is based on Our current rates and is not adjustable.

The following are the average rates charged based on the state distribution of Your premium:

| Line of Business | Tax Multiplier |
|---|---|
| WC/EL – WI Policy | 1.028 |
| GL | 1.028 |

C. The Combined Elements will be adjusted at the first Retrospective Premium Adjustment using the audited payroll unless otherwise stated in this Agreement.

4

INDEDRSP 3/99

Z00087

D.       Excess Premium is a minimum amount that is adjustable as follows:

| Line of Business | Exposure Base | Exposure | Rate | Minimum Premium |
|---|---|---|---|---|
| WC/EL – WI Policy | Payroll | If Any | .2823056 per $100 | Rate X Payroll |
| GL | Revenue | 106,000,000 | .656849 per $1,000 | $69,626 |

## Premium Surcharges

The amount based on current rates is $48,811, and is subject to change at audit. The Premium Surcharges are due in one installment at Program inception, except for the following states that require the Premium Surcharges to be paid in the same number of installments as the Deductible and Retrospective Premium:  NY

## Loss Based Assessments

As of the effective date, there are no states included in the Program that require the payment of Loss Based Assessments. If there are WC incurred Losses in states for which Loss Based Assessments are payable, the amount(s) You are obligated to reimburse Us for will be included in the calculation of the Loss Reimbursement Fund and the Retrospective Premium Adjustments based on the effective state rates.

## Other Special Charges

You will be billed for actual Other Special Charges at any time.  We will endeavor to bill them to you at the time they are incurred by us.  We will provide you with information about the rate, application and purpose of all Other Special Charges.  You will remit payment to us within twenty (20) days of the billing date for Other Special Charges.

5

INDEDRSP 3/09

Z00088

# Adjustment Invoice



**ZURICH**

*Global Corporate  Syracuse*

| **Customer** | **Agent** |
|---|---|
| Ablest, Inc. & C.H. Heist Corp.<br>1511 North Westshore Blvd., Suite 900<br>Tampa, FL 33607<br><br>Mr. John Horan, CFO | 24-132-813          DMS Numbers:<br>Assurance Agency, Ltd.    61843926 & 60124483<br>One Century Centre · 1750 E. Golf Road<br>Schaumburg, IL 60173<br>Ms. Diane Dozie |

| Invoice Date | Valuation Date | Due Date | Amount Due |
|---|---|---|---|
| 12/20/06 | 06/30/06 | 01/09/07 | $2,183,315 |

| Adjustment Type | Program Year | Adjustment | Amount Billed |
|---|---|---|---|
| Ablest Inc. Retro | 01/01/2005 - 01/01/2006 | 1st Adjustment | 413 |
| Ablest Inc. LRF | 01/01/2005 - 01/01/2006 | REVISED 1st Adjustment | 1,094,095 |
| | | | |
| Ablest Inc. Retro | 01/01/2004 - 01/01/2005 | 2nd Adjustment | 0 |
| Ablest Inc. LRF | 01/01/2004 - 01/01/2005 | 2nd Adjustment | 805,344 |
| | | | |
| Ablest Inc. Retro | 01/01/2003 - 01/01/2004 | 3rd Adjustment | 0 |
| Ablest Inc. LRF | 01/01/2003 - 01/01/2004 | 3rd Adjustment | 173,463 |
| Ablest Inc. | 01/01/2003 - 01/01/2004 | Revised GL Audit | 9,400 |
| | | | |
| Ablest Inc. Retro | 01/01/2002 - 01/01/2003 | 4th Adjustment | 0 |
| Ablest Inc. LRF | 01/01/2002 - 01/01/2003 | 4th Adjustment | 35,536 |
| | | | |
| Ablest Inc. Retro | 01/01/2001 - 01/01/2002 | 5th Adjustment | 0 |
| Ablest Inc. LRF | 01/01/2001 - 01/01/2002 | 5th Adjustment | 54,314 |
| | | | |
| Ablest Inc. Retro | 01/01/2000 - 01/01/2001 | 6th Adjustment | 0 |
| Ablest Inc. LRF | 01/01/2000 - 01/01/2001 | 6th Adjustment | (17,619) |
| | | | |
| Ablest Inc. Retro | 01/01/1999 - 01/01/2000 | 7th Adjustment | 0 |
| Ablest Inc. LRF | 01/01/1999 - 01/01/2000 | 7th Adjustment | 2,643 |
| | | | |
| Ablest Inc. Retro | 01/01/1998 - 01/01/1999 | 8th Adjustment | 0 |
| Ablest Inc. LRF | 01/01/1998 - 01/01/1999 | 8th Adjustment | (45) |
| | | | |
| Ablest Inc. Retro | 01/01/1997 - 01/01/1998 | 9th Adjustment | 0 |
| Ablest Inc. LRF | 01/01/1997 - 01/01/1998 | 9th Adjustment | 4 |
| | | | |
| C.H. Heist Corp. Retro | 01/01/2000 - 01/01/2001 | 6th Adjustment | 0 |
| C.H. Heist Corp. LRF | 01/01/2000 - 01/01/2001 | 6th Adjustment | 0 |
| C.H. Heist Corp. | 01/01/2000 - 01/01/2001 | N$ Premium per Audit | 68,256 |

| **Remit Payment To:** | **Refer Questions To:** |
|---|---|
| ZURICH NORTH AMERICA<br>8745 PAYSPHERE CIRCLE<br>CHICAGO, IL 60674 | For Questions Regarding the Adjustment Calculation:<br>*Shannon Price*          (847) 605-4252<br>E-mail: shannon.price@zurichna.com<br><br>For Questions Regarding Collections Issues:<br>*Mike Weinberg*          (847)413-5599<br>E-mail: mike.weinberg@zurichna.com |

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 60196-1056
(847) 605-6000, FAX: (847) 605-6767
A MEMBER OF THE ZURICH-AMERICAN INSURANCE GROUP
INVOICE    Page 1 of 2



## Adjustment Invoice


ZURICH

*Global Corporate  Syracuse*

| Customer | | Agent | |
|---|---|---|---|
| Ablest, Inc. & C.H. Heist Corp. | | 24-132-813 | |
| 1511 North Westshore Blvd., Suite 900 | | Assurance Agency, Ltd. | |
| Tampa, FL 33607 | | One Century Centre - 1750 E. Golf Road | |
| | | Schaumburg, IL  60173 | |
| Mr. John Horan, CFO | | Ms. Diane Boyle | |

| Invoice Date | Valuation Date | Due Date | Amount Due |
|---|---|---|---|
| 12/20/06 | 06/30/06 | 01/09/07 | See Page 1 |
| **Adjustment Type** | **Program Year** | **Adjustment** | **Amount Billed** |
| C.H. Heist Corp. Retro | 01/01/1999 - 01/01/2000 | 7th Adjustment | (5,932) |
| C.H. Heist Corp. LRF | 01/01/1999 - 01/01/2000 | 7th Adjustment | (102,820) |
| | | | |
| C.H. Heist Corp. Retro | 01/01/1998 - 01/01/1999 | 8th Adjustment | 0 |
| C.H. Heist Corp. LRF | 01/01/1998 - 01/01/1999 | 8th Adjustment | 53,525 |
| | | | |
| C.H. Heist Corp. Retro | 01/01/1997 - 01/01/1998 | 9th Adjustment | 0 |
| C.H. Heist Corp. LRF | 01/01/1997 - 01/01/1998 | 9th Adjustment | (100) |
| | | | |
| C.H. Heist Corp. Retro | 01/01/1996 - 01/01/1997 | 10th Adjustment | 0 |
| C.H. Heist WC Deductible | 01/01/1996 - 01/01/1997 | 10th Adjustment | 0 |
| | | | |
| C.H. Heist Corp. Retro | 01/01/1995 - 01/01/1996 | 11th Adjustment | 0 |
| C.H. Heist WC Deductible | 01/01/1995 - 01/01/1996 | 11th Adjustment | (120) |
| | | | |
| C.H. Heist Corp. Retro | 01/01/1994 - 01/01/1995 | 12th Adjustment | (1,494) |
| C.H. Heist WC Deductible | 01/01/1994 - 01/01/1995 | 12th Adjustment | 0 |
| | | | |
| C.H. Heist Corp. Retro | 01/01/1993 - 01/01/1994 | 13th Adjustment | 0 |
| C.H. Heist WC Deductible | 01/01/1993 - 01/01/1994 | 13th Adjustment | 13,010 |
| | | | |
| C.H. Heist Corp. Retro | 01/01/1992 - 01/01/1993 | 14th Adjustment | 566 |
| C.H. Heist Corp. KY Tax | 01/01/1992 - 01/01/1993 | 14th Adjustment | 3,020 |
| | | | |
| C.H. Heist Corp. Retro | 01/01/1991 - 01/01/1992 | 15th Adjustment | 0 |
| C.H. Heist Corp. KY Tax | 01/01/1991 - 01/01/1992 | 15th Adjustment | (2,135) |

| Remit Payment To: | Refer Questions To: |
|---|---|
| ZURICH NORTH AMERICA | For Questions Regarding the Adjustment Calculation: |
| 8745 PAYSPHERE CIRCLE | *Shannon Price*          (847) 605-4252 |
| CHICAGO, IL  60674 | E-mail: shannon.price@zurichna.com |
| | |
| | For Questions Regarding Collections Issues: |
| | *Mike Weinberg*          (847) 413-5599 |
| | E-mail: mike.weinberg@zurichna.com |

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 60196-1056
(847) 605-6000, FAX: (847) 605-6767
A MEMBER OF THE ZURICH AMERICAN INSURANCE GROUP

# Adjustment Summary

*Global Corporate Syracuse*



**ZURICH**

| Customer | Agent |
|---|---|
| Abelist, Inc.<br>1511 North Westshore Blvd<br>Tampa, FL 33607<br><br>John Horan, CEO<br>613-830-7700 | 24-132-813<br>Assurance Agency, LTD<br>One Century Centre<br>1750 E. Golf Road<br>Schaumburg, IL 60173<br>Diane Bozle |

| Invoice Date | Valuation Date | Due Date | Amount Due |
|---|---|---|---|
| 09/21/07 | 06/30/07 | 10/11/07 | $1,134,527 |

| Description | Amount Billed |
|---|---|
| Carried Forward from Invoice # RT100607002463 | 493,907 |
| CH Heist 01/01/1996 - 01/01/1997 WC Deductible | 123 |
| CH Heist 01/01/1995 - 01/01/1996 WC Deductible | (9) |
| CH Heist 01/01/1994 - 01/01/1995 WC Deductible | (20) |
| CH Heist 01/01/1993 - 01/01/1994 WC Deductible | (35,205) |
| 6/30/06 Retro Valuation Balance | 675,731 |
| | 0 |
| | 0 |
| | 0 |
| | 0 |

| Remit Payment To: | Refer Questions To: |
|---|---|
| ZURICH NORTH AMERICA<br>8745 PAYSPHERE CIRCLE<br>CHICAGO, IL 60674 | For Questions Regarding the Adjustment Calculation:<br>Jim Wilkinson                                  847-762-7146<br>E-mail: jim.wilkinson@zurichna.com<br>For Questions Regarding Collections Issues:<br>Diane Lowery                                    847-605-6883<br>E-mail: diane.lowery@zurichna.com |

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 60196-1056
(847) 605-6000, FAX: (847) 605-6767
A MEMBER OF THE ZURICH-AMERICAN INSURANCE GROUP

# Adjustment Invoice

Global Corporate Syracuse


ZURICH

## Invoice # : RTI00607002463

| Customer | Agent |
|---|---|
| | 24-132-813 |
| ABLEST, INC. | ASSURANCE AGENCY, LTD. |
| 1511 North Westshore Blvd | One Century Centre |
| Suite 900 | 1750 E. Golf Road |
| Tampa, FL - 33607 | Schaumburg, IL - 60173 |
| John Horan, CFO | Diane Boзie |

| Invoice Date | Valuation Date | Due Date | Amount Due |
|---|---|---|---|
| 09/19/2007 | 06/30/2007 | 10/09/2007 | $493,907 |

| Adjustment Type | Program Period | Adjustment | Amount Billed |
|---|---|---|---|
| Retro | 01/01/2006 - 01/01/2007 | First Adjustment | $236 |
| LRF | 01/01/2006 - 01/01/2007 | First Adjustment | $477,156 |
| Retro | 01/01/2005 - 01/01/2006 | Second Adjustment | $0 |
| LRF | 01/01/2005 - 01/01/2006 | Second Adjustment | ($248,383) |
| LRF | 01/01/2004 - 01/01/2005 | Third Adjustment | $179,717 |
| Retro | 01/01/2004 - 01/01/2005 | Third Adjustment | $0 |
| LRF | 01/01/2003 - 01/01/2004 | Fourth Adjustment | ($117,481) |
| Retro | 01/01/2003 - 01/01/2004 | Fourth Adjustment | $0 |
| Retro | 01/01/2002 - 01/01/2003 | Fifth Adjustment | $0 |
| LRF | 01/01/2002 - 01/01/2003 | Fifth Adjustment | $37,360 |
| Retro | 01/01/2001 - 01/01/2002 | Sixth Adjustment | $0 |
| LRF | 01/01/2001 - 01/01/2002 | Sixth Adjustment | $168,598 |
| LRF | 01/01/2000 - 01/01/2001 | Seventh Adjustment | $269 |
| LRF | 01/01/2000 - 01/01/2001 | Seventh Adjustment | $0 |
| Retro | 01/01/2000 - 01/01/2001 | Seventh Adjustment | $0 |
| Retro | 01/01/2000 - 01/01/2001 | Seventh Adjustment | $0 |
| LRF | 01/01/1999 - 01/01/2000 | Eighth Adjustment | $1,169 |
| Retro | 01/01/1999 - 01/01/2000 | Eighth Adjustment | $0 |
| Retro | 01/01/1999 - 01/01/2000 | Eighth Adjustment | $0 |

| Remit Payment To: | Refer Questions To: |
|---|---|
| ZURICH NORTH AMERICA | For Questions Regarding the Adjustment Calculation: |
| 8745 PAYSPHERE CIRCLE | Jim Wilkinson -          (847) 762-7146 |
| CHICAGO, IL 60674 | E-mail:jim.wilkinson@zurichna.com |
| | For Questions Regarding Collection Issues |
| | Diane Lowry -          (847) 605-6883 |
| | E-mail:Diane.Lowry@zurichna.com |

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 64196-1056
(847) 605-6000, FAX: (847) 605-6767
A MEMBER OF THE ZURICH-AMERICAN INSURANCE GROUP

INVOICE                                      Page 1 of 2

# Adjustment Invoice

Global Corporate Syracuse


ZURICH

## Invoice # : RTI00607002463

| Customer | | | Agent | |
|---|---|---|---|---|

ABLEST, INC.
1511 North Westshore Blvd
Suite 900
Tampa , FL - 33607
John Horan, CFO

24-132-813
ASSURANCE AGENCY, LTD.
One Century Centre
1750 E. Golf Road
Schaumburg, IL - 60173
Diane Bozie

| LRF | 01/01/1999 - 01/01/2000 | Eighth Adjustment | ($6,699) |
|---|---|---|---|
| Retro | 01/01/1998 - 01/01/1999 | Ninth Adjustment | $0 |
| Retro | 01/01/1998 - 01/01/1999 | Ninth Adjustment | $0 |
| LRF | 01/01/1998 - 01/01/1999 | Ninth Adjustment | $39 |
| LRF | 01/01/1998 - 01/01/1999 | Ninth Adjustment | $0 |
| Retro | 01/01/1997 - 01/01/1998 | Tenth Adjustment | $0 |
| LRF | 01/01/1997 - 01/01/1998 | Tenth Adjustment | $0 |
| LRF | 01/01/1997 - 01/01/1998 | Tenth Adjustment | $0 |
| Retro | 01/01/1997 - 01/01/1998 | Tenth Adjustment | $0 |
| Retro | 01/01/1996 - 01/01/1997 | Eleventh Adjustment | $0 |
| Retro | 01/01/1995 - 01/01/1996 | Twelfth Adjustment | $0 |
| Retro | 01/01/1994 - 01/01/1995 | Thirteenth Adjustment | $0 |
| Retro | 01/01/1993 - 01/01/1994 | Fourteenth Adjustment | $0 |
| Kentucky Taxes | 01/01/1992 - 01/01/1993 | Fifteenth Adjustment | $0 |
| Retro | 01/01/1992 - 01/01/1993 | Fifteenth Adjustment | $1,926 |
| Retro | 01/01/1991 - 01/01/1992 | Sixteenth Adjustment | $0 |
| Kentucky Taxes | 01/01/1991 - 01/01/1992 | Sixteenth Adjustment | $0 |

| Remit Payment To: | | Refer Questions To: | |
|---|---|---|---|

ZURICH NORTH AMERICA
8745 PAYSPHERE CIRCLE
CHICAGO, IL 60674

For Questions Regarding the Adjustment Calculation:
Jim Wilkinson -        (847) 762-7146
E-mail:jim.wilkinson@zurichna.com
For Questions Regarding Collection Issues
Diane Lowry -        (847) 605-6383
E-mail:Diane.Lowry@zurichna.com

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 60196-1056
(847) 605-6000, FAX: (847) 605-6767
A MEMBER OF THE ZURICH-AMERICAN INSURANCE GROUP

INVOICE                              Page 2 of 2

# Adjustment Summary
*USU Syracuse*


**ZURICH**

| Customer | Agent |
|---|---|
| ABELIST, INC.<br>1901 ULMERTON ROAD<br>CLEARWATER, FL 33762<br><br>MR. JOHN HORAN, CFO | 24-132-813<br>ASSURANCE AGENCY, LTD.<br>ONE CENTURY CENTRE<br>1750 E. GOLF ROAD<br>SCHAUMBURG, IL 60173<br>MS. DIANE BOZIE |

| Invoice Date | Valuation Date | Due Date | Amount Due |
|---|---|---|---|
| 09/19/08 | 06/30/08 | 10/09/08 | $604,902 |

| Description | Amount Billed |
|---|---|
| Carried Forward from Invoice # RTI00608004772 | 614,006 |
| CH Heist 01/01/1996 - 01/01/1997 WC Deductible | 0 |
| CH Heist 01/01/1995 - 01/01/1996 WC Deductible | 0 |
| CH Heist 01/01/1994 - 01/01/1995 WC Deductible | (970)-5 |
| CH Heist 01/01/1993 - 01/01/1994 WC Deductible | (8,134) |

| Remit Payment To: | | Refer Questions To: |
|---|---|---|
| ZURICH NORTH AMERICA<br>8745 PAYSPHERE CIRCLE<br>CHICAGO, IL 60674 | RECEIVED<br>SEP 18 2008<br>BILLING SERVICES | For Questions Regarding the Adjustment Calculation:<br>Joe Corry        (847) 605-3672<br>E-mail: joe.corry@zurichna.com<br>For Questions Regarding Collections Issues:<br>Diane Lowry        (847) 605-6883<br>E-mail: diane.lowry@zurichna.com |

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 60196-1056
(847) 605-4000, FAX: (847) 605-6767
A MEMBER OF THE ZURICH-AMERICAN INSURANCE GROUP

# Adjustment Invoice

USU Syracuse



**ZURICH**

## Invoice # : RTI00608004772

| Customer | Agent |
|---|---|
| ABLEST, INC.<br>1901 ULMERTON<br>SUITE 300<br>CLEARWATER, FL - 33762<br>JOHN RORAN, CFO | 24-132-813<br>ASSURANCE AGENCY<br>One Century Centre<br>1750 E. Golf Road<br>Schaumburg, IL - 60175<br>Diane Bozie |

| Invoice Date | Valuation Date | Due Date | Amount Due |
|---|---|---|---|
| 09/17/2008 | 06/30/2008 | 10/07/2008 | $614,006 |

| Adjustment Type | Program Period | Adjustment | Amount Billed |
|---|---|---|---|
| LRF | 01/01/2006 - 01/01/2007 | Second Adjustment | $265,385 |
| Retro | 01/01/2006 - 01/01/2007 | Second Adjustment | $0 |
| LRF | 01/01/2005 - 01/01/2006 | Third Adjustment | $207,848 |
| Retro | 01/01/2005 - 01/01/2006 | Third Adjustment | $0 |
| LRF | 01/01/2004 - 01/01/2005 | Fourth Adjustment | ($8,278) |
| Retro | 01/01/2004 - 01/01/2005 | Fourth Adjustment | $0 |
| Retro | 01/01/2003 - 01/01/2004 | Fifth Adjustment | $0 |
| LRF | 01/01/2003 - 01/01/2004 | Fifth Adjustment | $37,027 |
| LRF | 01/01/2002 - 01/01/2003 | Sixth Adjustment | $10,051 |
| Retro | 01/01/2002 - 01/01/2003 | Sixth Adjustment | $0 |
| LRF | 01/01/2001 - 01/01/2002 | Seventh Adjustment | $13,123 |
| Retro | 01/01/2001 - 01/01/2002 | Seventh Adjustment | $0 |
| Retro | 01/01/2000 - 01/01/2001 | Eighth Adjustment | $0 |
| Retro | 01/01/2000 - 01/01/2001 | Eighth Adjustment | $0 |
| LRF | 01/01/2000 - 01/01/2001 | Eighth Adjustment | $10,260 |
| LRF | 01/01/2000 - 01/01/2001 | Eighth Adjustment | ($120) |
| Retro | 01/01/1999 - 01/01/2000 | Ninth Adjustment | $0 |
| Retro | 01/01/1999 - 01/01/2000 | Ninth Adjustment | $0 |
| LRF | 01/01/1999 - 01/01/2000 | Ninth Adjustment | ($129) |

| Remit Payment To: | Refer Questions To: |
|---|---|
| ZURICH NORTH AMERICA<br>8745 PAYSPHERE CIRCLE<br>CHICAGO, IL 60674 | For Questions Regarding the Adjustment Calculation:<br>Joe Corry -          (847) 605-3672<br>E-mail:joe.corry@zurichna.com<br>For Questions Regarding Collection Issues<br>Diane Lowry -          (847) 605-6883<br>E-mail:Diane.Lowry@zurichna.com |

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 60196-1056<br>(847) 605-6000, FAX: (847) 605-6763<br>A MEMBER OF THE ZURICH-AMERICAN INSURANCE GROUP

# Adjustment Invoice

USU Syracuse

**ZURICH**

## Invoice # : RTI00608004772

| Customer | | | Agent | |
|---|---|---|---|---|

ABLEST, INC.
1901 ULMERTON
SUITE 300
CLEARWATER , FL - 33762-
JOHN HORAN, CFO

24-132-813
ASSURANCE AGENCY
One Century Centre
1750 E. Golf Road
Schaumburg, IL - 60173
Diane Rozie

| LRF | 01/01/1999 - 01/01/2000 | Ninth Adjustment | ($29) |
|---|---|---|---|
| Retro | 01/01/1998 - 01/01/1999 | Tenth Adjustment | $0 |
| LRF | 01/01/1998 - 01/01/1999 | Tenth Adjustment | $0 |
| LRF | 01/01/1998 - 01/01/1999 | Tenth Adjustment | $1,078 |
| Retro | 01/01/1998 - 01/01/1999 | Tenth Adjustment | $0 |
| LRF | 01/01/1997 - 01/01/1998 | Eleventh Adjustment | $0 |
| LRF | 01/01/1997 - 01/01/1998 | Eleventh Adjustment | ($16) |
| Retro | 01/01/1997 - 01/01/1998 | Eleventh Adjustment | $0 |
| Retro | 01/01/1997 - 01/01/1998 | Eleventh Adjustment | $0 |
| Retro | 01/01/1996 - 01/01/1997 | Twelfth Adjustment | $0 |
| Retro | 01/01/1995 - 01/01/1996 | Thirteenth Adjustment | $0 |
| Retro | 01/01/1994 - 01/01/1995 | Fourteenth Adjustment | $0 |
| Retro | 01/01/1993 - 01/01/1994 | Fifteenth Adjustment | $0 |
| Retro | 01/01/1992 - 01/01/1993 | Sixteenth Adjustment | $77,806 |
| Retro | 01/01/1991 - 01/01/1992 | Seventeenth Adjustment | $0 |

| Remit Payment To: | Refer Questions To: |
|---|---|

ZURICH NORTH AMERICA
8745 PAYSPHERE CIRCLE
CHICAGO, IL 60674

For Questions Regarding the Adjustment Calculation:
Joe Corry -          (847) 605-5672
E-mail:joe.corry@zurichna.com
For Questions Regarding Collection Issues
Diane Lowry -          (847) 605-6983
E-mail:Diane.Lowry@zurichna.com

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 60196-1056
(847) 605-6000, FAX (847) 605-6767
A MEMBER OF THE ZURICH-AMERICAN INSURANCE GROUP

INVOICE                              *Page 2 of 2*

# AUDIT INVOICE



**ZURICH**

| Customer | Agent |
|---|---|
| Albest, Inc.<br>1901 Ulmerton Rd Ste 300<br>Clearwater, Fl 33762 | 67-519-000<br>Hatch Leonard Naples<br>340 Delaware Ave.<br>Buffalo, NY 14202<br><br>Cyd Hartley<br>716-854-9121 |

| | | Invoice Date<br>04/08/03 | Due Date<br>05/08/03 | Amount Due<br>$78,770 |
|---|---|---|---|---|
| **Policy Number** | **Effective Date** | **Gross Amount** | **Commission** | **Net Amount** |
| BAP 8445474-05 | 01/01/02 to 01/01/03 | ($995.00) | $0.00 | ($995.00) |
| GLO 8445473-05 | 01/01/02 to 01/01/03 | $8,034.00 | | deferred to retro |
| WC 8445472-05 | 01/01/02 to 01/01/03 | $80,912.00 | $1,147.00 | $79,765.00 |
| WC 8445534-06 | 01/01/02 to 01/01/03 | ($7,484.00) | | deferred to retro |

| Remit Payment To: | Refer Questions To: |
|---|---|
| ZURICH U.S.<br>135 S. LASALLE ST.<br>DEPT. 8745<br>CHICAGO, IL 60674-8745<br>Attn: Sylvia Chapple | Denise Newton<br>315-461-5305 |

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 60196-1056
(847) 605-6950, FAX: (847) 605-6767
A MEMBER OF THE ZURICH-AMERICAN INSURANCE GROUP



# AUDIT INVOICE



**ZURICH**

| Customer | Agent |
|---|---|
| Abtest, Inc.<br>1901 Ulmerton Road<br>Suite 300<br>Clearwater, FL 33762 | 67-519<br>Hatch Leonard Naples<br>340 Delaware Avenue<br>Buffalo, NY  14202-1804 |

| Policy Number | Effective Date | Invoice Date<br>07/02/04<br>Gross Amount | Due Date<br><br>Commission | Amount Due<br>$60,979.00<br>Net Amount |
|---|---|---|---|---|
| WC  8445534-07 | 01/01/03-01/01/04 | $11,135.00 | $0.00 | $11,135.00 |
| WC  8445472-06 | 01/01/03-01/01/04 | $36,060.00 | ($254.00) | $35,806.00 |
| GLO 8445473-06 | 01/01/03-01/01/04 | $11,830.00 | $0.00 | $11,830.00 |
| BAP 8445474-06 | 01/01/03-01/01/04 | $2,208.00 | $0.00 | $2,208.00 |
| Please provide written<br>documentation to the<br>Zurich Underwriter<br>and Zurich Acct Rep.<br>For all disputed audits | | | If written<br>documentation is not<br>received by the due date,<br>the audit will be<br>considered final | |

| Remit Payment To: | Refer Questions To: |
|---|---|
| ZURICH NORTH AMERICA<br>8745 PAYSPHERE CIRCLE<br>CHICAGO, IL  60674<br>SYLVIA CHAPPLE<br>SYLVIA.CHAPPLE@ZURICHNA.COM | CORP. CUSTOMER<br>Phone: |

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 60196-1056
(847) 605-3747, FAX: (847) 240-8050
A MEMBER OF THE ZURICH-AMERICAN INSURANCE GROUP

## CLAIM SERVICES CONTRACT

### between

### ABLEST, INC.

### and

## ZURICH SERVICES CORPORATION

**THIS AGREEMENT** (hereinafter "Agreement") is made and entered into this 1ST day of January, 2006, by and between ABLEST, INC. a corporation licensed under the laws of the State of Florida (hereinafter referred to as "Client") and ZURICH SERVICES CORPORATION a corporation licensed under the laws of the State of Illinois (hereinafter referred to as " ZSC").

**NOW THEREFORE,** In consideration of the mutual covenants herein contained, the receipt and sufficiency of which are hereby acknowledged, ZSC and Client (hereinafter collectively referred to as the "Parties") agree as follows:

### ARTICLE 1 - SUBJECT OF AGREEMENT

During the period this Agreement is in effect, ZSC will provide "Claim Services" as set out in Article 3 herein, with regard to all claims reported to ZSC during the stated term of this Agreement, provided those claims fall within the coverage of the following policies of insurance, issued to: ABLEST, INC., located at 1511 North Westshore Boulevard, Tampa, FL 33607 as that coverage is determined by the issuing insurance company:

| Insurance Company | Line of Business | Policy Period | Policy Number | Applicable Limits |
|---|---|---|---|---|
| Zurich American Insurance Co. | WC | 01/01/2006 – 01/01/2007 | 8445472-09 | Per Policy |
| Zurich American Insurance Co. | WC | 01/01/2006 – 01/01/2007 | 8445534-10 | Per Policy |
|  |  |  |  |  |



EXHIBIT
F

1

## ARTICLE 2 - DEFINITIONS

As used in this Agreement, the following terms will have the following definitions:

"Allocated Loss Adjustment Expense" (hereinafter "ALAE") means, unless state or federal law require otherwise, all costs, charges or expenses of ZSC, its agents, subcontractors or employees, which are properly chargeable to a Qualified claim or loss, including, but not limited to, court costs, attorney fees and costs, independent investigators, independent medical examinations, independent claim adjusting services, cost containment vendors, experts and other witnesses, court reporter and transcript copy fees, fees for obtaining or preparing diagrams, reports, documents and photographs, and all other fees, charges, costs or expenses incurred by ZSC as are necessary to properly handle the claims service under this Agreement.

"Insurers" means those insurance companies with whom client is insured under the policies described in Article 1 - SUBJECT OF AGREEMENT herein.

"Material Changes in Scope of Activity" means obligations subject to this Agreement which ZSC had no reason to anticipate at the time of execution and which have a material affect on the nature of the obligation or the amount or degree of service to be required.

"Qualified" claim or loss report means those claims and losses that fall within the subject of this Agreement, as set out in Article 1 hereto.

"Term of Agreement" means that period of time described more fully in Article 9, herein.

## ARTICLE 3 - SCOPE OF SERVICES

ZSC agrees to perform the following Claim Services:

A.    To review all claims and loss reports to determine which of those are Qualified claims and losses and to accept those that are;

B.    To investigate all Qualified claims and losses to the extent deemed necessary in the judgment of ZSC and to adjust, settle, defend or otherwise handle all such claims or losses and pay all ALAE;

C.    Create and maintain a claim file and document it appropriately. The file will be available to Client at its reasonable request subject to applicable state and federal laws, and Client's agreement that it will use the information for risk management and loss control purposes only.

2

D.   To furnish to Client all reports indicated in Exhibit A, which is attached hereto and incorporated herein by reference as though fully set forth and to perform any other reporting requirements described therein in a reasonable manner;

E.   To provide a claim coordinator for the servicing of this Agreement;

F.   To retain and store each physical claim file in accordance with the provisions of Article 6 - FILE RETENTION herein; and

G.   To retain and supervise counsel, as reasonably necessary and appropriate; and

H.   Other additional services as described in Exhibit B, incorporated by reference herein as though fully set forth.

## ARTICLE 4 - SERVICE FEE

Client agrees to pay charges and fees for the services described herein in accordance with all terms and conditions set out in Exhibit B, attached hereto and incorporated herein by reference as though fully set forth.

## ARTICLE 5 - TAXES

ZSC does not undertake any obligation to pay taxes, assessments or escheat obligations of any kind in connection with the services described herein. However, in the event that a governmental body finds that ZSC is obligated to pay, on its own behalf or as agent, such taxes, assessments, or obligations, ZSC shall have the sole discretion to determine whether such monies shall be paid, compromised, litigated or appealed, and as to all matters of procedure in connection therewith. In the event any such monies must be paid, then Client agrees to pay over such amounts to ZSC, immediately upon request.

## ARTICLE 6 - FILE RETENTION

ZSC agrees to retain and store each claim file in electronic media form for each Qualified claim or loss in the condition it was in on the date the claim file was closed by ZSC and to do so for a period of one (1) year from date of closure and to store the file thereafter in accordance with applicable law and its internal retention procedures, or at the request of the Insurer, to transfer the file to the Insurer for retention. The files will be conveyed to Insurer within ZSC's designated time frames. Client warrants and agrees that it will use the information contained in these files solely for risk management and loss control purposes and will not use the information for any

3

inappropriate personnel or employment related decisions or for the marketing of any product or services.

### ARTICLE 7 - SCOPE OF AUTHORITY

Client grants full and complete authority to ZSC for all matters pertaining to the handling of claims within the subject of this Agreement, as set out in Article 1.

### ARTICLE 8 - LOSS FUND

The Loss Fund Account is to enable ZSC to fund for claim or loss payments and ALAE payments made on behalf of Client. The Loss Fund Account will be made available by Client through the Insurer. ZSC and Client acknowledge that claim or loss payments, including ALAE payments, will be made exclusively with funds from the Loss Fund Account. At a minimum a standard monthly paid loss billing reconciliation of the loss fund account will be done.

### ARTICLE 9 - TERM OF AGREEMENT

This Agreement shall be effective for a period identical to that period the policies listed in Article 1 - "Subject of Agreement" remain in effect, with applicable limits intact, or unless canceled in accordance with the provisions of Article 11 or Article 12 herein. Any continuation or renewal of this Agreement shall be the subject of further negotiations between the Parties.

### ARTICLE 10 - SERVICE TIME PARAMETERS

It is agreed that ZSC will continue to handle and adjust to conclusion each claim that is open as of the expiration date of the Agreement, provided the claim remains within the coverage of the applicable insurance policy and the applicable limits of that policy remain intact. The charge for each claim shall cover claim services for the lifetime of the claim and shall be non-refundable. Claims must be reported to a ZSC claim office within 24 months of the inception of the contract year. Claims occurring during the contract but reported beyond the 24-month period will be priced at ZSC's then prevailing billing rate.

### ARTICLE 11 - CANCELLATION BY CLIENT

A.     Client may only cancel this Agreement by giving to ZSC thirty (30) days' written notice of its intention to do so. In that event, ZSC shall promptly convey to the Insurers all of Client's open claim files. All costs and

4

expenses incurred for such transfer shall be the obligation of the Client. In such event, all service and administrative fees which are due and payable by Client prior to the cancellation effective date, in accordance with Article 4 - "Service Fee", shall be deemed to survive any such cancellation, and ZSC shall be entitled to interest and cost of collection of such service fees.

B.    Neither Party will be responsible for, nor deemed to be in breach of, any obligation under this Agreement on account of any failure or delay in performance hereunder (except for failure to make payment when due) due to acts of God or governmental authority, strikes or labor disputes, fires or any other cause beyond the control of that Party.

## ARTICLE 12 - CANCELLATION BY ZSC

A.    In the event Client shall fail to cooperate with Insurer regarding the Loss Fund in accordance with the obligations set forth in Article 8 - Loss Fund, or Client shall be the subject of any voluntary or involuntary insolvency proceeding, or Client shall fail to pay service fees when due, as provided in Article 4 - "Service Fee", ZSC may, upon ten (10) days' written notice to Client, suspend all further claims handling and claims payments.

This Agreement is canceled in its entirety if the suspension provision contained in the first paragraph of this Article 12.A. above has been exercised and the cause(s) has not been cured within fifteen (15) business days from the date of the written notice.

In the event of a cancellation effected pursuant to this section, ZSC shall then convey all claim files to the Insurers, and all costs and expenses for such file transfer shall be the obligation of Client.   In such event, all service and administrative fees which have been paid or which are due and payable by Client prior to the cancellation effective date pursuant to Article 4 - "Service Fee", shall be deemed to be fully earned by ZSC.   All such obligations of Client shall be deemed to survive any such cancellation, and ZSC shall be entitled to interest and cost of collection of such service fees.   In any such event, neither ZSC nor Client shall have any further responsibility or obligation hereunder, except as may be provided in this Agreement.

B.    This Agreement may terminate at ZSC option upon ten (10) days' written notice to Client, concurrently with any change in ownership or control of Client as a corporation.

5

## ARTICLE 13 - INDEPENDENT CONTRACTOR STATUS

At all times, ZSC shall be an independent contractor, and employees of ZSC shall, in no event, be considered employees of Client.

## ARTICLE 14 - PRACTICE OF LAW

It is understood and agreed that ZSC will not perform, and Client will not request performance of, any service which may constitute the unauthorized practice of law.

## ARTICLE 15 - MATERIAL CHANGES

Regarding "material changes in scope of activity", Client agrees to extend to ZSC the right to review with Client and adjust its service fees and Loss Fund requirements.

## ARTICLE 16 - COOPERATION OF CLIENT

ZSC's responsibility for performance of activities as specified in Article 3, is conditioned upon Client's reasonable cooperation with ZSC with respect to the activities of ZSC, including, but not limited to, responding to ZSC's requests for information promptly; meeting with ZSC and/or third parties, as may be needed; making decisions on matters which, as required by this Agreement or in the opinion of ZSC, should reasonably be made by Client; the payment of funds into the Loss Fund Account referred to in Article 8 - Loss Fund, as required by the terms of such Article; and performance by Client of all other obligations of this Agreement. Failure to cooperate will be considered a material breach of this Agreement.

## ARTICLE 17 - PERSONNEL SOLICITATION

During the period of this Agreement and for a period of one (1) year thereafter, ZSC agrees not to solicit for employment or employ any of Client's employees contracted during the performance of this Agreement, and Client agrees not to solicit for employment or employ, during the period of this Agreement and for a period of one (1) year thereafter, any employee of ZSC or ZSC's subcontractors contacted by Client during the performance of this Agreement.

## ARTICLE 18 - INSPECTION

Upon thirty (30) days' written notice, Client shall have the right, at any reasonable time, to inspect the records of ZSC regarding the file of any claim covered

by this Agreement subject to applicable state and federal laws, and Client's agreement that it will use the information for risk management and loss control purposes only.

## ARTICLE 19 - RESPONSIBILITY OF ZSC

ZSC does not act as an insurer for Client and this Agreement shall not be construed as an insurance policy or any contract or agreement of indemnity; it being understood that ZSC is, in no event, financially responsible for payment of or the satisfaction of any of the claims serviced pursuant to this Agreement. The establishment of any Loss Fund Account to pay claims pursuant to Article 8 of this Agreement shall not be considered an undertaking by ZSC to be financially responsible for payments of funds into any such account.

## ARTICLE 20 - LICENSES

ZSC warrants that:

A.   It and its adjusters, claim investigators, subcontractors or appraisers will hold, at all material times of this Agreement, proper licenses, and

B.   When ZSC subcontracts any responsibility or duty stated in this Agreement, the subcontractor holds proper licenses for the work to be performed, including, but not limited to, any service company, adjusting company, adjuster, claim investigator or appraisal service company.

## ARTICLE 21 - INDEMNIFICATION

ZSC agrees to indemnify, defend and hold harmless Client with respect to any claim, demand, action, damage, cost or expense to which Client may be subjected as a consequence of any error, omission, tort, intentional tort, willful misconduct or any other negligence on the part of ZSC and/or its employees or agents, unless the complained of action of ZSC was taken at the direction of Client, its employee or agent. In the latter event, Client agrees to indemnify and hold harmless ZSC with respect to any said claim, demand, damage, cost or expense arising therefrom or from any error, omission, tort, intentional tort, willful misconduct or any other liability on the part of Client, its employees, or its agents.

## ARTICLE 22 - COMMUNICATIONS AND NOTICES

Any notice to ZSC shall be in writing and sent by U.S. mail, by facsimile transmission with proof of delivery or by nationally recognized overnight carrier with proof of delivery, to the address of the Parties set forth below. The date of notice shall

7

be the date on which the recipient receives notice or refuses delivery.  All notices shall be addressed as follows:

| To Service Company: | To Client: |
|---|---|
| Zurich Services Corporation<br>1400 American Lane, Tower 1, 13th Floor | Ablest, Inc. |
| Schaumburg, IL 60196 | 1511 North Westshore Boulevard |
| FAX:  847/605-6109 | Tampa, FL  33607 |
| Attn:  Steve Arrambide, | Attn:  John Horan, |
| Vice President | Chief Financial Officer |

## ARTICLE 23 - SEVERABILITY

In the event any provision of this Agreement conflicts with laws applicable hereto or under which this Agreement is construed or if any provision of this Agreement shall be held illegal or unenforceable or partially illegal or unenforceable by a court with jurisdiction over the Parties to this Agreement, then this Agreement shall be modified to conform with said laws or judicial determination, and such provision shall be construed and enforced only to such extent as it may be a legal and enforceable provision, and all other provisions of this Agreement shall be given full effect separately therefrom and shall not be affected thereby.

## ARTICLE 24 - HEADINGS

Headings herein are for convenience of reference only and shall not be considered in any interpretation of this Agreement.

## ARTICLE 25 - MERGER

This Agreement supersedes all previous agreements as to the same subject matter, whether oral or written between Client and ZSC, and this Agreement constitutes the entire and sole contract between Client and ZSC, and any prior statements, agreements or representations between Client and ZSC are merged herein.

The provisions of this Agreement may be modified or amended only by mutual agreement, reduced to writing and executed by authorized representatives of both Parties, except as may be provided in this Agreement or its Exhibits.  Such modification or amendment shall be attached to, and shall thereupon become a part of, this Agreement.

## ARTICLE 26 - JURISDICTION

This Agreement, and all aspects thereof, shall be construed under the laws of the State of Illinois.

## ARTICLE 27 - ATTORNEY FEES

Client agrees that if ZSC is required to bring an action against it to enforce any term or condition of this Agreement and Client is determined to a be at fault, then Client shall pay ZSC all reasonable costs and attorney fees incurred by ZSC by reason thereof, as set by the court, in the same action or in a separate action brought for that purpose.

## ARTICLE 28 - CONFIDENTIALITY

In performing its responsibilities under this contract, ZSC will receive nonpublic personal information ("NPI"). ZSC has a privacy policy concerning the treatment of NPI it provides or obtains in the performance of its duties including, but not limited to, self-insureds, claimants and policyholders.  Federal and State laws prohibit ZSC from disclosing NPI to nonaffiliated third parties unless otherwise permitted or required by law.

NPI is generally information that personally identifies an individual and which is not otherwise available to the public.  NPI includes both financial and health information of such individuals.

ZSC agrees that it will use all NPI only for the purpose for which such information was provided or obtained. ZSC also agrees that it will not disclose the NPI to any party; provided, however, that ZSC may disclose NPI to a party as necessary to fulfill its obligations under this Agreement if:

(1) the party receiving the NPI agrees to abide by the terms of this Confidentiality provision; and,

(2) ZSC provides prior notice to Client before disclosing the NPI.

9

IN WITNESS WHEREOF, the Parties hereto, by executing this Agreement, have caused this Agreement to be effective as of the date and year first above written.

CLIENT:                           SERVICE COMPANY:
Ablest, Inc.                      Zurich Services Corporation


By: _____        By: _____
     John Horan                         Steve Arrambide
     Chief Financial Officer            Vice President


Date: _____      Date: ___December 1, 2006___

10

<u>**EXHIBIT A**</u>

<u>**ABLEST, INC.**</u>

<u>**REPORTS**</u>

One (1) copy of the following reports will be provided to Client:

| <u>**Report Name**</u> | <u>**Frequency**</u> |
|---|---|
| Ad Hoc/Optional Reports, as requested | To be determined; cost to be agreed upon. |

11

**EXHIBIT B**
**PRICING FOR CLAIM SERVICES CONTRACT**
**BETWEEN**
**ABLEST, INC.**
**AND**
**ZURICH SERVICES CORPORATION**
**(CRADLE TO GRAVE)**
**01/01/2006 – 01/01/2007**

| TYPE OF CLAIM | FEE PER CLAIMANT | ANTICIPATED # OF CLAIMANTS | ANTICIPATED FEES |
|---|---|---|---|
| Workers Comp Medical Only | $145.00 * | 400 | $58,000.00 |
| Workers Comp Medical Only – AK, HI, ID, MT, NM, NV & OR | $225.00 * | 0 | $0.00 |
| Workers Comp Medical Only (Closed No Pay) | $72.00 * | 0 | $0.00 |
| Workers Comp Indemnity | $1,020.00 * | 120 | $122,400.00 |
| Workers Comp Indemnity – AK, HI, ID, MT, NM, NV & OR | $1,326.00 * | 0 | $0.00 |
| Workers Comp Indemnity (Closed No Pay) | $189.00 * | 0 | $0.00 |
| Workers Comp Indemnity - CA, FL, NY, PA & TX | $1,395.00 * | 13 | $18,135.00 |
| Workers Comp Indemnity (Closed No Pay) - CA, FL, NY, PA & TX | $261.00 * | 0 | $0.00 |
| Let Rest Files ( "Record Purposes Only") | $45.00 * | 0 | $0.00 |
| Estimated Annual Service Fee | | | $198,535.00 |
| Account Management Administration Fee | | | $10,900.00 |
| Total | | | $209,435.00 |

12

**NOTE:**
The above fees anticipate Standard Settlement Authority of $5,000 - per claimant (Worker's Compensation lump sum settlement) with statutory authority for TTD and medical payment benefits.

**LET REST:**
Let Rest Files are files reported to ZSC "For Record Purposes Only". No claim investigation will be undertaken and no dollar reserves will be established on these claims.

**MANAGED CARE SERVICES:**
Zurich Services Corporation will provide agreed upon Managed Care Services per the service fee schedule (attached). These expenses will be paid off the claim file as an allocated expense.

13

## Zurich North America 2006 Pricing

### Managed Care Service Fees
### Workers Compensation

| Service | Service Fees |
|---|---|
| **Medical Cost Management** | |
| Bill Review and PPO Fees | 20% of Total Savings |
| All bills reviewed to Fee Schedule or UCR | |
| Fraud & Abuse analysis | |
| National Medical Data Base | |
| Up-coding & duplicate charge review | |
| On-line medical rules & protocol | |
| | |
| Negotiated Savings | 20% of Total Savings |
| | |
| Issuing manual checks for customized program | $20.00 per check |
| | |
| **Health Care Management** | |
| Catastrophic Injury Program (24/7/365) | $110 Per Hour |
| | |
| Early Intervention/Medical Case Management | |
| On-site or Telephonic -NY and CA only | $90 Per Hour |
| On-site or Telephonic -all other States | $82 Per Hour |
| | |
| Vocational Rehabilitation Counseling | $82 Per Hour |
| | |
| Preferred Vendor Program | |
| On-site or Telephonic -NY and CA only | $90 Per Hour |
| On-site or Telephonic -all other States | $82 Per Hour |
| | |
| Utilization Review | |
| Pre-Certification -outpatient | $95 Per Event |
| Pre-Certification -inpatient | $110 Per Event |
| Concurrent or Retrospective review | $82 Per Hour |
| | |
| Peer Review Level One | $200 Per Event |
| Peer Review Level Two | $200 Per Hour |
| | |
| Nurse Assisted Provider Panels | $82 Per Hour |
| (average panel takes approximately one hour) | |
| | |
| Job Analysis | $82 Per Hour |

Mileage will be paid according to the federal mileage reimbursement rate

****Service fees subject to change

14

**DESIGNATED ADJUSTER STATES (WORK COMP ONLY):**
It is a requirement in certain states (Alaska, Hawaii, Idaho, Nevada, New Mexico, Oregon and Montana) that an insurance company designate a specific adjuster to handle all Worker's Compensation claims and receive all correspondence from the state workers compensation board within these designated adjuster states.

Because of this requirement workers compensation claims in <u>some</u> states may have to be handled by an adjusting firm supervised by ZSC.


**PAYMENT OF FEES:**
Client shall pay the total "per claimant" service fee to ZSC in (12) equal monthly installments at the first of each monthly period during the length of this agreement. One Bill in the total amount will be submitted by ZSC to Client with payment by Client to be received monthly within 30 days of stated due date.

*The Account Management Administration Fee is non-refundable and due in one lump sum at first installment.


**RECONCILIATION OF SERVICE FEES:**
Six months after the effective date of this contract period and six months thereafter, ZSC reserves the right to review the actual number of each claim type handled by ZSC.

If this 6-month review reveals that the total claim service fee paid to ZSC during the term to date is less than the amount of such fees calculated on the basis of the actual number of claimants handled to date, Client shall pay such additional amount to ZSC within 60 days after Client receives a statement.

A final reconciliation will be performed approximately 12 months after the expiration of the contract.

If this final reconciliation reveals that the total claim service fee paid to ZSC is more than the amount of such fees calculated on the basis of the actual number of claimants handled to date, ZSC shall credit such additional amount to Client within 60 days of the review. If this review reveals that the total claim service fee paid to ZSC during the term to date is less than the amount of such fees calculated on the basis of the actual number of claimants handled to date, Client shall pay such additional amount to ZSC within 60 days after Client receives a statement.

# Invoice



**ZURICH**

| Customer | Broker |
|---|---|
| Ablest Inc<br>1901 Ulmerton Road<br>Clearwater, FL 33762<br>Attn: Erik Cooper | BP# 109999 |

| Invoice Date | Invoice Number | Final Reconciliation | Amount Due |
|---|---|---|---|
| 02/15/08 | TMJ100108103165 | 03/06/08 | $65,767 |

| | Description | Policy Period | Amount Billed |
|---|---|---|---|
| | Zurich Services Corporation Service Fee Billings | 01/01/06 - 01/01/07 | |
| | Actual WC Service Fee @ Final Reconciliation as of 10/01/2007 | | $264,302 |
| | Less Estimated Annual Fee | | $198,535 |

*Amount payable upon receipt of billing

Remaining installments are due within 10 days of due date.

If past due items have been remitted, disregard the upon receipt instructions.

| Remit Payment To: | Refer Questions To: |
|---|---|
| ZURICH NORTH AMERICA<br>8734 PAYSPHERE CIRCLE<br>CHICAGO, IL 60674 | For Questions Regarding the ZSC Calculation:<br>Agnes Mastropaolo          (847) 413-5498 |

Business Unit  Chicago

1400 AMERICAN LANE, SCHAUMBURG, ILLINOIS 60196-1056
(847) 605-6000, FAX (847) 605-8707
A MEMBER OF THE ZURICH-AMERICAN INSURANCE GROUP



EXHIBIT
G

1 | Nicholas P. Roxborough, Esq. (Bar No. 113540)
Michael B. Adreani, Esq. (Bar No. 194991)
2 | Michael L. Phillips, Esq. (Bar No. 232978)
**ROXBOROUGH, POMERANCE, NYE & ADREANI LLP**
3 | 5820 Canoga Ave., Suite 250
Woodland Hills, California 91367
4 | Telephone: (818) 992-9999
Facsimile: (818) 992-9991
5 |
Attorneys for Respondent/Counter-Claimant
6 | Ablest, Inc. and Respondent Select Staffing
Services, Inc.
7 |
8 |
9 |
10 | ZURICH AMERICAN INSURANCE      AAA No: 51 195Y0090108
COMPANY,
11 |              Claimant,          **FIRST-AMENDED CROSS-DEMAND**
12 | v.
13 | ABLEST, INC. and SELECT STAFFING
SERVICES INC.
14 |
15 |              Respondents.
16 |
17 | ABLEST, INC.,
18 |              Counter-Claimant
19 | v.
20 | ZURICH AMERICAN INSURANCE
COMPANY,
21 |
22 |              Cross-Respondent
23 |
24 |      Respondent/Cross-Claimant, Ablest, Inc. ("Ablest") alleges against Claimant/Cross

25 | Respondent Zurich American Insurance Company ("Zurich") as follows:

26 |      Ablest procured policies of workers' compensation insurance from Zurich with annual policy

27 | inception dates of January 1, 1997, January 1, 1998, January 1, 1999, January 1, 2000, January 1, 2001,

28 |

-1-
FIRST-AMENDED CROSS-DEMAND

January 1, 2002, January 1, 2003, January 1, 2004, January 1, 2005, and January 1, 2006 (collectively referred to herein as "WC Policies").

The WC Policies covered workers' compensation claims throughout the United States and required Ablest to pay a deductible on claims made under said policy up to the first $250,000 for each person and per accident ($500,000 on the January 1, 2006 Policy). These are what are known in the industry as "Large Deductible" policies. Large Deductible policies are potentially attractive to employers like Ablest because the premium paid to the insurer is substantially less than with more traditional forms of insurance (*i.e.*, a guaranteed cost program) in which the insurer pays all claims.

Under Ablest's Large Deductible WC Policies, amounts paid on claims under the deductible amount are paid by Zurich, but reimbursed by Ablest by way of a deposit account required by and maintained by Zurich. Any amounts paid on claims up to the deductible amount on the WC Policies, therefore, are Ablest's money. Zurich billed and continues to bill Ablest monthly and/or quarterly for these amounts. As a result of this relationship, Zurich stands in Ablest's shoes as its agent with regard to each claim made under the WC Policies. Furthermore, unlike any other type of insurance policy, the reserves that workers' compensation insurance carriers, such as Zurich, place on each individual claim, the amount paid out under a claim, and the manner in which a carrier handles and administers the claim, inexorably controls the amount Ablest is required to pay in premiums to Zurich and other subsequent carriers.

Zurich failed to meet its basic obligation to perform its contractual duties to Ablest under the WC Policies in a reasonable manner. As set forth in Section C of the WC Policies, the WC Policies committed the defense of claims to Zurich exclusively, and Ablest had neither the expectation nor the right to defend itself. The WC Policies expressly and affirmatively impose on Zurich the duty to defend Ablest against claims for workers compensation benefits due under the workers' compensation law brought by its employees, and to pay only those claims for bodily injury that were actually caused or aggravated by the conditions of the claimants' employment. When invoked, the duty to defend contractually obligates the insurer to protect the interests of its insured by providing an unqualified defense. Zurich failed to do so.

-2-

FIRST-AMENDED CROSS-DEMAND

Throughout Ablest's relationship with Zurich, Zurich engaged in several egregious acts and/or omissions in contravention of its express duties and obligations under the WC Policies. Zurich's failure to provide its services under the WC Policies in a reasonable manner constitute conscious disregard of its basic contractual obligations to perform reasonably and a material breach of contract. Zurich's conduct in this regard includes, but is not limited to, the following:

A.   Failing and/or refusing to provide claims review in a timely manner;

B.   Failing and/or refusing to accurately set reserves;

C.   Failing and/or refusing to reasonably adjust reserves in a timely manner;

D.   Failing and/or refusing to properly investigate claims;

E.   Failing and/or refusing to properly settle claims;

F.   Failing and/or refusing to properly defend claims;

G.   Failing and/or refusing to properly manage claims;

H.   Paying excessive sums of money to claimants who were not entitled to such amounts;

I.   Paying sums of money to and/or on behalf of claimants who did not suffer compensable work injuries;

J.   Paying sums of money to and/or on behalf of claimants who were not injured in the course and scope of employment;

K.   Ignoring credible medical evidence from reputable defense doctors;

L.   Making payments and/or settlement decisions based on unreliable medical evidence.

As a result of engaging in the conduct described herein, Zurich has denied Ablest the benefits of the WC Policies. Zurich's actions and/or inactions described above demonstrate its pattern and practice of mishandling Ablest's claims in a conscious disregard of its express obligations under the WC Policies, all to Ablest's financial detriment and Zurich's profit. As a direct result of Zurich's failure to discharge its express contractual obligations under the WC Policies in a reasonable manner, Ablest has had to pay, and continues to have to pay, excessive amounts to Zurich pursuant to the WC Policies.

1    As a result of Zurich's conduct, Ablest has suffered general and special damages in an amount
2  yet to be determined, which include having to pay and being forced to pay unnecessarily increased
3  premiums as well as increased losses, and have also had to incur expenses and costs to hire outside
4  consultants, experts and attorneys to assist Ablest in obtaining all of the above benefits under the WC
5  Policies.

6    As described herein, Ablest's claims arise out of the WC Policies, which do not contain a
7  venue or choice of law provision.  As such, Ablest does not agree or stipulate that New York law
8  applies to its claims.

9    Finally, Ablest contends that it did properly bring to Zurich's attention many of these
10 problems, in that there was a claims review before Zurich filed its Arbitration Demand, whereby
11 Respondent pointed out and alerted Zurich to many of the breaches asserted in this Demand.  Exhibit
12 "A" is a series of e-mails, the first dated July 14, 2008, setting up the claims review, and the next e-
13 mail expresses the views of Respondent's Risk Manager following the review. Accordingly, Zurich is
14 well-aware of Respondent's grievances.

15    WHEREFORE, Ablest will request from the arbitration panel an award against Zurich for
16 general and special damages in a sum in excess of $5,000,000 to be proven at arbitration, with pre-
17 judgment and post-judgment interest thereon at the maximum rate permitted by law, for recovery of all
18 attorneys' and consultants' fees, costs and expenses incurred to pursue and obtain the benefits of the
19 WC Policies, and for such other and further relief as the arbitrator deems just and proper.

20

21 DATED: June 19, 2009            ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP

22

23

24                            By: _____
25                                 Nicholas P. Roxborough
                                 Michael B. Adreani
26                                 Michael L. Phillips
                                 Attorneys for Respondent/Counter-Claimant
27                                 Ablest, Inc. and Respondent Select Staffing
                                 Services, Inc.

28

-4-

FIRST-AMENDED CROSS-DEMAND

# EXHIBIT "A"

Page 1 of 4

From: Fred Pachon
Sent: Wednesday, July 16, 2008 8:44 AM
To: Fred Pachon
Subject: FW: Ablest/Zurich Claim review 7/16/08 9 am PST

Importance: High

-----Original Message-----
From: Rosa Chavez
Sent: Monday, July 14, 2008 2:18 PM
To: Fred Pachon; Angel Alonso; Stephanie Craig; Yeney Crespo
Cc: 'Rose Gayadin'; 'Chris Curcio Smith'; 'William Salvatore'
Subject: Ablest/Zurich Claim review 7/16/08 9 am PST
Importance: High

Hello everyone:

As time is of the essence with claim review set for day after tomorrow, I am taking the lead to ensure we are ready and prepared to go forward with claim review as opposed to patching all the bits and pieces received from Zurich.

- 7/16/08 9 am PST; call in number 888-498-0111
- Claim review schedule. As I have not received updated roster to include claimant names as requested earlier this morning, please refer to list below to identify the claimant name by claim number
- Case summaries received attached hereto

| Claim No. | DOI | Claimant name |
|---|---|---|
| | | McKnight, |
| 2450068946 | 20011019 | Gale |
| | | Anderson, |
| 2450074939 | 20031111 | Artavia |
| 2450079721 | 20050316 | Lindenau, Margaret |
| | | Adams, |
| 2450083784 | 20050928 | Rodney |
| 2450081036 | 20050512 | Milian, Jesus |
| 2640152712 | 20031106 | Dunn, Jane |
| | | Johnson, |
| 2670007324 | 20010308 | William |
| 2450092387 | 20081219 | Welch, Judy |
| 2450087438 | 20060411 | Bryant, Keith |
| 2230059751 | 18921006 | Foster, Charles |
| 7230000788 | 19940327 | Elliott, Alvin Joe |
| | | Pineda, |
| 2800049775 | 20060722 | Inocencio |
| 2840054344 | 20040709 | Briones, Julio |
| | | Calbert, Kimberly |
| 2510045775 | 20051121 | M |
| 2800049562 | 20060601 | Dillard, Tony |
| 2800050820 | 20060826 | Milligan, Tara |
| 2840088780 | 20060428 | Cooper, Erik A |
| | | Montano, |
| 2800051422 | 20061009 | Bertha |
| | | Herrera, |
| 2510050712 | 20060728 | Edgar |
| | | Freeman, Wilke |
| 2800045973 | 20051216 | Elvis |
| | | Childers, Bobby |
| 2800006692 | 20000123 | J |

Yeney:   Please upload case summaries in Injury Trac.

Thank you.

Rosa Chavez, WCCP
*Workers' Compensation Claims Manager*

*The Select Family of Staffing Companies*
*Please note New Address & Fax number. Please update your records accordingly.  Thank you.*
*675 Brea Canyon Road, Suite 1*
*Walnut, CA  91789*
*Tel 949.425.7778*
*WCHO: 800-498-8367*
*Mobile: 949-241-3975*
*NEW Fax 909-594-2646*
*rosa.chavez@selectstaffing.com*

www.selectstaffing.com
*Select Staffing*
*Remedy Intelligent Staffing*
*RemX Specialty Staffing*

From: Rosa Chavez
Sent: Monday, July 14, 2008 9:58 AM
To: 'Rose Gayadin'; 'Chris Curcio Smith'; 'William Salvatore'
Subject: Could you please add claimant name on your schedule? & Follow up on request for loss run reports; FW: 7/16/08 Claim Review

Good morning:

**From:** Fred Pachon
**Sent:** Thursday, July 17, 2008 4:33 PM
**To:** Stephen Biersmith Steve Sorensen
**Cc:** ; Jeff Mitchell
**Subject:** Zurich / Abiest: File review ....Arbitration Demand

Steve:

I conducted the Zurich File review yesterday. This included the review of the last 25 cases remaining open (please see attachment).  As expected these files revealed substantial shortfalls and mismanagement at different levels. Several adjusters from different parts of the county presented the cases. The review was moderated by Bill Salvatore (account executive for Zurich). Needles to say he witnessed over and over again, as I outlined for him and his different adjusters the many areas that failed to meet best practices expectations. I think that a more through review of other files (now closed), will reveal more of the same. Clearly this creates the question of how much is the mismanagement of these claims worth. Based on the size of the Abiest program, it is clear to me that It is worth several million. These are my initial headlines/trigger points:

1. Most of the adjusters presenting the cases/files had adopted the files from prior adjuster handling the cases. It was evident that they did not know the files, and where going along as dictated by the system, doctors or lawyers. No strategy was in play. These cases have been neglected and treated as a run-off book of claims. Clearly not the best adjuster or attention is given to files in this category.
2. Amount of investigation of the cases reviewed was non-existent, limited or failed to contain essential follow up.
3. No medical case management instituted. Many of these cases are old and to some degree serious injuries. None of these cases had a medical case manager involved. This is truly contrary to medical case management best practices.
4. Multiple surgeries approved without sound reasoning or at least peer review opinions (second opinions). In one case, it was evident to me that the doctor had most likely committed malpractice and incurred huge medical expenses without any positive results.
5. Many cases did not have defense counsel, and in my opinion appointment to well verse lawyers would have had much better results. It appears to me that Zurich used in-house paralegals and counsel to handle several parts of the claims/legal process. Clearly this creates lack of continuity and strategy.
6. Several cases went unattended or worked on for several months. There was one case that fell of diary for over 12 months. The adjuster indicated that during a transition process, the file was simply not assigned to anyone... Clearly this is a huge red flag.
7. Some cases revealed huge defense legal charges. One was in exceeds of $ 50,000 and no real benefit was achieved. It was evident to me that the adjuster were not directing the lawyers and watching their legal

fees.

8. In couple files subrogation was evident, but not identified or adressed.
9. In many of the cases the adjuster failed identify and apply apportionment of shared liability based on Cumulative trauma claims.
10. Wrong TTD rates were paid. Calculations were wrong, or they failed to secure the proper wage information.
11. I observed that many claims were accepted without investigation. Red flags were evident, but the carriers simply decided to accept the cases.
12. I observed poor application of the law at different levels.
13. I observed that in every case the carrier failed to continue to investigate the claim or work on it... They simply continued to pay benefits without a challenge to the worker, medical provider or attorneys
14. During the file review, we developed sound strategy and plan of action moving forward. Some of the items suggested should have been in place a long time ago. We will see if the follow through with the setforth plan of action.

Fred

-----Original Message-----
**From:** Whitmer, Steven [mailto:SWhitmer@lockelord.com]
**Sent:** Thursday, July 17, 2008 2:22 PM
**To:** Stephen Biersmith
**Cc:** Fred Pachon; Steve Sorensen
**Subject:** RE: Zurich / Ablest: Arbitration Demand

Stephen,

I emailed those to you yesterday.  Perhaps they went into your spam filter.  I will email them to you again in a few minutes – please let me know if you do not receive them.  Thanks.

Regards, Steve

Steven T. Whitmer
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-1869   Telephone
(312) 896-6569   Facsimile
swhitmer@lockelord.com
www.lockelord.com

Atlanta | Austin | Boston | Chicago | Dallas | Houston | London | Los Angeles | New Orleans | New York | Sacramento | Washington DC

**From:** Stephen Biersmith [mailto:Stephen.Biersmith@selectstaffing.com]
**Sent:** Thursday, July 17, 2008 4:18 PM
**To:** Whitmer, Steven
**Cc:** Fred Pachon; Steve Sorensen
**Subject:** RE: Zurich / Ablest: Arbitration Demand

Steven:

As a follow-up to our call yesterday, you were going to send me the past invoices.

Thanks

<div align="center">PROOF OF SERVICE</div>

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF LOS ANGELES      )

    I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 5820 Canoga Avenue, Suite 250, Woodland Hills, California 91367.

    On June 19, 2009, I served the foregoing document described as **FIRST-AMENDED CROSS-DEMAND**, on the interested parties in this action by placing the original / a true copy thereof enclosed in (a) sealed envelope(s) addressed as follows:

<div align="center">[SEE ATTACHED MAILING LIST]</div>

☒    **BY EMAIL:** I caused such documents listed above to be transmitted via e-mail to the number(s) set forth above.

☒    **STATE:** I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 19, 2009, in the City of Woodland Hills, California.

                                                                 LOURDES CASAS

## SERVICE LIST

Judge Douglas M. Moore, Jr.
dmmoore@gte.net
321 San Anselmo Avenue
San Anselmo, CA 94960

Kimberly L. Emerson
AMERICAN ARBITRATION ASSOCIATION
Emersonk@adr.org

Katherine L. Billingham, Esq.
kathy@kbillingham.com
10803 Portside Ct.
Indianapolis, IN 46236

Timothy M. Yessman
tyessman@avalonconsultingllc.com
188 BEAUMONTE WAY
BRIDGEWATER, NJ. 08807

Steven Whitmer, Esq.
LOCKE LORD BISSELL & LIDELL, LLP
swhitmer@lockelord.com

Meredith V. Hattendorf, Esq.
LOCKE LORD BISSELL & LIDELL, LLP
mhattendorf@lockelord.com

AMERICAN ARBITRATION ASSOCIATION
In the Matter of the Arbitration Between:

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY ("Zurich"),<br><br>        Claimant,<br><br>       v.<br><br>ABLEST INC., ABLEST SERVICE CORP. and KOOSHAREM CORPORATION *dba* SELECT STAFFING, INC. ("Respondents"),<br><br>        Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  AAA No: 51 195 Y 00901 08<br><br>Panel Members:<br><br>Katherine L. Billingham (Umpire)<br>Timothy M. Yessman<br>Judge Douglas M. Moore, Jr. |

## PRE-HEARING SECURITY INTERIM ORDER

This matter came before the Panel for hearing on June 11, 2009 in Chicago, Illinois, and again on June 19, 2009 and July 9, 2009 (by phone) upon Zurich's Motion for Pre-Hearing Security. The Panel, upon review of the parties' briefs and the exhibits and authorities attached thereto, hearing arguments of counsel and being otherwise fully advised in the premises, hereby enters the following Pre-Hearing Security Interim Order:

1.     By September 20, 2009, Respondents shall post a clean, unconditional and irrevocable Letter of Credit in the amount of $1,100,000 in favor of Zurich as pre-hearing security for this arbitration. The Letter of Credit shall state that the issuing bank will provide Zurich's outside counsel for this matter with written notice, via facsimile and registered mail, at least 60 days prior to any attempt by the bank to terminate the Letter of Credit.

2.     By September 21, 2009, Respondents shall send written confirmation to the Panel and counsel for Zurich confirming that Respondents timely posted the Letter of Credit as required by this Interim Order.

3.     By September 22, 2009, Respondents shall provide the original Letter of Credit to counsel for Zurich, which will hold the original Letter of Credit during the pendency of this arbitration.

4.    Zurich may not draw on the LOC unless and until it is appropriate following the final decision on the merits of the case by the Panel and after first obtaining a written order from the Panel authorizing Zurich to draw on the LOC.

5.    This Interim Order may be confirmed by a Court of competent jurisdiction.

**IT IS SO ORDERED.**
**Dated:  September 10, 2009**

For the Panel,

*Katherine L. Billingham*
Katherine L. Billingham,
Umpire

## Attachment 10(c)(2)

The Arbitration Panel's Interim Order should be vacated because the arbitrators exceeded their powers and authority.  The Arbitration Panel lacked the authority and jurisdiction to order Select and/or Ablest to post collateral pursuant to the Retrospective Premium Agreements or the Incurred Deductible Agreement because no dispute regarding the collateral provision of these agreements was ripe for consideration because at no time to date has such an issue been properly presented to the Arbitration Panel for resolution.

In addition, the Interim Order demonstrates a manifest disregard of the law because (1) the Arbitration Panel failed to acknowledge Zurich's election to initiate arbitration proceedings as a waiver of its right to assert its rights as they pertain to collateral under the Retrospective Premium Agreements, (2) the Arbitration Panel failed to give due consideration to Ablest's contractual right to offset under both the Retrospective Premium Agreements and the Incurred Deductible Agreement, and (3) the Arbitration Panel failed to require Zurich to meet its threshold burden of establishing a likelihood of success on the merits before imposing the drastic remedy of requiring Select and/or Ablest to post pre-hearing security.  For these reasons the Interim Order should be vacated.

# PROOF OF SERVICE

STATE OF CALIFORNIA              )
                                 ) ss.
COUNTY OF LOS ANGELES            )

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 5820 Canoga Avenue, Suite 250, Woodland Hills, California 91367.

On September 22, 2009, I served the foregoing document described as **PETITION TO VACATE CONTRACTUAL ARBITRATION AWARD,** on the interested parties in this action by placing the original / a true copy thereof enclosed in (a) sealed envelope(s) addressed as follows:

### [SEE ATTACHED MAILING LIST]

☒   **BY U.S. MAIL:** I placed a true copy of the foregoing document in sealed envelopes individually addressed to each of the parties listed on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒   **BY EMAIL:** I caused such documents listed above to be transmitted via e-mail to the number(s) set forth above.

☒   **STATE:** I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 22, 2009, in the City of Woodland Hills, California.

_____
ELIA RAMIREZ

- 1 -

## SERVICE LIST

1

2
Steven T. Whitmer, Esq.
3
LOCKE LORD BISSELL & LIDELL, LLP
111 South Wacker Drive
4
Chicago, IL. 60606
swhitmer@lockelord.com
5

6
Meredith V. Hattendorf, Esq.
7
LOCKE LORD BISSELL & LIDELL, LLP
111 South Wacker Drive
8
Chicago, IL. 60606
mhattendorf@lockelord.com
9

10
Zurich American Insurance Company
11
Administrative Office
1400 American Lane
12
Schaumburg, Illinois, 60196-1056
Attention: Assistant General Counsel
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

Drew E. Pomerance, Esq., State Bar No. 101239
dep@rpnalaw.com
Michael L. Phillips, Esq. State Bar No. 232978
mlp@rpnalaw.com
**ROXBOROUGH, POMERANCE,**
**NYE & ADREANI LLP**
5820 Canoga Avenue, Suite 205
Woodland Hills, California 91367
Telephone:  (818) 992-9999
Facsimile:   (818) 992-9991

Attorneys for Plaintiff,
KOOSHAREM CORPORATION, a California Corporation
dba SELECT PERSONNEL SERVICES

BY
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
2009 SEP 29  PM 2:30
FILED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOOSHAREM CORPORATION, a California Corporation dba SELECT PERSONNEL SERVICES, | Case No.  CV09-06752 AHM (Ex) |
| | The Honorable A. Howard Matz |
| Plaintiffs, | **FIRST-AMENDED COMPLAINT FOR:** |
| vs. | **1.  BREACH OF CONTRACT;** |
| ZURICH SERVICES CORPORATION, and DOES 1 through 20, inclusive, | **2.  TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, KOOSHAREM CORPORATION, a California Corporation dba SELECT PERSONNEL SERVICES, and alleges against Defendant ZURICH SERVICES CORPORATION and DOES 1 through 20, inclusive, as follows:

### GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

1.      Plaintiff KOOSHAREM CORPORATION, a California Corporation dba SELECT PERSONNEL SERVICES ("Select"), is a California corporation, and at all times relevant to this action was, licensed to do business in the State of

- 1 -
FIRST AMENDED COMPLAINT

1   California, with its principal place of business in the County of Santa Barbara, and is
2   engaged in the business of providing temporary employment, staffing, and
3   recruitment services.

4        2.      Plaintiff is informed and believes, and thereon alleges, that Defendant
5   ZURICH SERVICES CORPORATION (hereinafter referred to as "ZSC") is an
6   Illinois corporation.

7        3.      Plaintiff is unaware of the true names and capacities of those
8   Defendants sued as DOES 1 through 20, and they are thus sued under such fictitious
9   names.  Plaintiff is informed and believes, and thereon alleges, that each of these
10  fictitiously-named Defendants in some manner proximately caused the damages to
11  Plaintiff alleged herein.  Plaintiff will seek leave of court to amend this complaint to
12  allege these Defendants' true names and capacities when ascertained as well as other
13  causes of action subsequently discovered.

14       4.      Plaintiff is informed and believes, and thereon allege, that in
15  performing the acts alleged herein, Defendants, and each of them, were acting as the
16  agents, servants, joint venturers, trustees, partners, alter-egos, affiliates, contractors
17  and/or employees of every other Defendant, and were acting within the course and
18  scope of such agency, contract, service or employment.  Plaintiffs are informed and
19  believe, and thereon allege, that every Defendant authorized and ratified the acts of
20  every other Defendant.

21       5.      Ablest, Inc. ("Ablest") procured two policies of workers' compensation
22  insurance from Zurich American Insurance Company with the policy period of
23  January 1, 2006 to January 1, 2007.  These policies are jointly referred to herein as
24  the "WC Policies".  Defendant ZSC was selected to provide claims adjusting and
25  administrative services and on or about January 1, 2006, Ablest and ZSC entered
26  into the Claim Service Contract attached hereto as Exhibit "A" and referred to
27  herein as "Claim Service Contract".
28  ///

6.     For purposes of its rights as they pertain to the Claim Service Contract, Plaintiff is the successor-in-interest to Ablest.  Select and Ablest are sometimes collectively referred to herein as "Select" or "Plaintiff".

**ZSC MISHANDLED ABLEST'S WORKERS' COMPENSATION CLAIMS**

7.     The WC Policies covered workers' compensation claims throughout the United States and required Ablest to pay a deductible on claims made under said policy up to the first $500,000 for each person and per accident, and a program aggregate limit of $7,750,000.  These are what are known in the industry as "Large Deductible" policies.  Large Deductible policies are potentially attractive to employers like Ablest because the premium paid to the insurer is substantially less than with more traditional forms of insurance (*i.e.,* a guaranteed cost program) in which the insurer pays all claims.  Under Ablest's Large Deductible WC Policies, amounts paid on claims under the deductible amount are paid by ZSC, but reimbursed by Ablest by way of a deposit account required by and maintained by ZSC.  Any amounts paid on claims up to the deductible amount on the WC Policies, therefore, are Ablest's money.

8.     Plaintiff is informed and believes and thereon alleges that by virtue of the Claim Service Contract, ZSC stands in Ablest's shoes as their agent with respect to each claim made under the WC Policies.  Plaintiff further alleges that a special relationship exists between the parties akin to a fiduciary duty, and that implied in this relationship is a covenant that neither party may act to deprive the other of the benefits of the contract.

9.     Plaintiff is informed and believes, and thereon alleges, that ZSC failed to defend and investigate and generally mishandled, workers' compensation claims made under the WC Policies in such a way as to artificially increase Ablest's payments for mishandled claims.

///

///

- 3 -

## FIRST CAUSE OF ACTION

### (Breach of Contract Against All Defendants)

10.    Plaintiff incorporates herein by this reference all of the allegations contained in Paragraphs 1 through 9 hereof as if set forth in full in this Cause of Action.

11.    Plaintiff is informed and believes, and thereon alleges, that ZSC breached the terms of the Claim Services Contract by failing to (1) review all claims and loss reports to determine which of those are Qualified claims, (2) adequately investigate claims and losses, (3) create and maintain an adequate claim file which was to be made available to Ablest, (4) furnish Ablest with adequate claim reports, (5) provide a claim coordinator for the servicing of the Claim Services Contract, and (6) retain and supervise counsel, as reasonably necessary and appropriate.

12.    Plaintiff has performed all terms of the Claim Services Contract, except for those terms where performance excused by ZSC's misconduct.

13.    As a result of ZSC's breach of the Claim Services Contract, Plaintiff has suffered losses in an amount within the jurisdictional limit of this Court.  In addition, pursuant to the Claim Services Contract, Plaintiff is entitled to collect all costs and expenses, including attorneys' fees incurred in connection with the collection or enforcement of any obligation owed under the Claim Services Contract.  When Plaintiff ascertains the total amount of its damages, Plaintiff will seek leave of Court to allow amendment to this Complaint setting forth such total amount and loss.

## SECOND CAUSE OF ACTION

### (Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

14.    Plaintiff incorporates herein by this reference as though fully set forth in this Cause of Action each and every allegation contained in Paragraphs 1 through 13, inclusive, of this Complaint as if set forth herein in full.

15.    The covenant of good faith and fair dealing is implied by law in every contract to protect each party's right to receive the benefits of the contract. As a result of engaging in the conduct set forth in this Complaint, ZSC has denied Plaintiff the benefit of the Claim Services Contract and thus breached the implied covenant of good faith and fair dealing by having engaged in, and continuing to engage in, the acts described in the preceding paragraphs and the following acts and/or omissions which are implied obligations under the Claim Service Contract:

    a.  ZSC raised reserves in amounts unreasonably disproportionate to expected losses and/or then overpaid claims;

    b.  ZSC ignored Ablest's requests and/or itself failed to undertake prompt or reasonable investigation of claims to determine whether they were compensable and/or ignored the results of such investigations;

    c.  ZSC failed to undertake subrosa, activity checks and other mechanisms to ensure that claimants' injuries were legitimate and/or not extended beyond the reasonable healing period;

    d.  ZSC failed to properly manage claimants' medical treatment, resulting in ZSC often just paying benefits without appropriate scrutiny; and

    e.  ZSC failed to provide periodic or meaningful claim reviews to Ablest.

16.    Plaintiff is informed and believes, and thereon alleges, that ZSC has committed further acts and/or omissions in violation of its duty of good faith and fair dealing. These acts and/or omissions are presently unknown to Plaintiff and may be discovered by Plaintiff during the course of this litigation.

17.    As a proximate result of ZSC's conduct, as described hereinabove, Ablest has suffered general and special damages as described hereinabove. Additionally, ZSC's conduct, as described hereinabove, has been highly prejudicial

- 5 -

1  to Plaintiff's business operations, including, but not limited to, causing Plaintiff to

2  suffer loss of business opportunities, all in a sum to be established at the time of

3  trial.

4        18.    Plaintiff further alleges that the conduct of ZSC set forth herein was

5  carried out in bad faith, was malicious, fraudulent and oppressive, and evidences a

6  complete disregard for Ablest's interests and intent to injure, harass, vex and annoy

7  Ablest.  Under the circumstances described, Plaintiff alleges that ZSC's conduct

8  constitutes "despicable conduct" as defined in California *Civil Code* §3294 and

9  established common law, thus entitling Plaintiff to recover punitive damages in an

10  amount appropriate to punish or to set an example of Defendants, and each of them.

11  Plaintiff further alleges that ZSC at all times acted through its officers, directors and

12  employees and that they had advance knowledge of the damage being caused to

13  Plaintiff and that ZSC approved, ordered, instructed, supervised and controlled the

14  conduct of their officers, directors and employees such as to constitute a ratification

15  of the conduct of said officers, directors and employees.  Accordingly, pursuant to

16  the doctrine of Respondent Superior, ZSC is liable for punitive damages as prayed

17  for herein.

18        **WHEREFORE**, Plaintiff prays for judgment as follows:

19              **ON THE FIRST CAUSE OF ACTION**

20        1.    For general and special damages against all Defendants in a sum to be

21  proven at trial with pre-judgment and post-judgment interest thereon at the

22  maximum rate permitted by law;

23        2.    For recovery of all attorneys' and consultants' fees, costs and expenses

24  incurred to pursue and obtain the benefits of the Claim Services Contract.

25              **ON THE SECOND CAUSE OF ACTION**

26        3.    For general and special damages against all Defendants in a sum to be

27  proven at trial with pre-judgment and post-judgment interest thereon at the

28  maximum rate permitted by law;

1    4.    For punitive and exemplary damages in an amount appropriate to

2  punish or set an example of Defendants.

3                      **ON ALL CAUSES OF ACTION**

4    5.    For all costs incurred by Plaintiff to date and to be incurred by Plaintiff

5  hereafter in connection with this action; and

6    6.    For such other and further relief as the court deems just and proper.

7

8  DATED:  September 28, 2009        ROXBOROUGH, POMERANCE, NYE &
                                     ADREANI LLP
9

10

11                                   By: _____
12                                       DREW E. POMERANCE
                                         MICHAEL L. PHILLIPS
13                                       Attorneys for Plaintiff KOOSHAREM
                                         CORPORATION, a California
14                                       Corporation dba SELECT
                                         PERSONNEL SERVICES
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

# 2009 FOR PROFIT CORPORATION ANNUAL REPORT

**FILED**
Apr 29, 2009
**Secretary of State**

DOCUMENT# F01000001102

**Entity Name:** ABLEST INC.

| Current Principal Place of Business: | New Principal Place of Business: |
|---|---|
| 1511 NORTH WESTSHORE BLVD<br>SUITE 900<br>TAMPA, FL  33607 | 3820 STATE ST.<br>SANTA BARBARA, CA  93105 |
| **Current Mailing Address:** | **New Mailing Address:** |
| 1511 NORTH WESTSHORE BLVD<br>SUITE 900<br>TAMPA, FL  33607 | 3820 STATE ST.<br>SANTA BARBARA, CA  93105 |

FEI Number: 65-0978462    FEI Number Applied For ( )    FEI Number Not Applicable ( )    Certificate of Status Desired ( )

**Name and Address of Current Registered Agent:**     **Name and Address of New Registered Agent:**

CORPORATE CREATIONS NETWORK INC.
11380 PROSPERITY FARMS RD #221E
PALM BEACH GARDENS, FL  334102525  US

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

_____  Electronic Signature of Registered Agent _____ Date _____

Election Campaign Financing Trust Fund Contribution ( ).

**OFFICERS AND DIRECTORS:**            **ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS:**

| Title: | CCEO        ( ) Delete | Title: | ( ) Change  ( ) Addition |
|---|---|---|---|
| Name: | SORENSEN, STEVEN | Name: | |
| Address: | 3820 STATE ST | Address: | |
| City-St-Zip: | SANTA BARBARA, CA  93105 | City-St-Zip: | |

| Title: | CFO        ( ) Delete | Title: | CFO        (X) Change  ( ) Addition |
|---|---|---|---|
| Name: | MITCHELL, JEFF | Name: | MITCHELL, JEFF |
| Address: | 3820 STATEST | Address: | 3820 STATE ST |
| City-St-Zip: | SANTA BARBARA, CA  93105 | City-St-Zip: | SANTA BARBARA, CA  93105 |

| Title: | P        ( ) Delete | Title: | ( ) Change  ( ) Addition |
|---|---|---|---|
| Name: | SORENSEN, PAUL | Name: | |
| Address: | 3820 STATE ST | Address: | |
| City-St-Zip: | SANTA BARBARA, CA  93105 | City-St-Zip: | |

| Title: | COO        ( ) Delete | Title: | ( ) Change  ( ) Addition |
|---|---|---|---|
| Name: | MCCOMB, MARK | Name: | |
| Address: | 3820 STATE ST | Address: | |
| City-St-Zip: | SANTA BARBARA, CA  93105 | City-St-Zip: | |

| Title: | CAO        ( ) Delete | Title: | ( ) Change  ( ) Addition |
|---|---|---|---|
| Name: | HULME, RICH | Name: | |
| Address: | 3820 STATE ST | Address: | |
| City-St-Zip: | SANTA BARBARA, CA  93105 | City-St-Zip: | |

| Title: | CSO        ( ) Delete | Title: | ( ) Change  ( ) Addition |
|---|---|---|---|
| Name: | PORTER, MELISSA | Name: | |
| Address: | 3820 STATE ST | Address: | |
| City-St-Zip: | SANTA BARBARA, CA  93105 | City-St-Zip: | |

I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Chapter 119, Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with an address, with all other like empowered.

SIGNATURE:  JEFF MITCHELL                              CFO                04/29/2009
_____  Electronic Signature of Signing Officer or Director _____ Date _____

F0100000 1102

## TRANSMITTAL LETTER

TO:   Registration Section
      Division of Corporations

      B 51284

SUBJECT: _____ ABLEST  INC _____
              (Name of corporation – must include suffix)

Dear Sir or Madam:

The enclosed "Application by Foreign Corporation for Authorization to Transact Business in Florida", "Certificate of Existence", and check are submitted to register the above referenced foreign corporation to transact business in Florida.

Please return all correspondence concerning this matter to the following:

_____ ROBBIE   JORDAN _____
              (Name of Person)

_____ ABLEST   INC _____
              (Firm/Company)

_____ 1901  ULMERTON  ROAD. # 300 _____
              (Address)

_____ CLEARWATER, FL  33762 _____
              (City/State and Zip code)

                              300003677473---2
                              -02/13/01--01094--001
                              *****70.00

For further information concerning this matter, please call:

_____ Robbie Jordan _____ at ( 727 ) 299-1200   EXT. 319
     (Name of Person)          (Area Code & Daytime Telephone Number)

                                        W01-3829

**STREET ADDRESS:**
Registration Section
Division of Corporations
409 E. Gaines St.
Tallahassee, FL 32399

**MAILING ADDRESS:**
Registration Section
Division of Corporations
P.O. Box 6327
Tallahassee, FL 32314

SECRETARY OF STATE
TALLAHASSEE, FLORIDA
00 FEB 27 PH 8:
FILED

Enclosed is a check for the following amount:

☒ $70.00 Filing Fee   ☐ $78.75 Filing Fee &   ☐ $78.75 Filing Fee &   ☐ $87.50 Filing Fee
                          Certificate of Status       Certified Copy           Certificate of Status &
                                                                                Certified Copy

                                        ynth
                                        2/27



FLORIDA DEPARTMENT OF STATE
Katherine Harris
Secretary of State

February 19, 2001

ROBBIE JORDAN
1901 ULMERTON RD, #300
CLEARWATER, FL 33762

SUBJECT: ABLEST, INC.
Ref. Number: W01000003829

We have received your document for ABLEST, INC. and your check(s) totaling $70.00. However, the document has not been filed and is being retained in this office for the following:

A certificate of existence or a certificate of good standing, dated no more than 90 days prior to the delivery of the application to the Department of State, duly authenticated by the secretary of state or other official having custody of the records in the jurisdiction under the laws of which it is incorporated/organized, must be submitted to this office. A translation of the certificate under oath of the translator must be attached to a certificate which is in a language other than the English language. A photocopy of this certificate is not acceptable.

Please return your document, along with a copy of this letter, within 60 days or your filing will be considered abandoned.

If you have any questions concerning the filing of your document, please call (850) 487-6097.

Michael Mays
Document Specialist

Letter Number: 501A00010315

Division of Corporations - P.O. BOX 6327 -Tallahassee, Florida 32314

## APPLICATION BY FOREIGN CORPORATION FOR AUTHORIZATION TO TRANSACT BUSINESS IN FLORIDA

*IN COMPLIANCE WITH SECTION 607.1503, FLORIDA STATUTES, THE FOLLOWING IS SUBMITTED TO REGISTER A FOREIGN CORPORATION TO TRANSACT BUSINESS IN THE STATE OF FLORIDA.*

1. ___ABLEST INC.___
(Name of corporation; must include the word "INCORPORATED", "COMPANY", "CORPORATION" or words or abbreviations of like import in language as will clearly indicate that it is a corporation instead of a natural person or partnership if not so contained in the name at present.)

2. ___Delaware___
(State or country under the law of which it is incorporated)

3. ___65-0978462___
(FEI number, if applicable)

4. ___Feb. 3, 2000___
(Date of incorporation)

5. ___Perpetual___
(Duration: Year corp. will cease to exist or "perpetual")

6. ___Upon Qualification___
(Date first transacted business in Florida. If corporation has not transacted business in Florida, insert "upon qualification.")
(SEE SECTIONS 607.1501, 607.1502 and 817.155, F.S.)

7. ___1901 Ulmerton Road, #300, Clearwater, FL 33762___
(Principal office address)

___1901 Ulmerton Road, #300, Clearwater, FL 33762___
(Current mailing address)

8. ___Temporary Staffing Service___
(Purpose(s) of corporation authorized in home state or country to be carried out in state of Florida)

9. Name and <u>street address</u> of Florida registered agent: (P.O. Box or Mail Drop Box <u>NOT</u> acceptable)

Name: ___Corporation Service Company___

Office Address: ___1201 Hays Street, #105___

___Tallahassee___, Florida ___32301___
(City)                                  (Zip code)

10. **Registered agent's acceptance:**
*Having been named as registered agent and to accept service of process for the above stated corporation at the place designated in this application, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relative to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.*

_____
(Registered agent's signature)

11. Attached is a certificate of existence duly authenticated, not more than 90 days prior to delivery of this application to the Department of State, by the Secretary of State or other official having custody of corporate records in the jurisdiction under the law of which it is incorporated. ___Was mailed earlier.___

**12. Names and business addresses of officers and/or directors:**

**A. DIRECTORS**

Chairman: *See Attached*

Address: _____

_____

Vice Chairman: _____

Address: _____

_____

Director: _____

Address: _____

_____

Director: _____

Address: _____

_____

**B. OFFICERS**

President: *See Attached*

Address: _____

_____

Vice President: _____

Address: _____

_____

Secretary: _____

Address: _____

Treasurer: _____

Address: _____

**NOTE:** If necessary, you may attach an addendum to the application listing additional officers and/or directors.

13. _____
     (Signature of Chairman, Vice Chairman, or any officer listed in number 12 of the application)

14. MARK Kashmanian - TREASURER
     (Typed or printed name and capacity of person signing application)

**Ablest Inc.**                                        Federal ID # 65-098462

Board of Directors          11/99

| Name | SS # | Position and Office with Registrant | Position Since | Home Phone | Address |
|------|------|-------------------------------------|----------------|------------|---------|
| Charles H. Heist, III | 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 | Chairman of the Board | | 813-797-5816 | 22241 Alligator Creek Rd., Clearwater, FL 33765 |
| W. David Foster | 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 | Director | | 813-726-4042 | 3045 Braeloch Circle, Clearwater, FL 33761 |
| Charles F. Sharlau | 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 | Director | | | 1506 Sunset Place, Fayetville, AR 72701 |
| Ronald K Leirvik | 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 | Director | | | 7649 Glen Echo Lane, Gates Mills, OH 44040 |
| Richard W. Roberson | 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 | Director | | | Sand Dollar Partners, Inc. 26133 U.S. Hwy 19 N, Suite 306 Clearwater, FL 34623 |
| Donna R. Moore | 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 | Director | | | Ms. Donna Moore ** C/O Wagon Wheel PO Box 1728 Eureka, Montana 59917 |

Terms of office for each Director specified as one year from the previous Annual Shareholder meeting.  The current term is set to expire in May.

FILED
00 FEB 27 PM 8: 53
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

T:\OFFDIR-SS.DOC


Ablest Inc.
Ablest Service Corp.

Federal ID # 65-0978462
Federal ID # 22-2228945

OFFICERS as of            3/00

| Name | SS.# | Position and Office with Registrant | Position Since | Home Phone | Address |
|---|---|---|---|---|---|
| Charles H. Heist, III | 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 | Chairman of the Board | 1999 | 813-797-5816 | 22241 Alligator Creek Rd., Clearwater, FL 33765 |
| W. David Foster | 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 | Chief Executive Officer | 2000 | 813-726-4042 | 3045 Braeloch Circle, Clearwater, FL 33761 |
| Kurt R. Moore | 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 | President Chief Operating Officer | 2000 1999 | | 4815 Cheval Blvd. Lutz, FL 33549 |
| Mark P. Kashmanian | 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 | Secretary Treasurer Chief Accounting Officer | 2000 1996 | 727-944-5707 | 103 Silver Moss Lane Tarpon Springs, FL 34689 |
| Bill Appleton | | Asst. Secretary | 1999 | 513-929-3403 | 312 Walnut Street Suite 2650 Cincinnati, OH 45202 |

No expiration of terms specified for Officers

FILED
00 FEB 27 PM 8: 53
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

T:\OFFDIR-SS.DOC

*State of Delaware*

## Office of the Secretary of State

PAGE   1

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "ABLEST INC." AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF INCORPORATION, FILED THE THIRD DAY OF FEBRUARY, A.D. 2000, AT 4 O'CLOCK P.M.

CERTIFICATE OF MERGER, FILED THE THIRTEENTH DAY OF MARCH, A.D. 2000, AT 2 O'CLOCK P.M.

CERTIFICATE OF OWNERSHIP, FILED THE FIFTH DAY OF DECEMBER, A.D. 2000, AT 9 O'CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF OWNERSHIP IS THE FIRST DAY OF JANUARY, A.D. 2001, AT 12:01 O'CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID CORPORATION.

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

3170498   8100H

010043233

AUTHENTICATION: 0941171

DATE: 01-29-01

# EXHIBIT 4

1    LOCKE LORD BISSELL & LIDDELL LLP
     Conrad V. Sison (SBN: 217197)
2    csison@lockelord.com
     300 South Grand Avenue, Suite 2600
3    Los Angeles, California 90071
     Telephone: 213-485-1500
4    Facsimile: 213-485-1200

5    Attorneys for Defendant
     ZURICH AMERICAN INSURANCE COMPANY

6

7

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10    KOOSHAREM CORPORATION, a California )
11    Corporation, dba SELECT PERSONNEL )
     SERVICES, and ABLEST, INC.           )
12                                    )
13              Plaintiffs,     )
14                                    )
     v.                            )
15                                    )
16    ZURICH AMERICAN INSURANCE     )
     COMPANY,                      )
17                                    )
18              Defendant.     )

**DECLARATION OF BO GURSKY IN SUPPORT OF NOTICE OF REMOVAL**

19

20

21 _____ )

22

23      I, Bo Gursky, declare:

24

25        1.     I am a representative of Zurich American Insurance Company ("Zurich").

26    I am authorized by Zurich to make this declaration in support of Zurich's Notice of

27

28

                                   1
_____
                     DECLARATION OF BO GURSKY

1  Removal. I have personal knowledge of the matters set forth herein, and if called as
2  witness in this action, can and would testify competently thereto.

3       2.    Zurich's corporate headquarters and administrative center is located at
4  the Zurich Towers in Schaumburg, Illinois at 1400 American Lane.

5       3.    Zurich was incorporated in New York and has a statutory home office at
6  One Liberty Plaza, New York, New York.

7       4.    Attached as Exhibit A is a true and accurate copy of portions of Zurich's
8  annual statement for the 2008 year. The annual statement confirms: (1) Zurich's
9  main administrative office is located in Schaumburg, Illinois, (2) the primary location
10 of Zurich's books and records is Schaumburg, Illinois, (3) Zurich was incorporated
11 under the laws of New York, and (4) Zurich is domiciled in New York.

13     I declare under penalty of perjury that the foregoing is true and correct.

15     Executed on October 2, 2009, at Schaumburg, Illinois.

18     Bo Gursky

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

2

# EXHIBIT A

PROPERTY AND CASUALTY COMPANIES - ASSOCIATION EDITION

# ANNUAL STATEMENT

FOR THE YEAR ENDED DECEMBER 31, 2008
OF THE CONDITION AND AFFAIRS OF THE

## ZURICH AMERICAN INSURANCE COMPANY

NAIC Group Code __0212__ __0212__   NAIC Company Code __16535__   Employer's ID Number __36-4233459__
(Current)   (Prior)

Organized under the Laws of __New York__, State of Domicile or Port of Entry __New York__
Country of Domicile __United States of America__

Incorporated/Organized __06/03/1998__   Commenced Business __12/31/1998__

Statutory Home Office __One Liberty Plaza, 165 Broadway, 32nd Fl__   __New York, NY 10006__
(Street and Number)   (City or Town, State and Zip Code)

Main Administrative Office __1400 American Lane__
(Street and Number)

__Schaumburg, IL 60196-1056__   __847-605-6000__
(City or Town, State and Zip Code)   (Area Code) (Telephone Number)

Mail Address __1400 American Lane, Tower I, 19th Floor__   __Schaumburg, IL 60196-1056__
(Street and Number or P.O. Box)   (City or Town, State and Zip Code)

Primary Location of Books and Records __1400 American Lane__
(Street and Number)

__Schaumburg, IL 60196-1056__   __847-413-5048__
(City or Town, State and Zip Code)   (Area Code) (Telephone Number)

Internet Website Address __WWW.ZURICHNA.COM__

Statutory Statement Contact __Colleen M. Zitt__   __847-413-5048__
(Name)   (Area Code) (Telephone Number)

__colleen.zitt@zurichna.com__   __847-330-9718__
(E-mail Address)   (FAX Number)

### OFFICERS

President __Nancy Diane Mueller #__   Secretary __Dennis Francis Kerrigan Jr. #__
Treasurer __Barry Salowitz Paul__

### OTHER

| | | |
|---|---|---|
| Michael Thomas Foley (CEO) # | Thomas Andrew Bradley (EVP) | Timothy David Carter (EVP) |
| James Peter Connors (EVP) | Bob David Effinger Jr. (EVP) # | Martin Feuer (EVP) |
| Craig Jay Fundum (EVP) | Gary Steven Kaplan (EVP) | Seraina Maag (EVP) |
| Tina Gaye Maille (EVP) | John Clarence Parker (EVP) # | Steven Price Rand (EVP) |
| Robert Harold Rheel (EVP) # | Vibhu Ranjan Sharma (EVP) # | Vincent Christopher Tizzio (EVP) # |
| Jane Ann Tutoki (EVP) | | |

### DIRECTORS OR TRUSTEES

| | | |
|---|---|---|
| Michael Thomas Foley (Chairman) # | Thomas Andrew Bradley | Timothy David Carter |
| Martin Feuer | Craig Jay Fundum | Dennis Francis Kerrigan Jr. # |
| Seraina Maag | Nancy Diane Mueller | John Clarence Parker # |
| Steven Price Rand | Robert Harold Rheel # | Vibhu Ranjan Sharma # |
| Vincent Christopher Tizzio # | Jane Ann Tutoki | |

State of __Illinois__
County of __Cook__   SS:

The officers of this reporting entity being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC Annual Statement Instructions and Accounting Practices and Procedures manual except to the extent that: (1) state law may differ; or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively. Furthermore, the scope of this attestation by the described officers also includes the related corresponding electronic filing with the NAIC, when required, that is an exact copy (except for formatting differences due to electronic filing) of the enclosed statement. The electronic filing may be requested by various regulators in lieu of or in addition to the enclosed statement.

__Nancy D. Mueller__   __Dennis F. Kerrigan__   __Barry S. Paul__
President   Secretary   Treasurer
(EVP and Corporate Secretary)

Subscribed and sworn to before me this
__9th__ day of __February, 2009__

a. Is this an original filing? _____   Yes [ X ] No [  ]
b. If no,
  1. State the amendment number _____
  2. Date filed _____
  3. Number of pages attached _____

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Paul L. Abrams.

The case number on all documents filed with the Court should read as follows:

## CV09- 7210 GW (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] Eastern Division<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I.(a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| KOOSHAREM CORPORATION dba SELECT PERSONNEL SERVICES and ABLEST, INC., a Delaware Corporation | ZURICH AMERICAN INSURANCE COMPANY |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Drew E. Pomerance and Michael L. Phillips, Esq.<br>ROXBOROUGH, POMERANCE, NYE & ADREANI LLP<br>5820 Canoga Ave., Suite 250<br>Woodland Hills, California 91367<br>Tel: (818) 992-9999; Fax: (818) 992-9991 | Conrad V. Sison, Esq.<br>LOCKE LORD BISSELL & LIDDELL LLP<br>300 South Grand Avenue, Suite 2600<br>Los Angeles, California 90071<br>Tel: (213) 485-1500<br>Fax (213) 485-1200 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL ROPERTY | PRISONER ETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number:

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV09-07210

American LegalNet, Inc.
www.FormsWorkflow.com

CONFORMED COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☒ Yes

If yes, list case number(s): CV 09-6751 AHM (Ex)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☒ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Koosharem Corporation (Santa Barbara, California) Ablest, Inc. (Santa Barbara, California) | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Zurich American Insurance Company (New York, Illinois) |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Illinois |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date October 2, 2009

Conrad V. Sison

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com